**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| BAY AREA UNITARIAN UNITARIAN UNIVERSALIST CHURCH; DRINK HOUSTON BETTER, LLC d/b/a ANTIDOTE COFFEE; PERK YOU LATER, LLC,<br><br>     *Plaintiffs*,<br><br>  v.<br><br>KEN PAXTON, Attorney General for the State of Texas, in his official capacity; KIM OGG, District Attorney for Harris County, in her official capacity; VINCE RYAN, County Attorney for Harris County, in his official capacity; ED GONZALEZ, County Sheriff for Harris County, in his official capacity; PETE BACON, Acting Chief of Police for the Webster Police Department, in his official capacity; ART ACEVEDO, Chief of the Houston Police Department, in his official capacity; KIM LEMAUX, Presiding Officer for the Texas Commission on Law Enforcement, in her official capacity,<br><br>     *Defendants*. | CIVIL ACTION NO. 4:20-cv-3081 |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

## I. INTRODUCTION

The First Amendment safeguards the right to express differing viewpoints.  "[N]o official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion or force citizens to confess by word or act their faith therein." *W. Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624, 642 (1943).  But Texas has ignored the First Amendment and enacted legislation that singles out a group with which it disagrees—those who

prefer to keep guns off of their property—and selectively burdens their speech.  Specifically, Texas property owners who espouse this viewpoint must post multiple large, text-heavy signs containing language specified by the State in order to exercise the longest established and most fundamental of their property rights: the right to exclude.  If these property owners use other means of indicating that firearms are not welcome on the premises—even if entirely reasonable and understandable—they cannot avail themselves of Texas's criminal trespass laws.  By contrast, property owners who wish to exclude others for *any other reason at all* do not face these same burdens.  This viewpoint-based discrimination was entirely intentional; the Texas state land commissioner who drafted these requirements admits that he "intentionally made the sign's language cumbersome" to discourage businesses from prohibiting entry to customers carrying guns.[1]

Under Texas criminal trespass law, property owners can provide notice to potential trespassers that entry is unwelcome through a variety of means, including signs "reasonably likely to come to the attention of" the trespasser.  Tex. Penal Code § 30.05 ("General Trespass Law").  In an effort to discourage property owners from excluding individuals carrying guns, however, Texas imposes heightened and onerous speech requirements on property owners who object to handguns being on their property.  Under Texas Penal Code §§ 30.06 and 30.07, property owners are required to post several square feet of government-scripted signage on their property to communicate that they object to handguns on their property.  Tex. Penal Code § 30.06 ("Concealed Carry Trespass Law"); Tex. Penal Code § 30.07 ("Open Carry Trespass Law") (together, the "Acts").  These signage requirements effectively prevent property owners

---

[1] *See* Laylan Copeline, *Limiting guns at Texas business? It's a legal – and legalese – fight*, STATESMAN, https://www.statesman.com/business/limiting-guns-texas-businesses-legal-and-legalese-fight/cFDvmkvhiONPLN0OLKNALJ/ (last updated Dec. 11, 2018, 11:28 AM).

from communicating a "no guns" message on their own terms and interfere with property owners' efforts to relay other, non-gun-related messages as well. This is especially true for establishments that sell alcohol. Many establishments—including one of the Plaintiffs here—must post signs required by the Acts in addition to *other* gun signs mandated for certain sellers of alcohol.

The Texas legislature has not identified any reason why these enhanced signage requirements are necessary to provide adequate notice to gun-carrying individuals, where such enhanced notice is not required for any other type of would-be trespasser. Indeed, simpler, pictographic signs (like those commonly used in other states) would be both less burdensome and more effective at providing notice. Quite simply, the purpose and intent of the law is to disfavor a particular viewpoint. The Constitution does not permit this.

Plaintiffs are a Unitarian Universalist church and a coffee shop, both located in Harris County, Texas. Plaintiffs bring this civil rights action under the U.S. and Texas Constitutions to challenge the constitutionality of the heightened speech requirements imposed by the Acts on their face and as applied to Plaintiffs. Plaintiffs seek declaratory and injunctive relief in order to stop the State's ongoing violation of Plaintiffs' constitutional rights. *See* 28 U.S.C. § 2201.

## II. JURISDICTION AND VENUE

1. This Court has jurisdiction over the federal claims by operation of 28 U.S.C. §§ 1331, 1343(a)(3).

2. This Court has authority to grant the requested declaratory and prospective injunctive relief under 28 U.S.C. §§ 2201 and 2202 and 42 U.S.C. § 1983, by Rules 57 and 65 of the Federal Rules of Civil Procedure, and by the general legal and equitable powers of this Court. *See Ex parte Young*, 209 U.S. 123 (1908).

3. This Court has supplemental jurisdiction over Plaintiffs' claims based on Texas constitutional law pursuant to 28 U.S.C. § 1367.

4. Venue is appropriate under 28 U.S.C. § 1391(b) because several Defendants reside in this district and the events giving rise to the claims occurred and occur in this district.

### III.    PARTIES

#### A.    Plaintiffs

5. Plaintiff Bay Area Unitarian Universalist Church is a Unitarian Universalist Church located in Harris County, Texas. Its building is located at the border between the City of Houston and the City of Webster.  Its religious mission centers on compassion, peace, and non-violence.

6. Plaintiff Drink Houston Better, LLC d/b/a Antidote Coffee ("Antidote Coffee") is a small shop that serves coffee, wine, and ice cream in Houston.  Plaintiff Perk You Later, LLC ("Perk You Later") owns the building where Antidote Coffee has operated for twelve years. Antidote Coffee and Perk You Later share the same ownership.

