# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| BAY AREA UNITARIAN UNIVERSALIST CHURCH et al., | § § § | |
| *Plaintiffs*, | § § | |
| v. | § § | Civil Action No. 4:20-cv-03081 |
| KEN PAXTON, Attorney General For the State of Texas, in his official Capacity, et al. | § § § § | |
| *Defendants*. | § § | |

---

## DEFENDANTS PAXTON'S AND LEMAUX'S MOTION TO DISMISS

---

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

SHAWN COWLES
Deputy Attorney General for Civil Litigation

THOMAS A. ALBRIGHT
Chief, General Litigation Division

TODD A. DICKERSON
Attorney-in-Charge
Assistant Attorney General
Texas Bar No. 24118368
So. District No. 3544329
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2120 | FAX: (512) 320-0667
Todd.Dickerson@oag.texas.gov

**COUNSEL FOR DEFENDANTS KEN PAXTON AND KIM LEMAUX**

## TABLE OF CONTENTS

SUMMARY OF THE ARGUMENT ................................................................. 1

BACKGROUND ....................................................................................... 2

   I.   An Overview of Texas Penal Code §§ 30.05, 30.06, and 30.07. ..................... 2

   II.   An Overview of Plaintiffs' Complaint. ............................................. 4

NATURE AND STAGE OF THE PROCEEDING ............................................... 6

ISSUES PRESENTED AND STANDARDS OF REVIEW ..................................... 6

ARGUMENTS ........................................................................................ 7

   I.   Plaintiffs Lack Standing as Their Alleged Injuries are Self-Inflicted. ............................................................................. 7

      A.   An Overview of *Amnesty International and Glass.* ................. 8

      B.   This Case Cannot be Meaningfully Distinguished from *Glass…* ......................................................................... 11

   II.   Plaintiffs Lack Standing Because This Court Cannot Rewrite the Acts. .......................................................................... 12

   III.   Plaintiffs' As-Applied and Facial Claims Fail: The Acts Never have been and Never will be Enforced Against Them. ....................... 13

   IV.   The Acts Do Not Warrant Constitutional Scrutiny Under the Supreme Court's Decision in *Arcara*. ....................................... 14

   V.   Plaintiffs' Free Speech Claims Fail as They were Not Compelled or Coerced into Posting the Acts' "No Gun" Signs. ................. 16

   VI.   Plaintiffs' Association Claim Fails as the Acts did Not Meaningfully Impact Their Ability to Exclude Persons Carrying Handguns. .............................................................. 17

   VII.   Plaintiffs' Vagueness Claim Ignores the Acts' Plain Language. ................. 18

   VIII.   Plaintiffs' § 1983 and Texas Constitution Claims are Barred by Sovereign Immunity. .......................................................... 19

CONCLUSION ....................................................................................... 19

CERTIFICATE OF SERVICE ...................................................................... 20

<u>TABLE OF AUTHORITIES</u>

**Cases**

*Arcara v. Cloud Books, Inc.,*
    478 U.S. 697 (1986) ................................................................ 1, 14, 15, 16

*Aguilar v. Texas Dep't of Criminal Justice,*
    160 F.3d 1052 (5th Cir. 1998) ................................................................ 19

*Anderson v. Valdez,*
    845 F.3d 580 (5th Cir. 2016) ................................................................ 7

*Anderson v. Waddle,*
    No. 4:06CV919 HEA, 2008 WL 4561467 (E.D. Mo. Oct. 10, 2008) ........................ 17

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ................................................................ 7

*Axson-Flynn v. Johnson,*
    356 F.3d 1277 (10th Cir. 2004) ................................................................ 17

*Block v. Texas Bd. of Law Examiners,*
    952 F.3d 613 (5th Cir. 2020) ................................................................ 7

*C.N. v. Ridgewood Bd. of Educ.,*
    430 F.3d 159 (3d Cir. 2005) ................................................................ 16, 17

*Clapper v. Amnesty Int'l USA,*
    568 U.S. 398 (2013) ................................................................ 8, 9, 12

*Ctr. for Individual Freedom v. Carmouche,*
    449 F.3d 655 (5th Cir. 2006) ................................................................ 13

*Fighting Finest, Inc. v. Bratton,*
    95 F.3d 224 (2d Cir. 1996) ................................................................ 17

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,*
    528 U.S. 167 (2000) ................................................................ 12

*Glass v. Paxton,*
    900 F.3d 233 (5th Cir. 2018) ................................................................ *passim*

*Gonzales v. Carhart,*
    550 U.S. 124 (2007) ................................................................ 18

*Grayned v. City of Rockford,*
   408 U.S. 104 (1972) ................................................................................. 18

*Hill v. City of Houston, Tex.,*
   789 F.2d 1103 (5th Cir. 1986) ................................................................. 13

*Houston Chronicle Pub. Co. v. City of League City, Tex.,*
   488 F.3d 613 (5th Cir. 2007) ................................................................... 13

*Inclusive Communities Project, Inc. v. Dep't of Treasury,*
   946 F.3d 649 (5th Cir. 2019) ................................................................... 12

*King Ranch, Inc. v. United States,*
   946 F.2d 35 (5th Cir. 1991) ..................................................................... 13

*Laird v. Tatum,*
   408 U.S. 1 (1950) ..................................................................................... 17

*Lyng v. Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am., UAW,*
   485 U.S. 360 (1988) ................................................................................. 17

*Marinello v. Bushby,*
   No. CIV. A.1:95CV167-D-D, 1996 WL 671410 (N.D. Miss. Nov. 1, 1996) ............. 16

*McLaughlin v. Lindemann,*
   853 F.2d 1307 (5th Cir. 1988) ................................................................. 13

*Moore v. Bryant,*
   853 F.3d 245 (5th Cir. 2017) ..................................................................... 7

*Morrison v. Bd. of Educ. of Boyd Cty.,*
   521 F.3d 602 (6th Cir. 2008) ................................................................... 16

