United States District Court
Southern District of Texas
**ENTERED**
August 27, 2021
Nathan Ochsner, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **BAY AREA UNITARIAN** | § | |
| **UNIVERSALIST CHURCH, et al.,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **CASE NO. 4:20-CV-3081** |
| | § | |
| **KEN PAXTON, et al.** | § | |
| | § | |
| **Defendants.** | § | |

<u>**O R D E R**</u>

Pending before the Court are motions to dismiss filed by Kim Lemaux, Ken Paxton, Ed Gonzalez, Kim Ogg, Vince Ryan, Art Acevedo, and Pete Bacon. **(Instruments No. 28; No. 38; No. 42; No. 52).**

**I.**

**A.**

This civil rights action arises from Plaintiffs' objection to the enforcement of two Texas statute provisions, Texas Penal Code § 30.06 and § 30.07. (Instrument No. 1 at 2).

**1.**

Plaintiffs Bay Area Unitarian Universalist Church ("Bay Area Church" or the "Church"), Drink Houston Better, LLC d/b/a Antidote Coffee ("Antidote Coffee"), and Perk You later, LLC ("Perk You Later") are located in Harris County (collectively, "Plaintiffs"). (Instrument No. 1 at 4). Bay Area Church is a Unitarian Universalist church located on the border of the Cities of Houston and Webster. *Id.* Bay Area Church has approximately 225 official members and numerous non-members that attend the Bay Area Church's services and events. (Instrument No.

1 at 17). Antidote Coffee is a small shop in Houston that serves coffee, wine, and ice cream. *Id.* at 4. Perk You Later owns the building in which Antidote Coffee is located and is owned by the same entity as Antidote Coffee. *Id.*

Plaintiffs file suit against the following individuals in their official capacities: Attorney General for the State of Texas, Ken Paxton and Presiding Officer for the Texas Commission on Law Enforcement, Kim Lemaux (collectively, "Texas Officials"); District Attorney for Harris County, Kim Ogg; County Attorney for Harris County, Vince Ryan, and County Sheriff for Harris County, Ed Gonzalez (collectively, "Harris County Officials"); Acting Chief of Police for the City of Webster Police Department, Pete Bacon ("Chief Bacon"); and Chief of the Houston Police Department, Art Acevedo ("Chief Acevedo") (collectively, "Defendants"). (Instrument No. 1 at 4-5).

**2.**

Under Texas's General Trespass Law, Texas Penal Code § 30.05, "A person commits an offense if the person enters or remains on or in property of another . . . without effective consent" and the person (1) "had notice that the entry was forbidden" or (2) "received notice to depart but failed to do so." Tex. Penal Code § 30.05. Section 30.05 states that a property owner may provide notice in numerous ways, including by oral or written communication, an enclosure that is obviously designed to exclude, and a sign that is reasonably likely to come to the attention of the intruders. *See id.* at § 30.05(b)(2). A violation of the General Trespass Law results in a Class B or C misdemeanor, and can result in a Class A misdemeanor if the trespasser carries a deadly weapon during the commission of the offense. *Id.* at § 30.05(d)(3)(C).

In 2003, an exception to the General Trespass Law was carved out. Specifically, the Law states that it is a defense to prosecution if a person is forbidden from entering the property

because entry with a handgun was forbidden. *Id.* at § 30.05(f). In 2003, the exception applies to those who carried a concealed handgun with a permit. *Id.*; (Instrument No. 1 at 7). In 2015, the exception expanded to exclude a person openly carrying a handgun "in a shoulder or belt holster." Tex. Penal Code § 30.05; (Instrument No. 1 at 7).

Following these exceptions, Texas Penal Code § 30.06 and § 30.07 (collectively, the "Acts") were enacted to create trespass crimes for those exempted under § 30.05(f). Section 30.06 ("Concealed Carry Trespass Law") covers concealed handgun license holders and Section 30.07 ("Open Carry Trespass Law") covers open-carry handgun license holders. Tex. Penal Code §§ 30.06, 30.07.

Under the Concealed Carry Trespass Law, a person commits an offense if the person carries a concealed handgun on the property of another without consent and receives notice by oral or written communication that the concealed handgun was forbidden. Tex. Penal Code § 30.06. "Written communication" means:

> (A)    a card or other document on which is written language identical to the following: "Pursuant to Section 30.06, Penal Code (trespass by license holder with a concealed handgun), a person licensed under Subchapter H, Chapter 411, Government Code (handgun licensing law), may not enter this property with a concealed handgun"; or
> (B)    a sign posted on the property that:
>> i. includes the language described by Paragraph (A) in both English and Spanish;
>> ii. appears in contrasting colors with block letters at least one inch in height; and
>> iii. is displayed in a conspicuous manner clearly visible to the public.

Tex. Penal Code § 30.06(c)(3). The Open Carry Trespass Law includes the same definition of "written communication," however, the sign posted on the property must also be "displayed in a conspicuous manner clearly visible to the public at each entrance to the property." Tex. Penal Code § 30.07(c). These statutes only encompass handguns. Therefore, if property owners want to

also exclude other types of guns, Plaintiffs allege that they must post a third sign under the General Trespass Law. (Instrument No. 1 at 9). Additionally, the signs under the statutes are not free; the cost to produce the signs must be incurred by the property owners. *Id.* at 16.