#### B.    Defendants

7. Defendant Ken Paxton is the current Attorney General for the State of Texas. Defendant Paxton is responsible for intervening in certain criminal prosecutions in the State of Texas.  Defendant Paxton is also responsible for interpreting statutes passed by the Texas legislature, including the Acts.  Defendant Paxton has, in fact, issued interpretations of the Acts.[2]  He is sued in his official capacity.

---

[2] *See, e.g.*, Tex. Att'y Gen. Op. KP-0047, 2015 WL 9434993 (Dec. 21, 2015); Tex. Att'y Gen. Op. KP-0049, 2015 WL 9434997 (Dec. 21, 2015); Tex. Att'y Gen. Op. KP-0050, 2015 WL 9434999 (Dec. 21, 2015); Tex. Att'y Gen. Op. KP-0089, 2016 WL 2970491 (May 18, 2016); Tex. Att'y Gen. Op. KP-0108, 2016 WL 4267994 (Aug. 9, 2016); Tex. Att'y Gen. Op. KP-0176, 2017 WL 6569488 (Dec. 21, 2017); Tex. Att'y Gen. Op. KP-0212, 2018 WL 4697343 (Aug. 27, 2018).

8. Defendant Kim Ogg is the District Attorney for Harris County.  She is responsible for prosecuting felonies occurring in Harris County.  She is therefore responsible for prosecuting criminal violations of the Acts when brought in conjunction with a felony charge.  She is sued in her official capacity.

9. Defendant Vince Ryan is the County Attorney for Harris County.  He is responsible for prosecuting misdemeanors—and thus criminal violations of the Acts—occurring in Harris County.  He is sued in his official capacity.

10. Defendant Ed Gonzalez is the County Sheriff for Harris County.  He is responsible for enforcing criminal violations of the Acts in Harris County.  He is sued in his official capacity.

11. Defendant Pete Bacon is the Acting Chief of Police for the Webster Police Department.  He is responsible for enforcing criminal violations of the Acts in the City of Webster.  The Webster Police Department responds to calls for police assistance made by the Bay Area Unitarian Universalist Church.  He is sued in his official capacity.

12. Defendant Art Acevedo is the Chief of the Houston Police Department.  He is responsible for enforcing criminal violations of the Acts in the City of Houston.  He is sued in his official capacity

13. Defendant Kim Lemaux is the Presiding Officer for the Texas Commission on Law Enforcement.  The Commission is responsible for the administration, training, licensing, and examinations of law enforcement personnel in Texas.  Defendant Lemaux is sued in her official capacity.

## IV.    STATUTORY FRAMEWORK

### A.    Notice Requirements Under General Texas Criminal Trespass Law

14. Under Texas's General Trespass Law, codified at Texas Penal Code § 30.05, a person commits an offense of criminal trespass if the person "enters or remains on or in property of another" without "effective consent" and the person "(1) had notice that the entry was forbidden;" or "(2) received notice to depart but failed to do so."  Tex. Penal Code § 30.05.

15. Under the General Trespass Law, a property owner can provide "notice" that entry is forbidden in a variety of ways:

> (A) "oral or written communication," with no particular language specified;
> (B) "fencing or other enclosure obviously designed to exclude intruders or to contain livestock;"
> (C) "a sign or signs posted on the property or at the entrance to the building, reasonably likely to come to the attention of intruders, indicating that entry is forbidden;"
> (D) "the placement of identifying purple paint marks on trees or posts on the property, provided that the marks" have certain features;
> (E) "the visible presence on the property of a crop grown for human consumption that is under cultivation, in the process of being harvested, or marketable if harvested at the time of entry."

Tex. Penal Code § 30.05(b)(2).

16. The General Trespass Law does not impose upon property owners any size, wording, or language requirements relating to the written communications or signs necessary to exclude others from their property.

17. An offense under the General Trespass Law is generally a Class B or C misdemeanor, but it is a Class A misdemeanor if the individual "carries a deadly weapon during the commission of the offense."  Tex. Penal Code § 30.05(d)(3)(C).

### B.    Notice Requirements for Gun-License Holders Under Texas Criminal Trespass Law.

18. However, in 2003, the Texas legislature amended the General Trespass Law to create a defense to prosecution under the statute if: (i) the basis on which entry was prohibited is that

entry with a handgun was forbidden; and (ii) the person was carrying a permit and a concealed handgun.  Tex. Penal Code § 30.05(f).  In 2015, this exemption was broadened to apply also to handguns carried openly "in a shoulder or belt holster."  *Id.*

19.  Though there are several other enumerated defenses, the only ones concerning the "basis on which entry . . . was forbidden" relate to when property owners seek to exclude a person because the person is carrying a handgun, firearm, or ammunition.  Tex. Penal Code § 30.05(f)–(f-3), (i).

20.  Sections 30.06 and 30.07 of the Texas Penal Code now create trespass crimes for those individuals exempted by § 30.05(f).  The Concealed Carry Trespass Law (§ 30.06) covers concealed handgun license holders, whereas the Open Carry Trespass Law (§ 30.07) covers open-carry handgun license holders.  Tex. Penal Code §§ 30.06, 30.07.

21.  For a gun-license holder to be guilty of trespass, the license holder must carry the open or concealed handgun on to the property of another without "effective consent" and have received "notice" that entry on to the property with an open or concealed handgun was forbidden.  Tex. Penal Code §§ 30.06(a), 30.07(a).  Unlike the General Trespass Law, property owners can provide "notice" under the Acts only "by oral or written communication."  Tex. Penal Code §§ 30.06(b), 30.07(b).