*Nat'l Endowment for the Arts v. Finley,*
   524 U.S. 569 (1998) ................................................................................. 13

*Nat'l Fed'n of the Blind of Tex. v. Abbott,*
   647 F.3d 202 (5th Cir. 2011) ................................................................... 13

*NiGen Biotech, L.L.C. v. Paxton,*
   804 F.3d 389 (5th Cir. 2015) ................................................................... 19

*O'Shea v. Littleton,*
   414 U.S. 488 (1974) ................................................................................. 11

*Pace v. Bogalusa City Sch. Bd.,*
   403 F.3d 272 (5th Cir. 2005) ................................................................... 16

*Pennhurst State Sch. & Hosp. v. Halderman,*
   465 U.S. 89 (1984) ................................................................................ 19

*Phelan v. Laramie Cty. Cmty. Coll. Bd. of Trustees,*
   235 F.3d 1243 (10th Cir. 2000) ............................................................ 17

*Rumsfeld v. Forum for Academic and Institutional Rights, Inc.,*
   547 U.S. 47 (2006) ................................................................................ 18

*Serv. Employees Int'l Union, Local 5 v. City of Houston,*
   595 F.3d 588 (5th Cir. 2010) ................................................................ 16

*Texas Med. Providers Performing Abortion Servs. v. Lakey,*
   667 F.3d 570 (5th Cir. 2012) ................................................................ 18

*United States v. McGinnis,*
   956 F.3d 747 (5th Cir. 2020) ................................................................ 13

*United States v. O'Brien,*
   391 U.S. 367 (1968) .............................................................................. 16

*United States v. Raines,*
   362 U.S. 17 (1960) ................................................................................ 18

*United States v. Ramsey,*
   431 U.S. 606 (1977) .............................................................................. 17

*Universal Amusement Co. v. Vance,*
   587 F.2d 159 (5th Cir. 1978) ................................................................ 13

*Wilkins v. Daniels,*
   744 F.3d 409 (6th Cir. 2014) ................................................................ 17

*Willoughby v. U.S. ex rel. U.S. Dep't of the Army,*
   730 F.3d 476 (5th Cir. 2013) .................................................................. 7

*Wright v. City of Petersburg, Florida,*
   833 F.3d 1291 (11th Cir. 2016) ............................................................ 14

*Zimmerman v. City of Austin, Texas,*
   881 F.3d 378 (5th Cir.) ................................................................... 8, 13

## Statutes

42 U.S.C. § 1983 ................................................................................. 2, 7

TEX. PENAL CODE § 30.05(a) ................................................................ 2

TEX. PENAL CODE §§ 30.06(a)–(b), 30.07(a)–(b) ........................................................ 19

TEX, PENAL CODE §§ 30.06(b), 30.07(b) ........................................................ 11

TEX. PENAL CODE §§ 30.05, 30.06, 30.07 ........................................................ 2, 4, 5

TEX. PENAL CODE §§ 30.06, 30.07 ........................................................ 1, 2, 3

TEX. PENAL CODE § 30.05(b)(2)(C) ........................................................ 6

TEX. PENAL CODE §§ 30.06(c)(3)(B) ........................................................ 6, 12

**Rules**

FED. R. CIV. P. 12(b)(1) ........................................................ 7

FED. R. CIV. P. 12(b)(6) ........................................................ 7

**Miscellaneous**

Tex. Att'y Gen. Op. KP-0108, 2016 WL 4267994 (Aug. 9, 2016) ................................ 12

<u>Summary of the Argument</u>

Plaintiffs, two Texas-based property owners, challenge Texas Penal Code §§ 30.06 and 30.07 (the "Acts"), which govern when persons carrying handguns can be convicted of criminal trespass. Plaintiffs focus on the Acts' sign provisions, which allow property owners to exclude gun-carrying persons by posting certain "no gun" signs. Plaintiffs claim the sign requirements violate their constitutional rights.

But Plaintiffs lack standing to bring this suit. The Acts do not require property owners to post "no gun" signs or to do anything else for that matter. Plaintiffs' injuries stem from their decisions to post the Acts' optional signs. Binding precedent holds that such self-inflicted injuries do not confer standing.

Plaintiffs' injuries are also not redressable. Plaintiffs cannot simply invalidate the Acts' sign requirements as doing so would leave them with fewer options to have gun-carrying persons convicted of criminal trespass. So, Plaintiffs are forced to ask this Court to rewrite the Acts. This too is barred by binding precedent.

Plaintiffs fare no better on the merits. Plaintiffs did not assert viable facial and as-applied challenges to the Acts since the Acts (1) can never be enforced against them and (2) do not prevent them from engaging in any course of conduct.

Further, the Acts are generally applicable laws that neither regulate expressive conduct nor single out expressive activity. In *Arcara v. Cloud Books, Inc.*, the Supreme Court held that such laws do not warrant any constitutional scrutiny.

The Acts prevail even if scrutinized. Plaintiffs assert compelled speech and unconstitutional conditions claims. Such claims require there to be government

compulsion or coercion; here there is none. Plaintiffs' right to associate claim is not viable as the Acts do not impose "direct and substantial" or "significant" burdens on their ability to exclude gun-carrying persons. Plaintiffs' vagueness claim fails as it is contradicted by the Acts' clear language. Plaintiffs' 42 U.S.C. § 1983 and Texas Constitution claims are barred by sovereign immunity under binding precedent.

In sum, Plaintiffs' Complaint is meritless. It should be dismissed.

## BACKGROUND

While Plaintiffs only challenge the Acts,[1] reviewing a third statute (Texas Penal Code § 30.05) helps put the Acts in the proper context.