### 3.

Bay Area Church's official policy forbids carrying firearms—open or concealed—onto the Church's property. *Id.* However, Bay Area Church currently only displays the open carry signs in English and Spanish in accordance with the Open Carry Trespass Law. *Id.* at 18. The Church only displays signs pursuant to the Open Carry Trespass Law because the Church alleges that having signs under both laws would take up too much space on the doorways and would be too obtrusive. (Instrument No. 1 at 18). The Church alleges that the signs are eighteen inches by twenty-four inches. *Id.* Bay Area Church paid $111.80 for these signs. *Id.* The signs are displayed at the front and side entrances to the building. *Id.* The Church alleges that the signs detract from its core religious tenets, namely addressing conflict through non-violence, communication, love, and compassion. *Id.* at 19. Greeters of the Church are trained to ask a person with a firearm to leave the firearm outside, but only if the greeter feels comfortable doing so. *Id.* at 19. If not, the greeters are instructed to immediately call 911. *Id.*

Antidote Coffee objects to guns being on its property because it believes that the presence of guns would create an unsafe environment for their customers, which includes adults, children, and families. (Instrument No. 1 at 20). Prior to 2016, Antidote Coffee displayed a pictograph sign with a picture of a gun enclosed in a red circle with a red diagonal through it. *Id.* at 20. The sign measured three inches by three inches. *Id.* Since 2016, Antidote Coffee posted both sets of signs required under § 30.06 and § 30.07. *Id.* Plaintiffs allege that the signs cover a large portion of the windowpane next to the front door and frustrate the desired "neighborhood coffee shop"

4

aesthetic. Plaintiffs further allege that these signs force Antidote Coffee to make a "bold political statement" regarding guns. *Id.* Antidote Coffee has installed these signs on two occasions. *Id.* The first time, Antidote Coffee paid $70 for the signs and $90 for the signs to be installed on the window. *Id.* The second time, Antidote Coffee paid approximately $100 for the signs. *Id.* The § 30.06 signs measure approximately thirteen inches by twenty-two inches, and the § 30.07 signs measure approximately eighteen inches by twenty-two inches. *Id.* at 21. Altogether, the signs measure approximately ten square feet. *Id.*

Plaintiffs allege that the signs have occasionally bothered customers. Plaintiffs allege that a customer once wrote about Antidote Coffee on an online forum dedicated to the Acts, stating, "I guess I have to go somewhere else for coffee." *Id.* Plaintiffs also allege that, on at least two occasions, patrons have entered the premises with handguns and refused to leave despite the signs and being asked to leave by staff members. *Id.*

## B.

On September 2, 2020, Plaintiffs filed their Complaint. (Instrument No. 1). Plaintiffs assert the following claims: (1) violation of their First Amendment free speech right; (2) violation of their First Amendment free association right; (3) violation of Texas Constitution, Article 1, § 8; and (4) due process violation under the Fifth and Fourteenth Amendments. (Instrument No. 1 at 26-29).

On November 18, 2020, the Texas Officials filed their Motion to Dismiss. (Instrument No. 28). On December 7, 2020, Harris County Officials filed their Motion to Dismiss. (Instrument No. 38). On December 15, 2020, Chief Acevedo filed his Motion to Dismiss. (Instrument No. 42). On January 4, 2021, Chief Bacon filed his Motion to Dismiss. (Instrument No. 52).

On January 15, 2021, Plaintiffs filed their consolidated response to all the motions. (Instrument No. 57). On February 4, 2021, the Texas Officials filed their Reply. (Instrument No. 59). On February 5, 2021, Defendant Art Acevedo filed his Reply. (Instrument No. 60). On February 12, 2021, Bacon filed its Reply. (Instrument No. 62).

## II.

"A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998) (internal quotation omitted). A district court may dismiss an action for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) on any one of three separate bases: (1) the complaint alone, (2) the complaint supplemented by undisputed facts evidenced in the record, or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citing *Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996)).

In examining a Rule 12(b)(1) motion, courts are empowered to consider matters of fact which are in dispute. *See Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981) (noting that district courts determining jurisdiction may hear conflicting written and oral evidence and decide for itself the factual issues). Any uncontroverted facts in the complaint must, however, be accepted as true. *See Gaubert v. United States*, 885 F.2d 1284, 1285 (5th Cir. 1989), *rev'd on other grounds*, 499 U.S. 315 (1991). The court must also construe the complaint broadly and liberally, although argumentative inferences favorable to the pleader will not be drawn. *Id.* When the court's subject matter jurisdiction is challenged, the party asserting jurisdiction bears the

burden of establishing it. *Life Partners Inc. v. United States*, 650 F.3d 1026, 1029 (5th Cir. 2011).

When a Rule 12(b)(1) is filed in conjunction with other Rule 12 motions, the court should usually consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits. *Ramming*, 281 F.3d at 161. This prevents a court without jurisdiction from prematurely dismissing a case with prejudice. *Id.* The court's dismissal of a plaintiff's case because of lack of subject matter jurisdiction is not a determination of the merits and does not prevent the plaintiff from pursuing a claim in a court that does have proper jurisdiction. *Id.*

A motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction should be granted only if it appears that the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief. *Ramming*, 281 F.3d at 161.

Under Rule 8 of the Federal Rules of Civil Procedure, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint need not contain "detailed factual allegations," but it must include "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

When a complaint does not meet the pleading requirements of Rule 8, Rule 12(b)(6) authorizes dismissal of a civil action for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, the complaint must articulate "the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). Stated otherwise, in order to withstand a motion to dismiss, a complaint must contain sufficient factual matter, accepted as

true, to state a claim for relief that is plausible on its face. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570); *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011). A claim for relief is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *Montoya v. FedEx Ground Package Sys., Inc.*, 614 F.3d 145, 148 (5th Cir. 2010).

When ruling on a 12(b)(6) motion, the Court may consider "the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Wolcott v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (internal citations and quotations omitted); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). The Court does not resolve any disputed fact issues. *Smith v. Reg'l Transit Auth.*, 756 F.3d 340, 347 (5th Cir. 2014). Instead, the Court assumes all well-pleaded facts contained in the complaint are true. *Wolcott*, 635 F.3d at 763. The Court will not, however, "accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Great Lakes Dredge & Dock Co. LLC v. La. State*, 624 F.3d 201, 210 (5th Cir. 2010) (internal quotation omitted). Similarly, legal conclusions masquerading as factual conclusions need not be treated as true. *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995); *see also Iqbal*, 556 U.S. at 678. Although all well-pleaded facts are viewed in the light most favorable to the plaintiff, *Turner*, 663 F.3d at 775; *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009), the Court "will not strain to find inferences favorable to the plaintiff." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (internal citations and quotations omitted). Therefore, to avoid a dismissal for failure to state a claim, a plaintiff must plead specific facts. *Dorsey*, 540 F.3d at 338.