22.  Also unlike the General Trespass Law, the Concealed Carry Trespass Law defines "written communication" extremely narrowly:

(A) a card or other document on which is written language identical to the following: "Pursuant to Section 30.06, Penal Code (trespass by license holder with a concealed handgun), a person licensed under Subchapter H, Chapter 411, Government Code (handgun licensing law), may not enter this property with a concealed handgun"; or

(B) a sign posted on the property that:
    (i) includes the language described by Paragraph (A) in both English and Spanish;
    (ii) appears in contrasting colors with block letters at least one inch in height; and

(iii) is displayed in a conspicuous manner clearly visible to the public.

Tex. Penal Code § 30.06(c)(3).

23. The Open Carry Trespass Law uses the same definition of "written communication" except that the required language refers to § 30.07 of the code and to openly carried handguns. In addition, under the Open Carry Trespass Law, signs are required to be posted "at *each entrance* to the property," regardless of whether the entrance is open to the public.  Tex. Penal Code § 30.07(c)(3)(B)(iii) (emphasis added).

24. Although the two signs must contain wording "identical" to the statutory language, in both English and Spanish, they cannot be combined into one sign that covers both open and concealed weapons.  Instead, the property owner must post *both* of the following signs:

 

25. Given these requirements, if a property owner seeks to exclude both concealed and openly carried handguns, he or she must devote several square feet of space at each entrance to text-heavy signage.  For example, the statutorily compliant signs obtained and posted by the Church Plaintiff in this case measure 18 by 24 inches each.  On one website that advertises that

its signs are "[f]ully compliant with the Texas penal code, including mandatory bilingual messaging and 1" character height," the minimum-sized sign available is 30 by 30 inches.[3]

26. Because the Acts cover only *handguns*, a property owner seeking to exclude *all* guns (including, for example, long guns) must post a *third* sign under the General Trespass Law.  For example, the following sign under the General Trespass Law is available for purchase online:[4]



27. By comparison, other states' signage requirements are far less burdensome.  Many states have no specific requirements for giving notice excluding firearms.  Those that do have specific requirements generally allow property owners to give notice that firearms are prohibited on the premises with a simple pictogram or only a few words.  *See, e.g.*, Ariz. Rev. Stat. § 4-229 (providing that retailers can exclude persons carrying concealed firearms with a sign containing a pictogram and the words "no firearms allowed pursuant to A.R.S. § 4-229"); Ark. Code § 5-73-306 (requiring only "a written notice clearly readable at a distance of not less than ten

---

[3] *See Texas Gun Signs - No Concealed Carry & No Open Carry*, MYSECURITYSIGN.COM, https://www.mysecuritysign.com/texas-concealed-carry-signs-3006-3007 (last visited Sept. 1, 2020).

[4] *See Texas Gun Signs - No Concealed Carry & No Open Carry*, MYSECURITYSIGN.COM, https://www.mysecuritysign.com/texas-concealed-carry-signs-3006-3007 (last visited Sept. 1, 2020) ("Texas has three sign designs, one that forbids concealed handguns, one that forbids open carry of handguns, and one that forbids long guns under Texan trespassing law. (To forbid all guns, you need to post all three: 30.05, 30.06 and 30.07 signs.)").

feet . . . that 'carrying a handgun is prohibited'"); Ga. Code Ann. §§ 16-11-127(c), 16-7-21

(providing that "private property owners or persons in legal control of private property . . .

have the right to exclude or eject a person who is in possession of a weapon or long gun on their

private property" by giving "notice").

28. Signs under the Acts and the General Trespass Law are not provided by any

governmental agency.  Instead, property owners must purchase these signs, and they can cost as

much as $100.  *See infra* ¶¶ 60, 74.  Given that other states have less burdensome signage

requirements, no-guns signs in other states are less expensive than in Texas.  For example, a

property owner just across the border in New Mexico would have to pay only $7.98 for a

compliant sign.[5]

29. Even though, as noted above, trespass with a deadly weapon is *generally* a Class A

misdemeanor, offenses under the Acts are classified as *Class C* misdemeanors punishable by a

fine not to exceed $200.  The only exception is for trespassers who, after entering the property,

are personally given oral notice as defined under subsection (b) and do not depart, in which case

the offense is enhanced to a Class A misdemeanor.  Tex. Penal Code §§ 30.06(d); 30.07(d).

30. As of September 1, 2019, the Texas legislature amended the Acts to provide a

defense to prosecution if the offender promptly departs the property after receiving oral notice.

Tex. Penal Code §§ 30.06(g); 30.07(h) ("It is a defense to prosecution under this section that the

license holder was personally given notice by oral communication described by Subsection (b)

and promptly departed from the property.").  The amended version of the Concealed Carry

---

[5] *See New Mexico Gun Law Sign: Carrying Of Weapons Prohibited Sign – 10.8.2.16 NMAC (S2-0646-NM)*, MYSECURITYSIGN.COM, https://www.mysecuritysign.com/new-mexico-gun-control-law-sign/sku-s2-0646-nm (last visited Sept. 1, 2020).

Trespass Law does not clarify how a property owner is to provide such oral notice if the firearm is concealed.

31. These notice requirements apply only to those wishing to exclude individuals on the basis of whether they are carrying handguns.  For example, if a business wanted to exclude people not wearing a shirt and shoes, they would not have to follow the Acts' stringent requirements.

### C.    Signage Requirements for Alcoholic Beverage Retailers

32. There are separate laws governing retailers who sell alcohol, and these requirements both interact with the requirements of the Acts to make their requirements even more burdensome *and* establish the internal incoherence of Texas's signage requirements.