## I.   An Overview of Texas Penal Code §§ 30.05, 30.06, and 30.07.

Section 30.05 is, as Plaintiffs describe, the "General Trespass Law."[2] Under § 30.05, it is a criminal offense to trespass on the property of another if the person "had notice that entry was forbidden" or "received notice to depart but failed to do so."[3] The statute's definition of "notice" includes "a sign or signs posted on the property or at the entrance to the building, reasonably likely to come to the attention of intruders, indicating that entry is forbidden."[4] Section 30.05 provides a defense to prosecution for licensed gun holders "if the basis on which entry on the property . . . was forbidden is that entry with a handgun was forbidden."[5]

Sections 30.06 and 30.07 fill a gap left by § 30.05. The Acts make it unlawful

---

[1] *See, e.g.*, Compl., at pgs. 2, 29–30.
[2] *Id.* at 2 (quotations omitted); TEX. PENAL CODE § 30.05.
[3] TEX. PENAL CODE § 30.05(a).
[4] *Id.* at § 30.05(b)(2).
[5] *Id.* at § 30.05(f).

for licensed gun holders to bring a handgun on the property of another if he or she "received notice" that entry with a gun was forbidden.[6] Per the Acts, "a person receives notice if the owner of the property or someone with apparent authority to act for the owner provides notice to the person by oral or written communication."[7]

There are two ways to give "written communication" under the Acts. First, by providing "a card or other document" containing a 36- or 40-word message (depending on which statute you are under).[8] Second, by posting a sign on the property that: (1) contains the same 36- or 40-word message; (2) "appears in contrasting colors with block letters at least one inch in height"; and (3) "is displayed in a conspicuous manner clearly visible to the public."[9]

It is a Class C misdemeanor to trespass in violation of the Acts, but the offense is heightened to a Class A misdemeanor if "the license holder was personally given the notice by oral communication . . . and subsequently failed to depart."[10] The Acts provide a defense to prosecution if "the license holder was personally given notice by oral communication . . . and promptly departed from the property."[11]

The Acts do not require property owners to say or do anything. There are no penalties if a property owner does not post the Acts' "no gun" signs. Under the Acts, a property owner can orally tell a gun-carrying person to leave or otherwise remain

---

[6] *Id.* at §§ 30.06(a), 30.07(a).

[7] *Id.* at §§ 30.06(b), 30.07(b).

[8] *Id.* at §§ 30.06(c)(3)(A), 30.07(c)(3)(A). For instance, a communication under § 30.06 would read: "Pursuant to Section 30.06, Penal Code (trespass by license holder with a concealed handgun), a person licensed under Subchapter H, Chapter 411, Government Code (handgun licensing law), may not enter this property with a concealed handgun." *Id.* at § 30.06(c)(3)(A).

[9] *Id.* at §§ 30.06(c)(3)(B), 30.07(c)(3)(B).

[10] *Id.* at §§ 30.06(d), 30.07(d).

[11] *Id.* at §§ 30.06(g), 30.07(h).

3

silent. A property owner can have gun-carrying persons excluded under § 30.05 for any reason other than that "entry with a handgun was forbidden" (i.e., "I don't like Bob, so Bob has to leave.").

## II.     An Overview of Plaintiffs' Complaint.

Plaintiffs, two Texas-based property owners, challenge the constitutionality of the Acts' sign provisions.[12] Plaintiffs assert many injuries—incurred costs, reputational damage, chilled speech, etc.—stemming from their decisions to post the Acts' optional signs.[13] Plaintiffs allege the Acts somehow prevent them from posting their preferred smaller and simpler "no gun" signs.[14]

Plaintiffs claim the Acts burden their "right to exclude."[15] In this context, the "right to exclude" appears to mean property owners' "right" to their preferred means of having people convicted of trespass.[16] Plaintiffs do not identify a single instance where they were unable to exclude a gun-carrying person due to the Acts.[17]

Plaintiffs allege the Acts' signs are "bother[ing]" their patrons (meaning these signs are getting noticed).[18] Plaintiffs cannot "recall this happening" with their simpler signs carrying the same "no guns allowed" message (meaning those simpler signs were not getting noticed).[19] Plaintiffs want to be able to post their simpler signs and then have their seemingly unsuspecting gun-carrying patrons arrested, tried,

---

[12] *See* Compl., pgs. 1–3, 29–30; *id.* at ¶¶ 5–6.
[13] *See, e.g.*, *id.* at ¶¶ 56–82, 99–113.
[14] *Id.* at ¶¶ 69, 82.
[15] *Id.* at pg. 2.
[16] *See id.*
[17] *See id.* at ¶¶ 56–82.
[18] *See, e.g.*, *id.* at ¶ 77.
[19] *See, e.g.*, *id.*

and convicted for criminal trespass.[20]

Plaintiffs argue they were "forced" to post signs compliant with the Acts.[21] They claim other options, like providing oral notice, are "unworkable" as they would require property owners to "engage in potentially dangerous one-on-one confrontations with individuals carrying weapons."[22] Plaintiffs do not identify a single "dangerous" confrontation caused by the Acts.[23]

Plaintiffs claim the Acts' sign provisions violated their rights to free speech and association under the United States and Texas Constitutions.[24] They also claim the Acts' provision giving license holders an affirmative defense if orally told to leave is unconstitutionally vague.[25]

Plaintiffs ask the Court to "[d]eclare the [Acts'] heightened notice requirements . . . to be unconstitutional on their face and as applied" and to enjoin enforcement of these provisions.[26] But invalidating the Acts' sign provisions would merely remove a property owner's ability to exclude gun-carrying individuals by posting a "no gun" sign. This would leave Plaintiffs worse off than they were before filing this suit.

So, Plaintiffs also ask the Court to "[d]eclare . . . that property owners seeking to exclude handguns . . . need only follow the notice requirements under the General Trespass Law" (meaning § 30.05).[27] Plaintiffs effectively ask this Court to *rewrite* the

---

[20] *See, e.g.*, *id.* at pgs. 29–30.
[21] *See, e.g.*, *id.* at ¶¶ 42–44.
[22] *Id.* at ¶ 42.
[23] *See id.* at ¶¶ 56–82.
[24] *Id.* at ¶¶ 99–123; *id.* at pgs. 29–30.
[25] *Id.* at ¶¶ 124–126; *id.* at pgs. 29–30.
[26] *Id.* at pgs. 29–30.
[27] *Id.* at pgs. 29–30.