## III.

Defendants each seek to dismiss Plaintiffs' claims for lack of subject matter jurisdiction and for failure to state a claim. *See generally* (Instruments No. 28; No. 38; No. 42; No. 52).

## A.

Turning to the 12(b)(1) motions first, Defendants each move to dismiss Plaintiffs' claims for lack of standing. (Instruments No. 28 at 13; No. 38 at 4; No. 42 at 4; No. 52 at 11). City of Houston Officials, Chief Acevedo, and Chief Bacon also move to dismiss Plaintiffs' claims for lack of ripeness. (Instruments No. 38 at 7; No. 42 at 7; No. 52 at 19).

Article III of the United States Constitution limits the jurisdiction of federal courts to "cases" and "controversies" between the plaintiff and defendant. *See Warth v. Seldin*, 422 U.S. 490, 498 (1975); *Sample v. Morrison*, 406 F.3d 310, 312 (5th Cir. 2005). To determine if an issue meets the case-or-controversy requirement, courts have developed justiciability doctrines such as standing and ripeness. *See Sample*, 406 F.3d at 312.

## 1.

Defendants contend that Plaintiffs lack standing to bring their claims. (Instruments No. 28 at 13; No. 38 at 5; No. 42 at 4; No. 52 at 12).

"[T]he question is whether the person whose standing is challenged is a proper party to request an adjudication or a particular issue and not whether the issue itself is justiciable." *Flast v. Cohen*, 392 U.S. 83, 99-100 (1968). To establish standing, the party invoking federal jurisdiction bears the burden of proving "an invasion of a legally protected interest." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). The plaintiff must establish (1) that he or she suffered an injury in fact, which is (2) fairly traceable to the defendant's conduct, and (3) will be

redressed by a favorable decision. *See Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000).

**i.**

Defendants generally assert that Plaintiffs do not suffer a sufficient injury because their harms are hypothetical and not particularized, concrete, or imminent. (Instruments No. 28; No. 38; No. 42; No. 52).

To establish standing, a plaintiff must assert an injury in fact. *See Laidlaw*, 528 U.S. at 180. An injury in fact is a legally protected interest that is (a) concrete and particularized and (b) actual or imminent, not hypothetical or conjectural. *See Laidlaw*, 528 U.S. at 180. The injury in fact must be the result of the statute's actual or threatened enforcement, either in present day or in the future. *See California v. Texas*, 141 S. Ct. 2104, 2114 (2021); *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979) ("A plaintiff who challenges a statute must demonstrate a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement.").

Plaintiffs argue that their injuries arise from being forced to make a choice between a benefit and their constitutional rights. (Instrument No. 57 at 17). Plaintiffs contend that they must forfeit either their right to exclude others or their First Amendment free speech right. Specifically, Plaintiffs assert that if they do not comply with the Acts' heightened notice requirements, they are unable to exclude licensed handgun carriers with the support of police protection and the threat of criminal prosecution. Conversely, if Plaintiffs comply with the heightened notice requirements, Plaintiffs argue that their free speech right is violated. *Id.* Both choices, Plaintiffs assert, are injurious. *Id.*

Texas Officials raise several arguments as to why Plaintiffs fail to establish injury in fact. Texas Officials first argue that Plaintiffs' injuries are self-inflicted. (Instrument No. 28 at 13-14). Standing is not typically conferred by a self-inflicted injury. *See Zimmerman v. City of Austin*, 881 F.3d 378, 389 (5th Cir. 2018). In the First Amendment context, however, self-censorship can give rise to a cognizable constitutional injury if the fear of harm is not "imaginary or wholly speculative." *See Zimmerman*, 881 F.3d at 390 (internal quotations omitted). The fear must relate to a specific present objective harm or a threat of specific future harm. *Glass v. Paxton*, 900 F.3d 233, 239 (5th Cir. 2018) (internal citations omitted). Allegations of a subjective chilling of speech is not enough. *Id.*

Texas Officials specifically contend that Plaintiffs' injuries stem from their voluntary decisions to post the "no gun" signs under the Acts, which is an impermissible subjective First Amendment injury. (Instrument No. 28 at 13-14). Texas Officials contend that Plaintiffs' case is akin to *Glass*. (Instrument No. 28 at 17-18). In *Glass*, the Fifth Circuit held that the professor did not have standing when she self-censored her speech for fear of inciting concealed-carrying students and being disciplined by the university. *See Glass*, 900 F.3d at 240-42.

However, here, Plaintiffs' injury is distinguishable from that in *Glass* as it does not arise out of self-censorship. Plaintiffs contend that they are harmed by complying with the heightened notice requirements or, in the alternative, relinquishing police protection if they refuse to comply. (Instrument No. 57 at 23). Plaintiffs argue that this heightened notice requirement with which they must comply is compelled government speech. This harm is distinct from the self-imposed censorship for fear of inciting handgun carriers in *Glass*. Because Plaintiffs' injuries arise from the alleged compulsion of speech, not the self-imposed censorship for fear of inciting handgun carriers, Plaintiffs' injuries are distinct from that in *Glass*.

11

Texas Officials also argue that Plaintiffs fail to establish an injury sufficient to raise a First Amendment as-applied and facial challenge to the Acts. (Instrument No. 28 at 19). Texas Officials do not clearly state whether this argument relates to their standing challenge or their Rule 12(b)(6) motion. *Id.* Based on the case law cited for support, the Court treats these arguments as challenges to Plaintiffs' standing.