33. Under Texas Government Code § 411.204, businesses with alcohol permits or licenses that derive 51% or more of their income from the sale or service of alcoholic beverages for on-premises consumption must post a sign in both English and Spanish stating that it is unlawful for a licensed holder to carry a handgun on the premises.  These are called the "Red Signs."  The Red Signs must be "displayed in a conspicuous manner clearly visible to the public" and contain block letters at least one inch tall and in contrasting colors.  Tex. Gov't Code § 411.204(c).  The businesses also have to post the number "51" in solid red and at least five inches in height.  *Id.*  Unlike the signs imposed by the Acts, there is no exact language requirement for the Red Signs.

34. The Texas Alcoholic Beverage Code ("TABC") currently provides to business owners compliant signs in English and Spanish that are 14 by 8.5 inches each:

 

35. Under Texas Alcoholic Beverage Code §§ 11.041(a) and 61.11(a), businesses with alcohol permits or licenses that do not derive the majority of their revenue from alcohol are required to display a sign "in a prominent place" providing notice that carrying a weapon on the premises is illegal unless the weapon is a licensed handgun.  These are called the "Blue Signs."

36. The Blue Signs must be at least 6 by 14 inches, must appear in contrasting colors, and must be displayed in a conspicuous manner clearly visible to the public.  The establishment may be required to "display the sign in a language other than English if it can be observed or determined that a substantial portion of the expected customers speak the other language as their familiar language."  Tex. Alco. Bev. Code §§ 11.041(b), 61.11(b).

37. The TABC currently provides to business owners compliant Blue Signs in English and Spanish that are 14 by 8.5 inches each:

 

38. Because the Blue Signs address only *unlicensed* weapons, businesses that need to post these signs also need to post signs under the Acts to effectively exclude all guns from their property.

## V.     THE ACTS ARE UNDULY BURDENSOME

39. The Acts impose onerous size, language, and text signage requirements that are unjustified and unduly burdensome on a group of property owners who espouse a disfavored viewpoint.

40. In most cases, property owners can take advantage of Texas criminal trespass law by providing notice through the various methods outlined in the General Trespass Law, such as any type of oral or written communication, fencing, or signs "reasonably likely to come to the attention" of would-be trespassers.  But property owners who wish to exclude guns from their property are subject to the heightened, more onerous notice requirements imposed by the Acts.

41. As explained above, the Acts permit notice by oral or written communication, with a written communication defined as a card or other document containing the statutory language or

a sign containing the statutory language and meeting other specific size and location requirements.

42. In practice, posting a sign will be the only practicable option for property owners to effectively exclude guns from their property.  Giving individual notice by oral communication or card to anyone carrying a gun risks physical confrontation and, in any event, is unworkable, particularly where the individual is carrying a concealed weapon.  The alternative of providing individual oral or written notice to every person who enters the property is just as impracticable and exceedingly burdensome.  Indeed, the only way for an owner to realistically comply with such a requirement would be to incur an additional financial burden in hiring an employee specifically dedicated to providing oral notice to each customer who enters the property.  Even then, this person would be required to engage in potentially dangerous one-on-one confrontations with individuals carrying weapons.

43. Notice via signage is thus the safest, most feasible, and most cost-effective method of providing notice to potential trespassers.

44. In order to exclude gun-carrying individuals, however, property owners are forced to display several square feet of imposing and text-heavy signage.  These requirements prevent property owners—and small business owners in particular—from effectively conveying other messages to patrons and from maintaining the desired aesthetic of the property.

45. The signage requirements impose a number of burdens:

46. First, the size requirements for the signs ensure that the signs occupy a substantial amount of space on the front of the property.

47. Additionally, the consequence of the size and language requirements is to prevent property owners from communicating the "no guns" message on their own terms.  The signs

must contain wording "identical" to that in the Acts.  A commonly-used "no weapons" sign won't work.  Thus, property owners wishing to communicate to patrons in a more nuanced manner would have to add yet another sign to their property front—for example, a sign stating: "This is a family establishment. While we deeply respect the Second Amendment, guns are not allowed on this property."

48. The intrusive nature of the signs also essentially serves as a "Scarlet Letter," causing passers-by to deem the establishment to be anti-gun.

49. On top of that, the strict signage requirements have invited people, such as the individuals who post on www.texas3006.com, to find reasons to disregard the signs if deemed noncompliant.  The website provides "a centralized location for reporting and retrieving businesses and other facilities that deny our right to defend both ourselves and our families from criminals."[6]  On the website, users post the addresses of various properties that display no-guns signs along with detailed descriptions of whether the signs meet the statutory requirements, such as whether the letters are less than an inch tall.  If the signs do not precisely comply with the requirements, some users see that as an opportunity to bring guns into those places anyway because they face no criminal consequences for doing so.[7]  The website even has a "Wall of Shame," which displays the names of the companies with the most entries.[8]

50. The size requirements also make it difficult, if not impossible, to print the signs at home.  And unlike other state-mandated signs, the signs under the Acts are not provided for free

---

[6] Russell Jones, TEXAS3006.COM, https://www.texas3006.com/team.php (last visited Sept. 1, 2020).

[7] TEXAS3006.COM, https://www.texas3006.com/view.php (last visited Sept. 1, 2020); *see also* Blog Post by Flightmare, TEXASCHLFORUM.COM (Mar. 11, 2019, 12:32 PM), https://www.texaschlforum.com/viewtopic.php?p=1242194#p1242194 ("I walked right past a sign yesterday that said 'No firearms allowed'. I thought it was cute").

[8] TEXAS3006.COM, https://www.texas3006.com/view.php (last visited Sept. 1, 2020).

by any state agency.  Property owners must therefore purchase these signs at their own expense, often incurring costs of more than $100.

51. In addition, the Acts require that the statutorily required text be displayed in Spanish, as well as English, yet the Acts do not provide the Spanish translation.  It is therefore up to the property owner to determine the proper translation of the required language.