Acts. They want this Court to erase §§ 30.06(c)(3)(B)'s and 30.07(c)(3)(B)'s sign provisions and replace them with § 30.05(b)(2)(C)'s more lenient provision.

## NATURE AND STAGE OF THE PROCEEDING

Plaintiffs' filed this action on September 2, 2020. No discovery has taken place. This motion to dismiss followed.

## ISSUES PRESENTED AND STANDARDS OF REVIEW

1. **Standing (Self-Inflicted Injury):** Under binding precedent, self-imposed injuries are insufficient to confer standing. Plaintiffs assert various injuries stemming from their decisions to post the Acts' "no gun" signs. But the Acts did not require Plaintiffs to post such signs, and Plaintiffs could not be penalized for failing to do so. Do Plaintiffs have standing given the voluntary nature of their injuries?

2. **Standing (Redressability):** According to Plaintiffs, to redress their injuries, this Court would have to rewrite the Acts' sign provisions. But it is well settled that courts do not have authority to rewrite statutes. Are Plaintiffs' alleged injuries redressable by this Court?

3. **All Claims (As-Applied and Facial Challenges):** To bring an as-applied challenge to a statute, the law must have actually been applied to the plaintiff. And to bring a facial challenge, the law must have proscribed conduct the plaintiff intended to engage in. The Acts can never be enforced against Plaintiffs, and they do not prevent Plaintiffs from engaging in any course of conduct. Can Plaintiffs sustain as-applied and facial challenges to the Acts under the circumstances?

4. **All Claims (Constitutional Scrutiny):** In *Arcara*, the Supreme Court emphasized that not every statute should be subject to constitutional scrutiny. The Acts do not regulate expressive conduct, single out individuals engaged in expressive activity, or otherwise meaningfully burden any constitutionally-protected rights. Are the Acts free from constitutional scrutiny under *Arcara*?

5. **First Amendment Speech Claims:** Plaintiffs assert compelled speech and unconstitutional conditions claims against the Acts. Both claims require there to be some actual compulsion or coercion at issue. But the Acts did not require Plaintiffs to post "no gun" signs, nor did they condition police intervention on whether such signs are posted. Have Plaintiffs pled viable First Amendment speech claims against the Acts under the circumstances?

6. **First Amendment Association Claim:** Plaintiffs allege the Acts' sign provisions force them to associate with persons carrying handguns. But the

6

Acts give property owners numerous options to exclude gun-carrying persons from their premises, and Plaintiffs do not allege a single incident where they had to associate with such a person due to the Acts. Did the Acts violate Plaintiffs' First Amendment right to associate?

7. **Vagueness Claim:** Plaintiffs claim the Acts are unconstitutionally vague as it is supposedly unclear whether property owners must "provide oral notice *in addition* to posting" the Acts' signs. But the Acts state that a gun-carrying person commits an offense if he or she "received notice" by "oral *or* written communication" that entry with a handgun was forbidden. Can Plaintiffs sustain a vagueness challenge when their argument is based on a misreading of the Acts' plain language?

8. **Section 1983 and Texas Constitution Claims:** Sovereign immunity generally bars federal courts from adjudicating 42 U.S.C. § 1983 and state law claims against state officers sued in their official capacities. Plaintiffs assert § 1983 and Texas Constitution claims against Defendants Paxton and Lemaux in their official capacities. Are these claims barred by sovereign immunity?

The standing and sovereign immunity issues concern whether this Court has subject matter jurisdiction over this dispute and are subject to a Fed. R. Civ. P. 12(b)(1) motion to dismiss.[28] Plaintiffs, "as the parties asserting federal subject-matter jurisdiction, bear the burden of proving that its requirements are met."[29]

The remaining issues are analyzed under Fed. R. Civ. P. 12(b)(6).[30] A Rule 12(b)(6) motion to dismiss turns on whether the plaintiff pled a "plausible" (as opposed to a "possible") claim for relief.[31]

## Arguments

## I. Plaintiffs Lack Standing as Their Alleged Injuries are Self-Inflicted.

Plaintiffs assert various injuries stemming from their decisions to post the Acts' "no gun" signs. But these signs are optional under the Acts. Plaintiffs' injuries

---

[28] *See, e.g., Block v. Texas Bd. of Law Examiners*, 952 F.3d 613, 616–17 (5th Cir. 2020); *Moore v. Bryant*, 853 F.3d 245, 248–49 (5th Cir. 2017).

[29] *Willoughby v. U.S. ex rel. U.S. Dep't of the Army*, 730 F.3d 476, 479 (5th Cir. 2013).

[30] *See, e.g., Anderson v. Valdez*, 845 F.3d 580, 589 (5th Cir. 2016).

[31] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

were thus self-inflicted, and "standing cannot be conferred by a self-inflicted injury."[32]

Below, we will review *Clapper v. Amnesty Int'l USA* ("*Amnesty International*"),[33] the Supreme Court's seminal decision on standing and self-inflicted injuries. We will then discuss the Fifth Circuit's decision in *Glass v. Paxton*,[34] which dismissed a virtually identical constitutional challenge for lack of standing. Finally, we will explain why this case cannot be meaningfully distinguished from *Glass*.