First, Texas Officials argue that Plaintiffs fail to raise an as-applied challenge because the Acts can never be enforced against Plaintiffs and, therefore, the Acts do not apply to Plaintiffs. (Instrument No. 28 at 19). To establish an as-applied injury, a party must demonstrate that the statute has been applied to the party. *See Ctr. For Individual Freedom v. Carmouche*, 449 F.3d 655, 659 (5th Cir. 2006). While the Acts are not directly enforceable against Plaintiffs, the Acts enumerate notice requirements that property owners must comply with to gain the protection of the Acts. *See* Tex. Penal Code §§ 30.06, 30.07. Property owners must either provide oral or written notice to all those entering the property to be covered by the Acts. *Id.* For written notice, the property owner must either provide a card with the requisite language to each person entering the property or post a sign with the requisite language and font size. *Id.* Here, the Acts apply to Plaintiffs as indicated by Plaintiffs' allegations that they have purchased signs to comply with the notice requirements. (Instrument No. 1 at 18-20). Thus, Plaintiffs have established an as-applied challenge.

Second, Texas Officials also contend that Plaintiffs fail to assert a facial challenge. (Instrument No. 28 at 19). To establish an injury sufficient to raise a First Amendment facial challenge, "the challenger must establish that no set of circumstances exists under which the [statute] would be valid." *United States v. McGinnis*, 956 F.3d 747, 752-53 (5th Cir. 2020) (citing *United States v. Salerno*, 481 U.S. 739, 745 (1987)). Facial challenges are generally

disfavored because they depart from the norm of determining the constitutionality of a law as it applies to different parties and circumstances. *See Sabri v. United States*, 541 U.S. 600, 609 (2004). "Facial challenges to the constitutionality of statutes should be granted sparingly and only as a last resort." *McGinnis*, 956 F.3d at 752-53 (quoting *Serafine v. Branaman*, 810 F.3d 354, 365 (5th Cir. 2016). However, certain First Amendment concerns are "weighty enough" to overcome the Court's reticence to consider facial challenges. *See Sabri*, 541 U.S. 600 at 609-10. Here, Plaintiffs contend that the Acts are invalid in every circumstance because "[n]o *one* can be forced to choose between their First Amendment rights and police protection of property." (Instrument No. 57 at 28) (emphasis in original). However, Plaintiffs do not provide additional explanation to support their assertion. *Id.* The Acts clearly state that property owners may provide oral notice to those entering the property and no heightened notice is required for the oral communication. Consequently, in situations where property owners are feasibly able to provide oral notice to each individual, the Acts do not violate property owners' First Amendment rights. Thus, Plaintiffs fail to establish an injury sufficient to give rise to a First Amendment facial challenge.

Harris County Officials and Chief Bacon contend that Plaintiffs do not suffer an injury in fact because Plaintiffs are not susceptible to prosecution under the statutes. (Instruments No. 38 at 5; No. 52 at 13). Chief Bacon further asserts that the statutes are enforceable only against individuals licensed to carry handguns and, therefore, cannot create an injury for Plaintiffs. (Instrument No. 52 at 13). An injury in fact must be a result of the statute's enforcement, actual or threatened. *See California v. Texas*, 141 S. Ct. 2104, 2114 (2021). Here, Plaintiffs' alleged injury results from the Acts' enforcement. Plaintiffs' alleged injury is the deprivation of their free speech right as a result of the Acts' heightened notice requirements. It is well established

that the Government may not deny a benefit to a person on a basis that infringes the person's constitutionally protected rights. *See Agency for Int'l Dev. v. Alliance for Open Soc. Int'l, Inc.*, 570 U.S. 205, 214 (2013). This precedent is not limited to situations where the condition is actually coercive. *Id.* The Acts afford Plaintiffs the right to police protection if a licensed handgun carrier enters their property and refuses to leave. Plaintiffs must comply with the Acts' notice requirements in order to receive the benefit of police protection. Without communicating the message as required, Plaintiffs risk losing police protection against trespassers who violate the Acts. Thus, Plaintiffs' injury in fact arises from the enforcement of the Acts.

Texas Officials, Harris County Officials, and Chief Bacon also assert that Plaintiffs are free to utilize a "simple pictogram or only a few words" without the required language. (Instruments No. 28 at 17-18; No. 38 at 5; No. 52 at 15). While posting noncompliant signs would forego police protection from the offense of trespass, Texas Officials and Chief Bacon further argue that Plaintiffs could instead rely on the civil law of trespass. (Instruments No. 28 at 17-18; No. 52 at 15). However, this alternative further affirms the existence of Plaintiffs' alleged injuries, which is the denial of police protection and criminal prosecution if Plaintiffs do not comply with the Acts' heightened notice requirements. Moreover, civil remedies fail to offer the prophylactic protection that is provided under criminal law. *See Cuero v. State*, 845 S.W.2d 387, 392 (Tex. Ct. App. 1992). Thus, Plaintiffs have established an injury-in-fact.

## ii.

Harris County Officials generally argue that Plaintiffs fail to establish a causal link between Defendants and the alleged injuries. (Instrument No. 38 at 6). Chiefs Acevedo and Bacon argue that they did not take any action or make any threat to enforce the Acts against

14

Plaintiffs and, therefore, they are not responsible for redressing Plaintiffs' injuries. (Instruments No. 42 at 6; No. 52 at 18).

Here, Harris County Officials, Chief Acevedo, and Chief Bacon do not dispute that they are responsible for enforcing the Acts. *See generally* (Instruments No. 38; No. 42; No. 52). They only dispute whether they have enforced the Acts against Plaintiffs. *Id.* However, it is not necessary for defendants to have previously enforced the complained-of statute; only for defendants to have the power to enforce the statute. *See Buchanan v. Alexander*, 919 F.3d 847, 854-55 (5th Cir. 2019); *Okpalobi v. Foster*, 244 F.3d 405, 426 (5th Cir. 2001). Plaintiffs allege that they cannot rely on law enforcement to protect Plaintiffs from trespassers that violate the Acts if they do not comport with the Acts' notice requirements. (Instrument No. 1 at 17). Thus, because these defendants enforce the Acts that cause the alleged injury, Plaintiffs have satisfied the traceability requirement.