52. Furthermore, if a property owner opts to provide a "card or other document" to each individual entering their property—as opposed to posting a sign—the "card or other document" need not display the statutory text in Spanish.  Tex. Penal Code § 30.06(c)(3)(A).  This indicates that the drafters were not concerned with reaching Spanish speakers but instead intended to make the signs as large and intrusive as possible.

53. Making matters worse, the affirmative defense relating to oral notice creates confusion as to whether an individual who walks into a property with a gun is violating the law up until the property owner tells him or her to leave.  Although it is clear that an individual who refuses to leave once asked is violating the law, the 2019 amendments create ambiguity in the law as to the customer's status before he or she is asked to leave.  The legislative history suggests that those in favor of the amendment understood that it requires the property owner to provide individual oral notice before criminal trespass applies.  Specifically, the House Research Organization's analysis of HB 121, which added the affirmative defense for gun-carriers who comply with oral notice to leave a property, states that "The bill would not make it more difficult for property owners to manage their property as *it would require only a verbal reminder to license holders* who must then leave" (emphasis added).[9]  This reading would

---

[9] Texas House Research Organization, Bill Analysis, HB 121 (April 9, 2019), *available at* https://hro.house.texas.gov/pdf/ba86r/hb0121.pdf#navpanes=0.  The opponents of the bill noted these concerns:

> HB 121 would make it more difficult for business owners to keep guns off of their property. The bill could allow license holders to ignore signs prohibiting guns on the property and bring their weapons onto

forbid prosecution where there is a compliant sign but no oral notice is given.  In the end, the statute leaves property owners guessing as to what it requires.

54. If the 2019 amendments require property owners to provide individual oral notice in all instances, then the Acts impose even more onerous burdens on property owners.  In addition to posting the signs, the property owner must approach an armed individual to tell him or her to leave, putting everyone at risk of a verbal or physical altercation.  Additionally, a property owner cannot be expected to give individual oral notice where the person is carrying a concealed weapon, nor is it feasible to give individual oral notice to everyone entering the premises.

55. The only effective way for property owners to exclude guns from their property is through the criminal law of trespass.  That is, the individual can summon the police to remove the individual from the premises.  By impermissibly burdening property owners' rights to rely on the criminal law of trespass, the Acts make it impossible to exclude armed entrants without engaging in needlessly burdensome, government-scripted speech.

**Burdens on Individual Plaintiffs**

*Burdens on Church Plaintiff*

56. The Bay Area Unitarian Universalist Church (the "Church") is a Unitarian Universalist church located in partly in the City of Houston and partly in the City of Webster, Texas.  The Church owns the property on which the church building is located.

57. The Church has around 225 members, although a number of non-members also attend the Church's services and other events.

---

property until they are told otherwise. License holders should be held responsible for noticing and following posted signs, and property owners who post the required signs should not have to take the extra steps of tracking down patrons and giving verbal notifications to keep guns off their property.
*Id.*

58. When open carry laws went into effect in Texas, there was heightened anxiety among church members and church leadership regarding individuals carrying firearms and the safety of church attendees.

59. Currently, the Church displays the signs in English and Spanish required under the Open Carry Trespass Law at front and side entrances to the church building.  Each sign is 18 by 24 inches.

60. The Church paid $111.80 for these signs.

61. The Church displays only the signs required under the Open Carry Trespass Law because displaying signs under both the Open Carry Trespass Law and the Concealed Carry Trespass Law would have taken up too much space on the doorways and would be too obtrusive.  The Church also believes that displaying both signs, given their size and imposing nature, would detract from the church experience by having visitors, upon entering the building, focus on guns instead of the Church's religious message.

62. The Church also displays rainbow stickers on the doors as a way to demonstrate inclusiveness with the LGBTQ community.  And the Church sometimes displays information on these doors regarding upcoming church activities and events.

63. The doors to the church are composed of see-through glass for safety and accessibility reasons—it is important that greeters are able to see who is on the other side of the door in order to address any security concerns and/or assist individuals with disabilities in entering the church.  The clear doors are also meant to convey the Church's commitment to openness and inclusion.

64. The Church has an official policy that forbids carrying firearms, whether open or concealed, onto church property.  Given the size requirements for the signs under the Acts,

however, the Church had decided not to post both signs, and so the signage does not match the Church's policy. The dissymmetry between the displayed signs and church policy can be confusing to congregants.

65. One of the most fundamental religious tenets of the Church is to address conflict through conversation, non-violence, love, and compassion. The Church believes that the signs required by the Acts detract from those religious principles.

66. Additionally, the Church intends its building to be a refuge for peace and tranquility, and the Church believes that the signs detract from this purpose because they are constant and imposing reminders of guns and violence.

67. The Church leadership deems the signs ugly and intimidating, and the group debated whether to display the signs at all, as they were likely to make the congregants uncomfortable and detract from the desired religious experience.

68. Greeters at the doors of the Church are trained that if someone appears to have a firearm, to ask the person to leave the firearm outside, but only if the greeter feels comfortable doing so. However, if the greeter feels uncomfortable approaching the person, or if the conversation becomes confrontational, the greeters are instructed to immediately call 911.

69. If given a choice, the Church would prefer to display simpler signage that is smaller and more easily understandable.

*Burdens on Coffee Shop Plaintiffs*

70. Plaintiff Antidote Coffee Shop is located in Houston and sells coffee, wine, ice cream and other confections to the community. Plaintiff Perk You Later owns the building in which Antidote is located. Antidote's customers include adults, children, and families. Customers also frequently bring pets to the coffee shop.