### A.   An Overview of *Amnesty International and Glass.*

In *Amnesty International*, various lawyers and journalists challenged a federal statute authorizing interception of certain international communications.[35] These plaintiffs claimed they had standing in part because they were "forced to take costly and burdensome measures" to protect their communications due to the risk of surveillance caused by the statute.[36]

The issue was whether these costs should be analyzed using the standing test for "actual" injuries or using the more stringent test for "imminent" injuries, under which injuries must be "certainly impending" to confer standing.[37] Although the plaintiffs' costs had already been incurred, and thus were "actual" in a sense, the Supreme Court applied the "imminent" test to determine whether these injuries

---

[32] *Zimmerman v. City of Austin, Texas*, 881 F.3d 378, 389 (5th Cir.), *cert. denied sub nom. Zimmerman v. City of Austin, Tex.*, 139 S. Ct. 639 (2018); *see also id.* at 390 (noting an exception for chilled speech claims that "arise from a fear of prosecution that is not imaginary or wholly speculative" that is inapplicable here as Plaintiffs cannot be prosecuted under the Acts) (quotations omitted).
[33] 568 U.S. 398 (2013).
[34] 900 F.3d 233 (5th Cir. 2018).
[35] *Amnesty International*, 568 U.S. at 401, 406–07.
[36] *Id.* at 407.
[37] *See id.* at 415–16.

conferred standing.[38]

The Court held the plaintiffs' incurred costs were insufficient to confer standing as the harm the plaintiffs "[sought] to avoid [was] not certainly impending."[39] Put differently, the plaintiffs could not "manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that [was] not certainly impending."[40] The Court reasoned that any other rule would allow "an enterprising plaintiff . . . to secure a lower standard for Article III standing simply by making an expenditure based on a nonparanoid fear."[41]

In *Glass*, the Fifth Circuit found standing was lacking in a case remarkably like this one. There, a college professor ("Glass") claimed her speech was unconstitutionally chilled by a Texas law and corresponding university policy that effectively allowed concealed handguns on the college campus.[42] The Fifth Circuit explained that *Amnesty International* required the following two-step standing inquiry: (1) "identify the harm serving as the catalyst for Glass's self-censorship" and (2) "identify each contingency prompting the self-censorship."[43] Per *Glass*, "[e]ach contingency must be 'certainly impending'" to confer standing.[44]

Glass alleged that classroom debate would be dampened due to the risk "that one or more students has one or more handguns hidden but at the ready if the gun

---

[38] *Id.*

[39] *Id.* at 416.

[40] *Id.*

[41] *Id.*

[42] *Glass*, 900 F.3d at 236–42. Technically, three professors brought the suit in *Glass*. *Id.* at 236. But the Fifth Circuit's decision, for simplicity, referred only to Glass. *Id.* at 237 n.2. Thus, we did the same.

[43] *Id.* at 240.

[44] *Id.*

owner is moved to anger and impulsive action."[45] Glass also claimed she could not ban concealed guns in her classroom "because the University [would] certainly discipline her" if she did.[46] The Fifth Circuit found that Glass's "harm contain[ed] at least two contingencies: (1) harm from concealed-carrying students incited by classroom debate and (2) harm from University disciplinary action."[47] The Court focused on the first contingency as the second was undisputed.[48]

In her complaint, Glass cited to a "broader community of views which believe that the presence of guns in the classroom will chill professors' speech" and "various academic studies" concluding that the hidden presence of guns disrupts classroom activities, increases the chance of a violent eruption in the classroom, and intimidates non-carrying students and professors.[49] The Court found these allegations insufficient to confer standing: "[N]one of [Glass's] cited evidence alleges a certainty that a license holder will illegally brandish a firearm in a classroom."[50]

The Court reasoned that "[u]ltimately, whether concealed-carrying students pose certain harm to Glass turns on their independent decision-making" and that "[b]ecause [Glass] fails to allege certainty as to how these students will exercise their future judgment, the alleged harm is not certainly impending."[51] The Court concluded: "Glass cannot manufacture standing by self-censoring her speech based

---

[45] *Id.*
[46] *Id.* at 239–40.
[47] *Id.* at 240.
[48] *Id.* at 239–40.
[49] *Id.* at 240 (quotations omitted).
[50] *Id.* at 241.
[51] *Id.*; *see also id.* at 242 ("The issue here does not concern the weight given to [Glass's] factual allegations, but rather the absence of any allegation of certainty about the students' future decisions.").

on what she alleges to be a reasonable probability that concealed-carry license holders will intimidate professors and students in the classroom."[52]

### B.    This Case Cannot be Meaningfully Distinguished from *Glass.*

There are clear similarities between this suit and *Glass.* In both cases, the plaintiffs asserted constitutional challenges to Texas handgun-carry laws.[53] In both cases, the plaintiffs engaged in the injury-causing conduct out of concern that persons with guns would become violent.[54] And in both cases, the plaintiffs' standing turned on how persons carrying handguns would exercise their future judgment.[55] *Glass* is binding and fatal to Plaintiffs' case.

Indeed, Plaintiffs' standing allegations are even weaker than those rejected in *Glass.* There are three reasons why.

First, Glass had at least alleged facts, such as various academic studies, showing that allowing gun-carrying students in the classroom would increase the risk of violence.[56] Plaintiffs make no such assertions here.[57]

Second, Glass had no choice but to allow guns in her classroom.[58] In contrast, Plaintiffs have many ways to exclude a gun-carrying person other than posting the Acts' signs, such as: (1) orally telling the person to leave;[59] (2) providing "no gun"

---

[52] *Id.* at 242.
[53] *Compare* Compl., pgs. 1–3, *with Glass,* 900 F.3d at 236–42.
[54] *Compare* Compl., ¶¶ 42–44, *with Glass,* 900 F.3d at 239–41. *See also O'Shea v. Littleton,* 414 U.S. 488, 497 (1974) (explaining that, when evaluating standing, courts assume that persons "will conduct their activities within the law").
[55] *Compare* Compl., ¶¶ 42–44, *with Glass,* 900 F.3d at 239–41.
[56] *Glass,* 900 F.3d at 239–41.
[57] *See* Compl., ¶¶ 39–98.
[58] *Glass,* 900 F.3d at 239–40 (noting it was undisputed that the university would discipline Glass if she banned students from carrying guns into her classroom).
[59] TEX. PENAL CODE §§ 30.06(b), 30.07(b).

11

cards or documents to their patrons;[60] or (3) posting noncompliant signs and relying

on the civil law of trespass.[61] Plaintiffs speculate that these options are unworkable,

but they make no meaningful assertions to this effect.[62]

Finally, Glass did not want to chill her speech.[63] Here, Plaintiffs want to

engage in the injury-causing action—they *want* to post "no gun" signs, just slightly

different ones.[64] In *Amnesty International*, the Supreme Court analyzed a similar

situation and found it created traceability problems.[65] Plaintiffs, who admit they

would post "no gun" signs regardless of the Acts, cannot now complain that injuries

stemming from these signs are attributable to the Acts.