### iii.

Plaintiffs seek a declaratory judgment that Texas Penal Code § 30.06 and § 30.07 are unconstitutional and that the affirmative defenses within the Acts are unconstitutionally vague. (Instrument No. 1 at 29). Plaintiffs also seek to enjoin the enforcement of the Acts' heightened notice requirements. *Id.* at 30. Chief Bacon, Texas Officials, and Harris County Officials assert that Plaintiffs' requested relief fails to satisfy the third and final element of standing, redressability. (Instruments No. 28 at 18; No. 38 at 6; No. 42 at 5-6; No. 52 at 17).

To establish redressability, the plaintiff must demonstrate that the requested relief will redress the alleged injury. *See Servicios Azucareros de Venezuela, C.A. v. John Deere Thibodeaux, Inc.*, 702 F.3d 794, 799-800 (5th Cir. 2012). A federal court is unable to have "jurisdiction to enter a judgment unless it provides a remedy that can redress the plaintiff's

injury." *Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 801 (2021). Even if the relief sought cannot entirely remedy the plaintiff's injury, civil penalties that drastically reduce the injury are sufficient. *See Env't Texas Citizen Lobby, Inc. v. ExxonMobil Corp.*, 968 F.3d 357, 372 (5th Cir. 2020) (holding that the plaintiff's injuries were redressable when Exxon implemented measures that drastically reduced, though not entirely eradicated, its violations); *K.P. v. LeBlanc*, 627 F.3d 115, 123 (5th Cir. 2010) (noting that a plaintiff need not show that a favorable decision will relieve his every injury). Moreover, equitable relief can only satisfy the redressability requirement if plaintiff also demonstrates a continuing injury or threatened future injury in fact. *See Stringer v. Whitley*, 942 F.3d 715, 720 (5th Cir. 2019).

Chief Bacon contends that Plaintiffs fail to demonstrate a continuing injury that warrants injunctive or declaratory relief. (Instrument No. 52 at 17). He further asserts that the requested equitable relief will not redress Plaintiffs' injuries because the Acts are not enforceable against Plaintiffs. (Instrument No. 52 at 18). However, as stated earlier, though the Acts are not enforceable against Plaintiffs, Plaintiffs' alleged injury in fact is having to make a choice between their First Amendment free speech right and the right to police protection. Because this harm is caused by the Acts' notice requirements, and the Acts currently remain in effect, the harm is a continuing injury. Thus, Plaintiffs' requested injunctive and declaratory relief can redress Plaintiffs' injuries.

Chief Bacon further asserts that Plaintiffs fail to establish a continuing injury because Chief Bacon would still remove a trespasser from Plaintiffs' premises even if Plaintiffs failed to comply with the Acts' notice requirements. (Instrument No. 52 at 18). However, Plaintiffs need only establish that the requested relief will redress the alleged injury and, here, equitable relief

will remedy Plaintiffs' alleged constitutional violation. Thus, Plaintiffs satisfy the redressability element.

Texas Officials and Harris County Officials contend that Plaintiffs fail to satisfy the redressability element because courts are unable to rewrite statutes or replace the Acts with § 30.05's more lenient notice requirements. (Instruments No. 28 at 18-19; No. 38 at 6). However, the cases Texas Officials and Harris County Officials cite to are germane to statutory interpretation, not whether courts are able to enjoin unconstitutional statutes. *See, e.g., Bostock v. Clayton Cnty.,* 140 S. Ct. 1731, 1738 (2020) (condemning statutory interpretation that contravenes the public meaning of terms at the time the statute is enacted); *King Ranch, Inc. v. United States*, 946 F.2d 35, 37 (5th Cir. 1991) (holding that courts cannot interpret statutes in a way that rewrites Congressional legislation to cover situations that Congress may not have foreseen); *Hill v. City of Houston*, 789 F.2d 1103, 1112 (5th Cir. 1986) (noting that federal courts do not have power to interpret or rewrite a statute in a way that determines its constitutionality). Texas Officials and Harris County Officials do not cite to case law indicating that courts are unable to declare statutes unconstitutional or enjoin the enforcement of unconstitutional statutes. Consequently, because none of the cited case law supports Texas Officials and Harris County Officials' proposition, Plaintiffs have satisfied the redressability element of standing.

Accordingly, Texas Officials' Motion to Dismiss based on standing is GRANTED in part and DENIED in part. Harris County Officials, Chief Acevedo, and Chief Bacon's Motions to Dismiss based on standing are DENIED. (Instruments No. 38; No. 42; No. 52).

## 2.

Chiefs Acevedo and Bacon contend that Plaintiffs' claims are not yet ripe for review. (Instruments No. 42 at 7-8; No. 52 at 20). Chief Acevedo contends that Plaintiffs claims are not

ripe because Plaintiffs have not established that the alleged dispute is justiciable. (Instrument No. 42 at 7-8). Chief Bacon further asserts that Plaintiffs' dissatisfaction with the Acts stems from aesthetic preferences and hypothetical concerns of the potential effect of posting noncompliant signs. (Instrument No. 52 at 20).

The ripeness doctrine prevents courts from "entangling themselves in abstract disagreements over administrative policies" and also protects "agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Sample v. Morrison*, 406 F.3d 310, 312 (5th Cir. 2005) (quoting *National Park Hospitality Ass'n v. Department of Interior*, 538 U.S. 803, 807–08 (2003)). A case should be dismissed for ripeness if the issue is abstract or hypothetical. *Lopez v. City of Houston*, 617 F.3d 336, 341 (5th Cir. 2010). If an alleged injury is contingent upon future events that might not occur, the claim is not ripe for adjudication. *Id.* at 342.