71. In keeping with the owners' views of the character of a neighborhood family coffee shop, Antidote Coffee Shop and Perk You Later object to guns being on the property.  They believe that the presence of guns would be unsafe because Antidote's customers regularly bring children and pets on the property and because Antidote serves alcohol in addition to other items. In prior years, Antidote displayed a 3 by 3 inch sign with a picture of a gun in a red circle underneath a diagonal red line.  This sign was posted in the same front-door location as other signs displayed or previously displayed, such as a sign urging customers to "shop local."  Dawn Callaway, one of the owners of Antidote, was able to obtain this no-guns sign from a friend for free.

72. Since approximately 2016, Antidote has posted both the § 30.06 and § 30.07 signs required by the Acts.  Antidote has had to replace these signs on two occasions—once due to a break-in and a second time during the spring of this year when the shop needed to apply sealant to its windows. Demonstrating the confusing nature of the Acts, Antidote posted two § 30.06 signs during its most recent replacement, even though it had intended to prohibit both conceal and open carry, as it had in the past.  Antidote has now also re-purchased additional § 30.07 signs and intends to post them immediately upon receipt.

73. These signs cover a large portion of the bottom of the windowpane next to the front door to Antidote and are detrimental to the desired "neighborhood coffee shop" aesthetic.  The owners worry that the first things Antidote's customers are forced to think about when entering the shop are weapons and criminal prosecutions.  They also believe that the signage requirements force Antidote to make "a bold political statement" regarding guns, given the intrusiveness and size of the signs.

74. Previously, Antidote paid approximately $70 for these signs and about $90 to have them installed on the window.  This year, Antidote paid approximately $40 for the § 30.06 signs and almost $60 for the § 30.07 signs.

75. Each of the new § 30.06 signs measures approximately 13 by 22 inches, and each of the new § 30.07 signs measures 18 by 24 inches, totaling approximately 10 square feet.

76. Antidote also posts the blue TABC sign required by Texas Alcoholic Beverage Code §§ 11.041(a) and 61.11(a).  That sign is provided to it by the TABC.

77. Antidote's staff have occasionally encountered customers who are bothered by the required signage.  Neither Ms. Callaway nor her business partners recall this happening with the original, pictographic sign.

78. Additionally, a member of the www.texas3006.com website added Antidote to the website's message board on June 3, 2017 and noted, "I guess I have to go somewhere else for coffee."[10]

79. Antidote's staff does not feel comfortable providing personal oral notice to individuals who are or might be armed, as such interactions might lead to verbal or physical altercations in a family-type environment.

80. On at least two occasions, patrons entered the premises with handguns despite the signs, forcing staff to confront these patrons and ask them to leave.  On these occasions, the patrons initially refused to depart despite the staff members' requests.

81. Ms. Callaway and the other managers and owners of Antidote want to be able to call the police to remove individuals who enter the property carrying a gun despite Antidote's no-guns signs.

_____

[10] Post by Texas12Gauge, TEXAS3006.COM (June 3, 2017), https://www.texas3006.com/view.php?postedsearch=true&Search=Search&business_name=antidote&category=+&address=&city=&restriction_type=+.

82. If the current signage requirements were not in place, Antidote would post a no-guns sign similar to the pictographic sign it used to display.

### VI.   THE ACTS ARE CONTENT-BASED AND VIEWPOINT-BASED

83. The Acts constitute content-based regulations on speech.  Property owners who wish to exclude people from their property for reasons other than that the person is carrying a handgun are free to provide notice in a variety of ways, including through any type of sign that is "reasonably likely to come to the attention" of potential trespassers  Tex. Penal Code § 30.05. On the other hand, if property owners object to individuals carrying handguns on their property, they are forced to communicate that message in a way that is unduly burdensome and crowds out opportunity for nuanced messaging or speech on other topics; namely, by posting several square feet of text-heavy and expensive signage containing the exact language prescribed by the Acts.  In other words, the State dictates, down to the letter, the content to be included on the sign.

84. The Acts are also viewpoint based—they favor one side of a deeply contested political debate.  If a property owner's viewpoint leads him or her to wish to exclude any individual who is *not* carrying a handgun, he or she can do so using the more lenient notice requirements under the General Trespass Law.  If, however, a property owner's viewpoint leads him or her to wish to exclude any individual who *is* carrying a handgun, he or she can do so only by carefully following the strict and burdensome notice requirements under the Acts.

85. Indeed, the Texas state land commissioner who wrote the language for the heightened sign requirements admits that he "intentionally made the sign's language cumbersome so as to discourage businesses from curbing the right to bear arms while shopping or eating out or

buying shoes."[11]  Thus, in constructing the heightened-notice regime, the State sought to discourage expression of a viewpoint with which it disagrees.

## VII.    THE ACTS ARE UNJUSTIFIED BY ANY LEGISLATIVE PURPOSE, OVERBROAD, UNDERINCLUSIVE, AND NOT SUFFICIENTLY TAILORED

86. The Acts' heightened requirements, which discriminate on the basis of viewpoint, are not justified by any valid legislative purpose.  Rather, all the Acts do is burden the speech of property owners who wish to exercise their established right to exclude by imposing the extensive signage requirements detailed above.  The Acts fail the heightened scrutiny that is triggered by their viewpoint discrimination and burdening of property owners' right to exclude.

87. In the Texas Legislature, proponents of the Acts did not identify any actual, known deficiency in, or harm flowing from, the notice requirements already included in § 30.05; or any concrete benefit flowing from the Acts' additional signage requirements.  For example, the House Research Organization's bill analysis for HB 910, which added the Open Carry Trespass Law to establish a new offense for open carry paralleling the offense in the Concealed Carry Trespass Law, does not explain why ordinary notice under § 30.05 will not suffice.[12]  The bill analysis for the Concealed Carry Trespass law is similarly devoid of any such explanation.[13]

88. Moreover, proponents of the Acts in the Texas Legislature did not explain why it is permissible to selectively burden the speech of property owners based on their viewpoint.  For example, the House Research Organization's analysis of HB 910, while it notes bill opponents'

---

[11] *See* Laylan Copeline, *Limiting guns at Texas business? It's a legal – and legalese – fight*, STATESMAN, https://www.statesman.com/business/limiting-guns-texas-businesses-legal-and-legalese-fight/cFDvmkvhiONPLN0OLKNALJ/ (last updated Dec. 11, 2018, 11:28 AM).