Plaintiffs' alleged harms are quintessential self-inflicted injuries. This Court

should follow *Glass* and dismiss this suit for lack of standing.

## II.     Plaintiffs Lack Standing Because This Court Cannot Rewrite the Acts.

"To satisfy redressability, a plaintiff must show 'it is *likely*, as opposed to

merely *speculative*, that the injury will be redressed by a favorable decision.'"[66]

Plaintiffs want this Court to erase §§ 30.06(c)(3)(B)'s and 30.07(c)(3)(B)'s sign

provisions and replace them with § 30.05(b)(2)(C)'s more lenient provision.[67] But it is

---

[60] *Id.* at §§ 30.06(b)–(c)(3)(A), 30.07(b)–(c)(3)(A).

[61] *See* Tex. Att'y Gen. Op. KP-0108, 2016 WL 4267994, at *2 n.2 (Aug. 9, 2016) (explaining that, while criminal enforcement may not be available under the Acts, "[s]uch a conclusion would not necessarily preclude a private entity's claim for civil trespass" and finding "no authority" that the Acts prohibit property owners from using civil trespass to exclude gun-carrying persons from their properties).

[62] *See* Compl., ¶¶ 39–82.

[63] *See Glass*, 900 F.3d at 239–40.

[64] Compl., ¶¶ 55, 69, 81–82.

[65] 568 U.S. at 417 ("Another reason that respondents' present injuries are not fairly traceable to § 1881a is that even before § 1881a was enacted, they had a similar incentive to engage in many of the countermeasures that they are now taking.").

[66] *Inclusive Communities Project, Inc. v. Dep't of Treasury*, 946 F.3d 649, 655 (5th Cir. 2019) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000)).

[67] *See* Compl., pgs. 29–30.

well settled that federal courts cannot rewrite statutes in such a manner.[68] Thus, Plaintiffs lack standing as this Court cannot grant their requested relief.

## III.    Plaintiffs' As-Applied and Facial Claims Fail: The Acts Never have been and Never will be Enforced Against Them.

Generally, "a party cannot challenge a statute as-applied unless the statute has been applied to him."[69] Plaintiffs' as-applied challenge fails as the Acts require nothing of Plaintiffs and can never be enforced against them.[70]

Plaintiffs' facial challenge is similarly flawed. "To establish an injury sufficient to raise a First Amendment facial challenge, 'a plaintiff must produce evidence of an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by statute.'"[71] Plaintiffs cannot meet this requirement as the Acts do not "proscribe[]" any course of conduct they may want to take. Plaintiffs also cannot show the Acts are invalid under *every* set of circumstances,[72] such as where the property owner: (1) ignores the Acts, which is permissible as the Acts require him to do or say nothing; (2) wants gun-carrying individuals on his premises (e.g., if the owner runs a shooting range); or (3) wants to put up the Acts' optional "no gun" signs.

---

[68] *See, e.g., King Ranch, Inc. v. United States*, 946 F.2d 35, 37 (5th Cir. 1991); *Hill v. City of Houston, Tex.*, 789 F.2d 1103, 1112 (5th Cir. 1986), *aff'd,* 482 U.S. 451 (1987); *McLaughlin v. Lindemann*, 853 F.2d 1307, 1310 (5th Cir. 1988); *Universal Amusement Co. v. Vance*, 587 F.2d 159, 172 (5th Cir. 1978), *aff'd,* 445 U.S. 308 (1980).

[69] *Ctr. for Individual Freedom v. Carmouche*, 449 F.3d 655, 659 (5th Cir. 2006); *see also id.* at 659 n.3 ("Exceptions include circumstances where third-party standing is appropriate.").

[70] *See, e.g., Houston Chronicle Pub. Co. v. City of League City, Tex.*, 488 F.3d 613, 622–23 (5th Cir. 2007) (rejecting an as-applied challenge to a statute (§ 78–39), explaining: "The two citations were pursuant to § 78–38, *not* § 78–39. Neither newspaper contends the city has ever enforced § 38–39 against them, and the district court made no such factual finding") (citing *Nat'l Endowment for the Arts v. Finley*, 524 U.S. 569, 586–87 (1998)).

[71] *Zimmerman*, 881 F.3d 378, 388 (5th Cir. 2018) (quoting *Nat'l Fed'n of the Blind of Tex. v. Abbott*, 647 F.3d 202, 209 (5th Cir. 2011)).

[72] *See United States v. McGinnis*, 956 F.3d 747, 752–53 (5th Cir. 2020).

This suit should be dismissed as Plaintiffs failed to plead viable as-applied and facial challenges against the Acts.

## IV. The Acts Do Not Warrant Constitutional Scrutiny Under the Supreme Court's Decision in *Arcara*.

The Acts should not be subjected to any level of constitutional scrutiny under the Supreme Court's decision in *Arcara v. Cloud Books, Inc.*[73]

In *Arcara*, a set of New York statutes made operating places of prostitution and lewdness a public nuisance.[74] Erie County was in the process of closing Cloud Books under these nuisance statutes after an undercover investigator observed illicit sexual activities and solicitation of prostitutes occurring on the store's premises.[75] Cloud Books argued that closure would violate its First Amendment right to sell books on the premises.[76]

The Court rejected this argument. The Court explained that "every civil and criminal remedy imposes some conceivable burden on First Amendment protected activities," but not every such law is subject to constitutional scrutiny.[77] The Court found that, in the First Amendment context, constitutional scrutiny is only appropriate in two situations: (1) where there was "conduct with a significant expressive element that drew the legal remedy in the first place," or (2) "where a statute based on a nonexpressive activity has the inevitable effect of singling out