Here, Chiefs Acevedo and Bacon merely re-assert their standing arguments and recharacterize them as ripeness arguments. While the doctrines of ripeness and standing often overlap when analyzing whether plaintiff suffered a concrete injury, Plaintiffs have already adequately established that they suffered an injury. *See Texas v. United* States, 497 F.3d 491, 498 (5th Cir. 2007). As discussed above, Plaintiffs allege that they are harmed by being forced to decide between securing police protection against licensed handgun carriers and compelled speech in violation of their First Amendment rights. Because Plaintiffs have been faced with this choice, and continue to face this choice, the Court finds that this issue is not abstract, hypothetical, or contingent upon uncertain future events. Therefore, Plaintiffs' claims are ripe for review.

Accordingly, Chiefs Acevedo and Bacon's Motions to Dismiss for lack of subject matter jurisdiction are DENIED. (Instruments No. 42; No. 52).

## B.

Defendants also argue that Plaintiffs fail to adequately state any of their claims. Texas Officials and Harris County Officials argue that they are entitled to sovereign immunity. (Instruments No. 28 at 25; No. 38 at 9). Harris County Officials, Chief Acevedo, and Chief Bacon contend that Plaintiffs fail to state a claim against them because they are unable to meet the *Monell* municipal liability requirements. (Instruments No. 38 at 8-9; No. 42 at 10; No. 52 at 20-24). Lastly, Texas Officials, Chief Acevedo, and Chief Bacon contend that Plaintiffs fail to establish their free speech, free association, and due process claims. (Instrument No. 28 at 20; No. 42 at 9; No. 52 at 20-24).

## 1.

Texas Officials and Harris County Officials contend that sovereign immunity bars Plaintiffs' § 1983 and Texas Constitution claims from being asserted against them. (Instruments No. 28 at 25; No. 38 at 9).

Federal courts do not have jurisdiction over a suit against state officials in their official capacity unless the state has waived its sovereign immunity or Congress has clearly abrogated it. *NiGen Biotech, L.L.C. v. Paxton*, 804 F.3d 389, 393-94 (5th Cir. 2015). Courts must examine each claim in a case to determine if a court's jurisdiction is barred by the Eleventh Amendment. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 121 (1984). Texas has not waived its sovereign immunity and § 1983 does not clearly abrogate state sovereign immunity. *NiGen Biotech*, 804 F.3d at 394. However, under the *Ex parte Young* doctrine, a suit is not against a state "when it seeks prospective, injunctive relief from a state actor . . . based on an alleged

ongoing violation of the federal constitution." *K.P. v. LeBlanc*, 729 F.3d 427, 439 (5th Cir. 2013). For the doctrine to apply, a state official "by virtue of his office, must have some connection with the enforcement of the [challenged] act . . . ." *City of Austin v. Paxton*, 943 F.3d 993, 997 (5th Cir. 2019) (internal citations and quotations omitted). Additionally, a county agent operates as a state agent when he or she is enforcing state law or policy. *See Echols v. Parker*, 909 F.2d 795, 801 (5th Cir. 1990). This is especially the case when a state statute directs the actions of a county official. *Id.*

Applying these principles to this case, Plaintiffs' federal claims against Texas Officials and Harris County Officials are not considered to be "against" the State of Texas because Plaintiffs only seek prospective injunctive and declaratory relief for ongoing violations of federal law. Moreover, Defendants do not dispute that they are connected to the enforcement of the Acts. Thus, Plaintiffs' federal claims are not barred by sovereign immunity.

However, the *Ex parte Young* doctrine does not apply to state law claims. *NiGen Biotech*, 804 F.3d at 394 ("the *Ex parte Young* doctrine only reaches alleged violations of *federal* law." (emphasis in original)). Sovereign immunity bars federal courts from hearing state law claims against state officials sued in their official capacity. *See Kermode v. Univ. of Mississippi Med. Ctr.*, 496 F. App'x 483, 490 (5th Cir. 2012). This includes state-law claims for injunctive relief. *Id.* Here, Plaintiffs bring a Texas Constitutional claim under Article I, § 8. (Instrument No. 1 at 28-29). While a private right of action does exist for equitable remedies for violations of the Texas Constitution, *see City of Beaumont v. Bouillion*, 896 S.W.2d 143, 147 (Tex. 1995), sovereign immunity bars this Court from hearing Plaintiffs' Texas Constitution claim against state officials. Therefore, this Court is barred from considering Plaintiff's Texas Constitution

claim against Texas Officials, as well as Harris County Officials, Chief Acevedo, and Chief Bacon insofar as they operate as state officials when enforcing the Acts.

Accordingly, Texas Officials and Harris County Officials' Motions to Dismiss based on sovereign immunity is GRANTED in part as to the Texas Constitution claim and DENIED in part as to the federal claims. (Instruments No. 28; No. 38).

**2.**

Harris County Officials, Chief Acevedo, and Chief Bacon move to dismiss Plaintiffs' claims because they argue that Plaintiffs cannot meet the elements of a *Monell* municipal liability claim. (Instruments No. 38 at 9; No. 42 at 10-11; No. 52 at 25).

*Monell* municipal liability only arises to hold a municipality liable for an individual officer or policymaker's actions. *See Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Additionally, as stated earlier, a county official enforcing state law operates as a state agent. *See Echols*, 909 F.2d at 801. And, under § 1983, a state official in his or her official capacity is a person when sued for injunctive relief. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 n.10 (1989). Moreover, when a plaintiff satisfies the *Ex parte Young* requirements, a suit at equity may proceed even if the plaintiff cannot invoke § 1983. *See Green Valley Special Util. Dist. v. City of Schertz*, 969 F.3d 460, 475 (5th Cir. 2020).

Here, Plaintiffs are not trying to hold a municipality liable for an individual officer or policymaker's actions. Plaintiffs seek injunctive relief related to a state law. (Instrument No. 57 at 33). Because Plaintiffs' claims relate to the enforcement of state law by county officials, the county officials operate as state officials. Also, because Plaintiffs only seek injunctive and declaratory relief, the county officials are each treated as a "person" under § 1983. Thus,

Plaintiffs' claims may proceed against Harris County Officials, Chief Acevedo, and Chief Bacon.