[12] *See* Texas House Research Organization, Bill Analysis, HB 910 (Apr. 17, 2015), *available at* https://hro.house.texas.gov/pdf/ba84R/HB0910.PDF.

[13] *See* Texas House Research Organization, Bill Analysis, HB 2909 (May 13, 1997), *available at* https://hro.house.texas.gov/pdf/ba75R/HB2909.PDF.

objection that "[t]he bill would make notice requirements onerous" and that "[t]his especially would impact smaller businesses," offers no substantive response.  Rather, it simply asserts, in conclusory fashion, that "[t]he requirement to display more than one sign would not be overly burdensome for business owners."  The analysis includes no reasoning or evidence to support this assertion.[14]  The House bill analysis for the Concealed Carry Trespass Law similarly lacks evidence or explanation addressing the burden the law placed on the speech and exclusion rights of property owners.[15]

89. Like trespass under the Acts, trespass under the General Trespass Law results in criminal penalties (a Class A, B, or C misdemeanor, depending on the circumstances).  Tex. Penal Code § 30.05(d).  In fact, trespass under the General Trespass Law can even give the property owner the right to use force against the trespasser.  *See* Tex. Penal Code § 9.41.  Yet the Texas legislature deemed the notice under the General Trespass Law to be sufficient with respect to everyone except handgun-carrying trespassers.  Even other items carried for self-protection, including other "arms" under the Second Amendment (such as long guns and knives), are not covered by the more restrictive trespass requirements.

90. Carrying a firearm onto the premises of a business deriving 51% or more of its business from alcohol sales also results in criminal liability—a third degree felony.  Tex. Penal Code § 46.035(b)(1), (g).  Yet the Red Signs required under § 46.035 have no specific wording requirements.  Tex. Gov't Code § 411.204(a), (c).

91. Likewise, a person commits a third-degree felony by carrying a handgun on "any premises licensed or issued a permit by th[e] state for the sale of alcoholic beverages" unless the

---

[14] *See* Texas House Research Organization, Bill Analysis, HB 910 (April 17, 2015), *available at* https://hro.house.texas.gov/pdf/ba84r/hb0910.pdf#navpanes=0.

[15] *See* Texas House Research Organization, Bill Analysis, HB 2909 (May 13, 1997), *available at* https://hro.house.texas.gov/pdf/ba75R/HB2909.PDF.

person is licensed to carry the handgun.  Tex. Penal Code § 46.02(a), (c).  Yet the Blue Signs are not subject to specific wording requirements, nor are they necessarily required to be displayed in Spanish.  Tex. Alco. Bev. Code Ann. § 11.041(a).  And they are not required to be posted at each entrance to the property.  *Id.*

92. Accordingly, the Texas legislature determined that less onerous signage requirements were sufficient to provide notice to gun-carrying individuals entering establishments serving alcoholic beverages, even though an infraction could result in a felony charge.

93. Other states' signage requirements are far less burdensome.  *See supra* ¶ 27.

94. Studies and common sense indicate that shorter, simpler messaging is not only easier to read, it is also more likely to be read than the text-heavy signage Texas requires.[16]

95. Simple pictogram signs are also more likely to be understood by individuals who do not speak English or Spanish, or who cannot read.

96. These alternative measures would be just as effective in providing notice, if not more so.  Indeed, websites like www.texas3006.com show that people *are* noticing no-guns signs, even ones that are not strictly compliant with the Acts.

97. The affirmative defense under the Acts, if interpreted to require property owners to provide oral notice *in addition* to notice by signs, further illustrates that the Acts are not sufficiently tailored to governmental interests.  If Texas were truly interested in providing notice to would-be trespassers, that interest is served by either signage *or* oral notification.  It makes no sense to require both forms of communication only for a small subset of potential trespassers.

---

[16] *See, e.g.*, Dennis R. Proffitt & Melissa M. Wade, *Creating Effective Variable Message Signs: Human Factors Issues*, VIRGINIA TRANSPORTATION RESEARCH COUNCIL, No. 98-CR31 (Mar. 1998); Reuvan Sussman & Robert Gifford, *Please turn off the lights: the effectiveness of visual prompts*, 43 APPLIED ERGONOMICS 596 (May 2012).

98. The Acts' lack of tailoring provides further evidence that the true reason for the heightened speech requirements is to place a burden on property owners expressing a certain viewpoint on guns, not to secure better notice for potential trespassers.  In other words, the State is seeking through the Acts to discourage expression of a viewpoint with which it disagrees.

## CLAIMS FOR RELIEF

### COUNT I
**(Freedom of Speech – First Amendment to the U.S. Constitution)**

99. Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

100. The First Amendment to the U.S. Constitution provides in relevant part: "Congress shall make no law . . . abridging the freedom of speech."  U.S. Const. amend. I.

101. The First Amendment is applicable to state and local governments by incorporation in the Fourteenth Amendment.

102. A private property owner has the right to exclusive control over his or her own property.

103. The Acts unconstitutionally compel speech that is unduly burdensome.  They force Texas property owners to deliver government-scripted speech in a manner intended to disfavor their viewpoint on guns.  In order to exclude guns from their property, property owners are compelled to communicate specific words in a highly burdensome manner so as to rule out other effective ways of delivering the same message on the property owners' own terms.  The burdensome notice requirements also interfere with property owners' communications of other important messages via signage on their properties.