---

[73] 478 U.S. 697 (1986); *see also Wright v. City of Petersburg, Florida*, 833 F.3d 1291 (11th Cir. 2016) (applying *Arcara* to reject a constitutional challenge to a city's trespass laws).
[74] *Arcara*, 478 U.S. at 699.
[75] *Id.* at 698–99.
[76] *Id.* at 700.
[77] *Id.* at 705–06.

those engaged in expressive activity."[78]

The Court noted that the sexual activity on Cloud Books' property "manifested absolutely no element of protected expression," and that the challenged statutes did not single out bookstores "engaged in First Amendment protected activities for the imposition of its burden."[79] The Court also found it relevant that any burden on Cloud Books' First Amendment rights would be "mitigated by the fact that [Cloud Books] remain[ed] free to sell the same materials at another location."[80]

The Court held that, under the circumstances, the closure of Cloud Books was not subject to any level of constitutional scrutiny: "[W]e conclude the First Amendment is not implicated by the enforcement of a public health regulation of general application against the physical premises in which respondents happen to sell books."[81]

Neither of *Arcara's* two categories apply here. The Acts regulate nonexpressive conduct—specifically, when a person carrying a handgun can be prosecuted for trespass. And the Acts do not "inevitably" single out anti-gun property owners, who remain free to say and do whatever they want about guns. The Acts merely designate the conditions under which a gun-carrying person may be held criminally responsible for trespassing when the sole reasons for exclusion is a sign. And any alleged burden on a property owner's "right to exclude" is mitigated by the presence of numerous

---

[78] *Id.* at 706–07.
[79] *Id.* at 704–05.
[80] *Id.* at 705.
[81] *Id.* at 707; *see also id.* at 708 (reasoning that "[a]ny other conclusion would lead to the absurd result that any government action that had some conceivable speech-inhibiting consequences, such as the arrest of a newscaster for a traffic violation, would require analysis under the First Amendment.") (O'Connor, J., concurring).

other options for excluding such gun-carrying persons.

*Arcara* rejected a stronger argument for constitutional scrutiny than is presented here. There, the challenged law had at least been applied to the plaintiff, so there was some conceivable burden on its constitutional rights. Here, the Acts can never be applied to Plaintiffs. This Court should follow *Arcara*, refuse to subject the Acts to constitutional scrutiny, and dismiss Plaintiffs' claims.

## V.   Plaintiffs' Free Speech Claims Fail as They were Not Compelled or Coerced into Posting the Acts' "No Gun" Signs.

Plaintiffs lob nearly every First-Amendment-sounding word at the Acts.[82] Most of their allegations are undeveloped or otherwise clearly barred by precedent.[83] Out of the rubble emerges two claims that appear to be Plaintiffs' overarching free speech challenges to the Acts: (1) a compelled speech claim and (2) an unconstitutional conditions claim.[84] Yet both claims require there to be some actual compulsion or coercion at issue.[85] Here, there is none.

---

[82] *See, e.g.*, Compl., ¶¶ 103–111 (in a span of nine paragraphs, Plaintiffs claim the Acts: (1) "compel speech"; (2) are "unduly burdensome"; (3) "impose unconstitutional conditions"); (4) are "vague and do not provide adequate guidance to Texas property owners"); (5) are "content-based"; (6) are "subject-matter based"; (7) are "viewpoint-based"; (8) "alter and restrict the content of property owners' speech"; (9) "chill speech based not only on content but also a particular viewpoint"; (10) are "unconstitutionally overbroad"; (11) are "drastically underinclusive"; and (12) are "not sufficiently tailored to further a governmental interest").

[83] *Compare id.* at ¶¶ 99–113, *with United States v. O'Brien*, 391 U.S. 367, 383–84 (1968) (explaining that inquiry into one legislator's statements will not void an otherwise constitutional statute); *Serv. Employees Int'l Union, Local 5 v. City of Houston*, 595 F.3d 588, 598 (5th Cir. 2010) (explaining that, under the overbreadth doctrine, "the plaintiff must establish injury under a particular provision of a regulation that is validly applied to its conduct"); *Morrison v. Bd. of Educ. of Boyd Cty.*, 521 F.3d 602, 610 (6th Cir. 2008) ("In order to have standing . . . , a litigant alleging chill must establish that a concrete harm—i.e. enforcement of a challenged statute—occurred or is imminent.").

[84] *See, e.g.*, Compl., ¶¶ 99–113.

[85] *See, e.g.*, *Pace v. Bogalusa City Sch. Bd.*, 403 F.3d 272, 286–87 (5th Cir. 2005); *C.N. v. Ridgewood Bd. of Educ.*, 430 F.3d 159, 189 (3d Cir. 2005); *Marinello v. Bushby*, No. CIV. A.1:95CV167-D-D, 1996 WL 671410, at *13 (N.D. Miss. Nov. 1, 1996), *aff'd*, 163 F.3d 1356 (5th Cir. 1998).

16

To compel or coerce "the exercise or suppression of speech, the governmental measure must punish, or threaten to punish, protected speech by governmental action that is 'regulatory, proscriptive, or compulsory in nature.'"[86] "The consequence need not be direct; imprisonment, fines, injunctions, or taxes may suffice."[87] But "[a] discouragement that is 'minimal' and 'wholly subjective' does not . . . impermissibly deter the exercise of free speech rights."[88]

The Acts neither required Plaintiffs to post "no gun" signs, nor conditioned police intervention on whether such signs are posted. Plaintiffs' free speech claims fail as there is no compulsion or coercion at issue.

## VI. Plaintiffs' Association Claim Fails as the Acts did Not Meaningfully Impact Their Ability to Exclude Persons Carrying Handguns.

Plaintiffs allege they are forced to admit gun-carrying persons unless they post signs required by the Acts.[89] This is false—the Acts leave open numerous other options to exclude such individuals. Plaintiffs fail to identify a single incident where they were forced to "associate" with persons carrying handguns due to the Acts.