Accordingly, Harris County Officials, Chief Acevedo, and Chief Bacon's Motions to Dismiss the *Monell* municipal liability claim are DENIED. (Instruments No. 38; No. 42; No. 52).

**3.**

Plaintiffs assert a First Amendment free speech claim, arguing that Defendants are compelling government speech and unconstitutionally conditioning benefits on government-scripted speech. (Instrument No. 1 at 26-27). Plaintiffs also assert a First Amendment free association claim. *Id.* at 28. Texas Officials, Chief Acevedo, and Chief Bacon argue that Plaintiffs fail to state a First Amendment free speech and free association claims. (Instruments No. 28 at 20-24; 42 at 9; No. 52 at 22-23).

Chiefs Acevedo and Bacon argue that Plaintiffs fail to state a claim against them because their Complaint identifies no action or conduct by them that abridges Plaintiffs' First Amendment rights. (Instruments No. 42 at 9; No. 52 at 22-23). However, this argument simply restates their standing arguments in their Rule 12(b)(1) motions and recharacterizes them as a Rule 12(b)(6) issue. This argument was already denied in Section IV.A. of this Order. Therefore, Chiefs Acevedo and Bacon fail to establish that Plaintiffs do not state a First Amendment claim against them.

Texas Officials first argue that the Acts should not be subject to any constitutional scrutiny because the Acts regulate non-expressive conduct and do not fall under any of the categories set forth in *Arcara v. Cloud Books, Inc.*, 478 U.S. 697 (1986). (Instrument No. 28 at 20).

"[E]very civil and criminal remedy imposes some conceivable burden on First Amendment protected activities." *Arcara*, 478 U.S. at 706. However, constitutional scrutiny applies (1) "where it was conduct with a significant expressive element that drew the legal remedy in the first place" or (2) "where a statute based on a nonexpressive activity has the inevitable effect of singling out those engaged in expressive activity." *Id.* at 706-07.

In *Arcara*, the New York statutes at issue declared places of prostitution and lewdness a public nuisance, which caused the closure of a bookstore in which illicit sexual activities took place. *See* 478 U.S. at 699. The Court held that the First Amendment was not implicated by the enforcement of "a public health regulation of general application against the physical premises in which respondents happen to sell books." *Id.* at 707. Significantly, the Court noted that the public health law did not impose a burden by singling out bookstores or others engaged in First Amendment protected activities. *See id.* at 705.

The parties dispute whether the Act regulates non-expressive or expressive conduct. Texas Officials argue that, similar to the situation in *Arcara*, the Acts regulate non-expressive conduct and do not single out anti-gun property owners. (Instrument No. 28 at 21). Texas Officials contend that the property owners are "free to say and do whatever they want about guns" and there are numerous other ways property owners may exclude licensed handgun carriers without the Acts. *Id.* at 21-22. Plaintiffs argue that *Arcara* has no connection to this case as the Acts compel expressive speech rather than regulating non-expressive conduct. (Instrument No. 57 at 34). Plaintiffs assert that the Acts condition their right to exclude on the forfeiture of an expressive activity. *Id.* at 34-35.

Because the Acts criminally prosecute trespassers who are licensed handgun carriers, the Acts are based on a non-expressive activity. *See* Tex. Penal Code §§ 30.06, 30.07. Unlike the

public health law in *Arcara*, the Acts single out property owners who wish to exclude licensed handgun carriers. These property owners forfeit their right to police protection and criminal prosecution if they do not comply with the Acts' heightened notice requirements. However, property owners who wish to exclude anyone else with the support of criminal prosecution may do so under § 30.05 without satisfying the heightened notice requirements. *See* Tex. Penal Code § 30.05. The Acts single out those engaged in expressive activity to exclude licensed handgun carriers. Thus, accepting Plaintiffs' allegations as true, the Acts are based on a non-expressive activity that singles out those engaged in expressive activity and could be subject to constitutional scrutiny.

Additionally, Texas Officials argue that Plaintiffs fail to state a free speech claim. Specifically, Texas Officials assert that Plaintiffs are not compelled to post the signs required under the Acts. (Instrument No. 28 at 22). They further contend that Plaintiffs fail to state an unconstitutional conditions claim. *Id.*

The First Amendment, made applicable to states by the Fourteenth Amendment, provides that "Congress shall make no law . . . abridging the freedom of speech." U.S. Const. amend. I; *Wooley v. Maynard*, 430 U.S. 705, 714 (1977). A fundamental First Amendment tenet is that "freedom of speech prohibits the government from telling people what they must say." *Rumsfeld v. Forum for Academic & Inst'l Rights, Inc.*, 547 U.S. 47, 61 (2006). Free speech includes "both the right to speak freely and the right to refrain from speaking at all." *Wooley*, 430 U.S. at 714.

Turning to the issue of compelled government speech, the First Amendment mandates that courts "presume that speakers, not the government know best both what they want to say and how to say it." *See Riley v. Nat'l Fed'n of the Blind of N. Carolina, Inc.*, 487 U.S. 781, 790-91 (1988). "[E]ven with the purest of motives," the government "may not substitute its judgment

24

as to how best to speak for that of speakers and listeners . . . ." *Id.* at 791. Government regulation

of speech can be content based, which is presumptively unconstitutional. *See Reed v. Town of*

*Gilbert*, 576 U.S. 155, 163 (2015). Government regulation of speech is content based if "a law

applies to particular speech because of the topic discussed or the idea or message expressed." *Id.*

Courts must consider whether the "regulation of speech 'on its face' draws distinctions based on

the message a speaker conveys." *Id.* "Mandating speech that a speaker would not otherwise make

necessarily alters the content of the speech." *Riley,* 487 U.S. at 795.

Here, Defendants argue that the Acts do not require Plaintiffs to post the signs, so there is

no compelled speech. However, Plaintiffs allege that there is no other feasible option.