104. The Acts impose unconstitutional conditions on property owners' ability to enforce their property rights.  Property owners are required to relay a government-drafted script in a

highly burdensome manner in order to avail themselves of the protection of criminal law to exclude others from their property.

105. The Acts are also vague and do not provide adequate guidance to Texas property owners concerning what speech is adequate to exercise their right to exclude others from their property.  Specifically, the Acts do not provide adequate guidance as to whether an owner must provide oral notice—regardless of whether the owner has posted appropriate signs—in order to overcome the affirmative defense under Texas Penal Code §§ 30.06(g); 30.07(h).

106. The Acts are content-based, subject-matter based, and viewpoint-based.  They apply only to particular speech based on the topic discussed (guns) and the message expressed (no guns allowed).

107. The Acts alter and restrict the content of property owners' speech.

108. The Acts chill speech based not only on content but also a particular viewpoint.

109. The Acts are unconstitutionally overbroad.

110. The Acts are drastically underinclusive.

111. The Acts are not sufficiently tailored to further a governmental interest and do not do so by the least restrictive means.

112. Less speech-restrictive and less burdensome alternatives exist to further the governmental interest of ensuring that gun carriers are provided notice that handguns are prohibited.  In fact, these alternatives would in many instances be *more* effective in providing notice.

113. Under any applicable level of scrutiny, the Acts are unconstitutional on their face and as applied to Plaintiffs.

## COUNT II
### (Freedom of Association – First Amendment to the U.S. Constitution)

114. Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

115. The First Amendment to the U.S. Constitution provides in relevant part: "Congress shall make no law . . . abridging . . . the right of the people peaceably to assemble."  U.S. Const. amend. I.

116. The First Amendment is applicable to state and local governments by incorporation in the Fourteenth Amendment.

117. The Church Plaintiff is a religious organization founded on the tenets of compassion, love, and non-violence.  Permitting individuals carrying guns to attend church services and other events would impact the content and nature of the Church's mission and message.

118. Requiring the Church to admit individuals with guns onto its premises unless it follows the burdensome notice requirements imposed by the Acts infringes on the Church's right to free association.

119. Under any applicable level of scrutiny, the Acts are unconstitutional on their face and as applied to Plaintiffs.

## COUNT III
### (Freedom of Speech – Article I, Section 8 of the Texas Constitution)

120. Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

121. Section 8 of the Texas Constitution states that "Every person shall be at liberty to speak, write or publish his opinions on any subject, being responsible for the abuse of that privilege; and no law shall ever be passed curtailing the liberty of speech or of the press."  Tex. Const. art. I, § 8.

122. As further explained in Count I, the Acts are unconstitutionally overbroad, underinclusive, and vague.  They constitute content- and viewpoint-based regulations on political speech.  They unconstitutionally compel speech that is unduly burdensome and are not sufficiently tailored to any legitimate governmental interest.

123. Accordingly, the Acts (on their face and as applied) violate the Texas Constitution's free-speech guaranties.

### COUNT IV
### (Due Process – Fifth and Fourteenth Amendment to the U.S. Constitution)

124. Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

125. The Acts are so vague that persons of common intelligence must necessarily guess at what they require.  Specifically, it is unclear whether the Acts require property owners to provide oral notice *in addition* to posting the burdensome signs.

126. For the reasons set forth above, the Acts also lack even a rational connection to any legitimate governmental purpose, and therefore violate Plaintiffs' substantive due process rights.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that this Court enter judgment in their favor and:

a.      Declare the heightened notice requirements imposed by Texas Penal Code §§ 30.06 and 30.07 to be unconstitutional on their face and as applied under the United States and Texas Constitutions, and that property owners seeking to exclude handguns from their properties need only follow the notice requirements under the General Trespass Law.

b.      Declare that the affirmative defense created by Texas Penal Code §§ 30.06(g) and 30.07(h) is unconstitutionally vague.

c.      Enter an injunction against enforcement of the heightened notice requirements imposed by the Acts and requiring that property owners seeking to exclude guns from their properties need only comply with the notice requirements under the General Trespass Law.

d.      Award Plaintiffs their litigation costs and reasonable attorneys' fees and expenses under 42 U.S.C. § 1988; and

e.      Order such other relief as the Court may deem just and proper.

Dated:  September 2, 2020

Respectfully submitted,

/s/ William R. Taylor

William R. Taylor (Attorney-In-Charge)
TX State Bar No. 24070727
S.D. Tex. Bar No. 1061206
wrtaylor@jonesday.com
JONES DAY
717 Texas, Suite 3300
Houston, Texas 77002
Telephone: +1.832.239.3860
Facsimile: +1.832.239.3600

Peter C. Canfield
*Pro hac vice application forthcoming*
pcanfield@jonesday.com
JONES DAY
1420 Peachtree Street, N.E.
Suite 800
Atlanta, GA  30309
Telephone: +1.404.521.3939
Facsimile: +1.404.581.8330

Charlotte H. Taylor
Stephen J. Petrany
*Pro hac vice applications forthcoming*
ctaylor@jonesday.com
spetrany@jonesday.com
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001
Telephone: +1.202.879.3939
Facsimile: +1.202.626.1700

Alla Lefkowitz
Nigar Shaikh
*Pro hac vice applications forthcoming*
alefkowitz@everytown.org
nshaikh@everytown.org
EVERYTOWN LAW
450 Lexington Avenue, P.O. Box 4184
New York, NY 10017
Telephone: (646) 324-8365

*Attorneys for Plaintiffs*

- 31 -