Even if true, this is not a cognizable claim. To be viable, there must be a "direct and substantial" or a "significant" interference with Plaintiffs' associational rights.[90] At most, Plaintiffs complain about having to orally tell gun-carrying persons to leave.

---

[86] *Phelan v. Laramie Cty. Cmty. Coll. Bd. of Trustees*, 235 F.3d 1243, 1247 (10th Cir. 2000) (quoting *Laird v. Tatum*, 408 U.S. 1, 11 (1950)).

[87] *Wilkins v. Daniels*, 744 F.3d 409, 415 (6th Cir. 2014) (citing *Axson-Flynn v. Johnson*, 356 F.3d 1277, 1290 (10th Cir. 2004)); *C.N.*, 430 F.3d at 189.

[88] *Phelan*, 235 F.3d at 1247–48 (quoting *United States v. Ramsey*, 431 U.S. 606, 623–24 (1977)).

[89] *See* Compl., ¶¶ 114–19.

[90] *See, e.g.*, *Lyng v. Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am., UAW*, 485 U.S. 360, 367, n.5 (1988); *Fighting Finest, Inc. v. Bratton*, 95 F.3d 224, 228 (2d Cir. 1996); *Anderson v. Waddle*, No. 4:06CV919 HEA, 2008 WL 4561467, at *8 (E.D. Mo. Oct. 10, 2008), *aff'd in part, appeal dismissed in part sub nom. Heartland Acad. Cmty. Church v. Waddle*, 595 F.3d 798 (8th Cir. 2010).

Such minor gripes are not what First Amendment association claims are made of.[91]

## VII.   Plaintiffs' Vagueness Claim Ignores the Acts' Plain Language.

The vagueness doctrine "requires states articulate a proscription 'with sufficient definiteness that ordinary people can understand what conduct is prohibited' while providing enough objective metrics that it 'does not encourage arbitrary and discriminatory enforcement.'"[92] "[S]peculation about possible vagueness in hypothetical situations not before the Court will not support a facial attack on a statute when it is surely valid 'in the vast majority of its intended applications[.]'"[93]

Plaintiffs argue the Acts' affirmative defenses are unconstitutionally vague as "it is unclear whether the Acts require property owners to provide oral notice *in addition* to posting the burdensome signs."[94] This is wrong for three reasons.

First, property owners cannot be prosecuted under the Acts, so it is unclear how the Acts' affirmative defenses could ever meaningfully impact Plaintiffs' rights.

Second, Plaintiffs are merely speculating that the Acts' affirmative defenses could be vague if applied to some hypothetical situation not before the Court.

Finally, the Acts unambiguously state that gun-carrying persons commit an offense if they "received notice" by "oral *or* written communication" that entry with a handgun was forbidden.[95] Plaintiffs purport to be confused about the meaning of the

---

[91] *See, e.g.*, *Rumsfeld v. Forum for Academic and Institutional Rights, Inc.*, 547 U.S. 47, 69–70 (2006).
[92] *Texas Med. Providers Performing Abortion Servs. v. Lakey*, 667 F.3d 570, 580 (5th Cir. 2012) (quoting *Gonzales v. Carhart*, 550 U.S. 124, 149 (2007)).
[93] *Grayned v. City of Rockford*, 408 U.S. 104, 110 (1972) (quoting *United States v. Raines*, 362 U.S. 17, 23 (1960)).
[94] Compl., ¶ 125.
[95] TEX. PENAL CODE §§ 30.06(a)–(b), 30.07(a)–(b) (emphasis added).

word "or" in this context. But a plain reading unambiguously indicates that either oral or written notice alone would suffice to trigger criminal trespass. Neither Plaintiffs nor this Court can ignore the Acts' plain language.

## VIII. Plaintiffs' § 1983 and Texas Constitution Claims are Barred by Sovereign Immunity.

Plaintiffs sued Paxton in Lemaux in their official capacities and asserted § 1983 and Texas Constitution claims against these two Defendants.[96] It is well settled that sovereign immunity bars these claims,[97] so they must be dismissed.

### CONCLUSION

Plaintiffs challenge two Texas criminal laws they cannot be prosecuted under and are free to ignore. The alleged burdens stemming from the Acts are self-inflicted, unsupported, speculative, and insignificant. On these rickety pleadings, Plaintiffs ask this Court to rewrite these laws in a manner never intended by the Texas Legislature.

Numerous Fifth Circuit and Supreme Court decisions—such as *Amnesty International*, *Glass*, and *Arcara*—preclude the relief Plaintiffs request. Plaintiffs' suit is barred by binding precedent and is otherwise meritless. It should be dismissed in its entirety.

Date: November 18, 2020.                    Respectfully submitted.

                                            KEN PAXTON
                                            Attorney General of Texas

---

[96] *See* Compl., pg. 1; *id.* at ¶¶ 2, 7, 13, 120–23.

[97] *See, e.g., Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 121 (1984) (Eleventh Amendment bars state law claims brought in federal court); *NiGen Biotech, L.L.C. v. Paxton*, 804 F.3d 389, 393 (5th Cir. 2015); *Aguilar v. Texas Dep't of Criminal Justice*, 160 F.3d 1052, 1054 (5th Cir. 1998).

BRENT WEBSTER
First Assistant Attorney General

SHAWN COWLES
Deputy Attorney General for Civil Litigation

THOMAS A. ALBRIGHT
Chief for General Litigation Division


/s/ *Todd Dickerson*
TODD DICKERSON
Attorney-in-Charge
Assistant Attorney General
Texas Bar No. 24118368
So. District No. 3544329
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2120 | FAX: (512) 320-0667
Todd.Dickerson@oag.texas.gov

**COUNSEL FOR DEFENDANTS KEN PAXTON
AND KIM LEMAUX**


## CERTIFICATE OF SERVICE

I certify that a true and correct copy of this foregoing motion has been served on all parties of record by electronic notification through ECF by the United States District Court for the Southern District of Texas, Houston Division, on November 18, 2020.

/s/ *Todd Dickerson*
TODD DICKERSON
Assistant Attorney General