(Instrument No. 1 at 14). Plaintiffs allege that Bay Area Church has 225 official members and

many non-members who attend weekly services and events. *Id.* at 17. Antidote sells coffee,

wine, ice cream, and other confections to the community at-large, and is patronized by adults,

children, and families. *Id.* at 19. Plaintiffs contend that providing oral communication to each

individual patron would be unduly burdensome and impractical. *Id.*

Accepting Plaintiffs' allegations as true, Plaintiffs are then limited to providing notice by

either distributing a card to each patron or posting signs that must meet the notice requirements.

*See Tex. Penal Code* §§ 30.06, 30.07. For both options, Plaintiffs are required to comply with the

Acts' heightened notice requirements. *See id.* Conversely, Plaintiffs allege that, under Texas

Penal Code § 30.05, they are permitted to exclude people for any other reason simply by

providing a sign that is "reasonably likely to come to the attention" of potential trespassers.

(Instrument No. 1 at 22). Because the heightened notice requirements are only triggered when

Plaintiffs wish to exclude licensed handgun carriers, the Acts draw distinctions based on the

message the property owners convey, thus creating a content-based restriction. Therefore,

because Plaintiffs have alleged a plausible content-based restriction, which is presumptively unconstitutional, Plaintiffs have stated a compelled speech claim.

Turning next to the unconstitutional conditions claim, "the government may not deny a benefit to a person on a basis that infringes his constitutionally protected . . . freedom of speech even if he has no entitlement to that benefit." *United States v. Am. Library Ass'n, Inc.*, 539 U.S. 194, 210 (2003). Texas Officials argue that the Acts do not condition police intervention on whether the signs are posted. (Instrument No. 28 at 23). However, while Plaintiffs are able to invoke the protection of the Acts through alternative means, Plaintiffs allege that providing oral communication to each individual patron is overly burdensome and providing individual cards with the heightened notice requirements elicits the same free speech issue. (Instrument No. 1 at 13-15). Plaintiffs further allege that they are unable to rely on police intervention to exclude guns from their property without the Acts. *Id.* at 17. Texas Officials provide no argument to support their assertion that police intervention is not conditioned on the compliance with the Acts. *See* (Instrument No. 28 at 23). Moreover, at the motion to dismiss stage, courts must accept the plaintiff's allegations as true. *See Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011). Accepting Plaintiffs' allegations as true, Plaintiffs have stated an unconstitutional conditions claim.

Texas Officials contend that Plaintiffs fail to state a First Amendment free association claim. (Instrument No. 28 at 23). The First Amendment provides individuals with the right to "eschew association for expressive purposes." *McDonald v. Longley*, 4 F.4th 229, 245 (5th Cir. 2021) (quoting *Janus v. Am. Fed'n of State, Cty., & Mun. Emps., Council 31*, 138 S. Ct. 2448, 2463 (2018)). The freedom of association "plainly presupposes a freedom not to associate." *Roberts v. U.S. Jaycees*, 468 U.S. 609, 623 (1984). A state may not require a party to forfeit one

constitutionally protected right to gain another. *See Lefkowitz v. Cunningham*, 431 US. 801, 807-08 (1977). Forcing an individual to make this choice violates one's free association right. *Id.* Here, Plaintiffs allege that their freedom to eschew association with licensed handgun carriers is frustrated by the Acts' heightened notice requirements. (Instrument No. 1 at 28). In order to protect their free association right, Plaintiffs allege that they must engage in displaying government-compelled speech that violates their free speech rights. Accepting all allegations as true, this choice violates Plaintiffs' free association right and, consequently, Plaintiffs have stated a plausible free association claim.

Accordingly, Texas Officials, Chief Acevedo, and Chief Bacon's Motions to Dismiss Plaintiffs' First Amendment claims are DENIED. (Instruments No. 28; No. 42; No. 52).

### 4.

Texas Officials, Chief Acevedo, and Chief Bacon contend that Plaintiffs fail to state a Fifth and Fourteenth Amendment due process claim. (Instruments No. 28 at 24; No. 42 at 9-10; No. 52 at 17).

Plaintiffs specifically allege that the Acts do not clearly state whether property owners must provide oral notice in addition to posting signs and, therefore, the Acts are vague in violation of their due process rights. (Instrument No. 1 at 29). In their Response, Plaintiffs note that "[i]f the Attorney General is willing to state that the crime of trespass is complete when an entrant disregards written notice at the point of entry, Plaintiffs will accept that interpretation." (Instrument No. 57 at 35). Texas Officials contend that the Acts unambiguously state that licensed handgun carriers commit an offense if they receive notice by oral or written communication. (Instrument No. 28 at 24). Texas Officials further assert that the plain language makes explicit that either of the two forms of communication would suffice to trigger the Acts.

*Id.* Because Texas Officials made clear that the crime of trespass is triggered when an entrant disregards written communication upon entry, Plaintiffs concede to this interpretation of the Acts.

Accordingly, Texas Officials, Chief Acevedo, and Chief Bacons' Motions to Dismiss Plaintiffs' Fifth and Fourth Amendment due process claim are GRANTED. (Instruments No. 28; No. 42; No. 52).

## IV.

For the foregoing reasons, **IT IS HEREBY ORDERED** Defendants' Motions to Dismiss is **GRANTED in part and DENIED in part**. **(Instruments No. 28; No. 38; No. 42; No. 52).**

**IT IS FURTHER ORDERED** that Plaintiffs' First Amendment facial challenge is **DISMISSED**.

**IT IS FURTHER ORDERED** that Plaintiffs' Texas Constitution claim is **DISMISSED**.

**IT IS FURTHER ORDERED** that Plaintiffs' Fifth and Fourteenth Amendment due process claim is **DISMISSED**.

The Clerk shall enter this Order and provide a copy to all parties.

**SIGNED** on this 27th day of August, 2021, at Houston, Texas.

**VANESSA D. GILMORE**
**UNITED STATES DISTRICT JUDGE**