**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **BAY AREA UNITARIAN** | § | |
| **UNIVERSALIST CHURCH;** *et al.* | § | |
| | § | |
| ***Plaintiffs,*** | § | |
| **v.** | § | **Civil Action No. 4:20-cv-3081** |
| | § | |
| **KEN PAXTON, Attorney General for the** | § | |
| **State of Texas, in his official capacity,** *et al.* | § | |
| | § | |
| ***Defendants.*** | § | |

**DEFENDANT TROY FINNER'S RESPONSE IN OPPOSITION TO PLAINTIFFS'**
**MOTION TO MODIFY SCHEDULING ORDER AND FOR LEAVE TO AMEND**
**COMPLAINT**

Defendant Troy Finner, in his official capacity as Chief of Police for the City of Houston

Police Department, files this Response in Opposition to Plaintiffs' opposed Motion to Modify the

Scheduling Order and for Leave to Amend Complaint, Doc. #150, after the Court dismissed all

claims against Chief Finner for lack of subject matter jurisdiction, Doc. #147, and respectfully

shows the following:

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................... ii

INDEX OF AUTHORITIES ........................................................................................... iii

NATURE AND STAGE OF THE PROCEEDINGS ................................................... 1

STATEMENT OF THE ISSUES TO BE RULED UPON .......................................... 2

SUMMARY OF THE ARGUMENT ............................................................................. 3

ARGUMENT AND AUTHORITIES ............................................................................ 4

I.   The Court should deny Plaintiffs' motion for leave as an untimely and
     insufficient motion for reconsideration ............................................................ 4

II.  The Court's Order terminated claims against Chief Finner ........................... 6

III. Plaintiffs neither establish grounds for modification of the scheduling order nor
     good cause to support their untimely request for leave to amend ................. 8

     A.  What Plaintiffs characterize as "good cause" suggests lack of diligence,
         bad faith, and dilatory motive justifying denial of their motion. ........... 9

     B.  Plaintiffs made a strategic choice not to amend their pleadings as early
         as October 2021 ............................................................................................. 11

     C.  Plaintiffs cannot overcome the presence of all warning factors weighing against
         modification ................................................................................................... 12

     D.  Amendment would be futile because Antidote still fails to allege facts
         demonstrating an injury in fact traceable to Chief Finner or redressable grievance. ...... 13

     E.  Plaintiff cannot establish standing against Chief Finner ......................... 16

CONCLUSION AND PRAYER ................................................................................... 18

CERTIFICATE OF SERVICE ..................................................................................... 19

# INDEX OF AUTHORITIES

## Cases

*A&C Constr. & Installation, Co. WLL v. Zurich Am. Ins. Co.*, 963 F.3d 705 (7th Cir. 2020) ....... 6

*Allen* v. *Wright*, 468 U.S. 737 (1984) ........................................................................ 16

*Anokwuru v. City of. Houston*, 990 F.3d 956 (5th Cir. 2022) .......................................... 9

*Auster Oil & Gas, Inc. v. Stream,* 764 F.2d 381 (5th Cir. 1985) ................................... 13

*Bailey* v. *Patterson*, 369 U.S. 31 (1962) ..................................................................... 16

*Barrett v. Indep. Order of Foresters,* 625 F.2d 73 (5th Cir. 1980) ................................. 13

*Brashear v. Panini Am.*, Inc., Civil Action No. 3:19-CV-201-L,
    2020 U.S. Dist. LEXIS 264183 (N.D. Tex. 2020) ................................................. 7, 8

*Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272 (10th Cir. 2021) ............................... 8

*Catalyst Medium Four, Inc. v. CardShark, LLC*, 2015 WL 141259 (W.D. Tex. Mar. 26, 2015) .. 7

*Colvin v. Amegy Mortg. Co., LLC (In re Colvin)*,
    Nos.11-51241, 12-05018, 2012 WL 2562490 (Bankr. W.D. Tex. 2012) ................................ 5

*Cut-Heal Animal Care Prods., Inc. v. Agri-Sales Assocs., Inc.*, 2009 U.S. Dist. LEXIS 9064,
    2009 WL 305994 (N.D. Tex. Feb. 9, 2009) (Fitzwater, C.J.) ..................................... 9

*Davila v. United States*, 713 F.3d 248 (5th Cir. 2013) ................................................. 7

*Diamond v. Charles*, 476 U.S. 54 (1986) .................................................................... 16

*Dos Santos v. Bell Helicopter Textron, Inc. Dist.*, 651 F. Supp. 2d 550 (N.D. Tex. 2009) ........... 6

*Dussouy v. Gulf Coast Inv. Corp.,* 660 F.2d 594 (5th Cir.1981) ........................................... 10, 11

*EEOC v. Serv. Temps, Inc.*, 2009 U.S. Dist. LEXIS 95667, 2009 WL 3294863 (N.D. Tex. Oct.
    13, 2009) (Fitzwater, C.J.), *aff'd*, 679 F.3d 323 (5th Cir. 2012) ............................... 8

*Flores v. Pompeo*, 936 F.3d 273 (5th Cir. 2019) .......................................................... 7

*Freeman v. United States*, 556 F.3d 326 (5th Cir. 2009) ............................................... 7

*In re MPF Holdings U.S. LLC*, 701 F.3d 449 (5th Cir. 2012) .......................................... 7

*In re Toyota Hybrid Brake Litig.*, No. 4:20-CV-127,
    2020 U.S. Dist. LEXIS 194964 (E.D. Tex. 2020) ................................................... 6

*Jacquez v. Procunier*, 801 F.2d 789 (5th Cir. 1986) ........................................................ 7

*La. Envtl. Action Network v. McDaniel*, No. 06-4161,
   2008 U.S. Dist. LEXIS 80655 (E.D. La. 2008) ........................................................ 5

*Layfield v. Bill Heard Chevrolet Co.,* 607 F.2d 1097 (5th Cir. 1979),
   *cert. denied,* 446 U.S. 939 (1980) ........................................................................ 13

*Leeke* v. *Timmerman*, 454 U.S. 83 (1981) ................................................................. 16

*Leisure Caviar, LLC v. U.S. Fish & Wildlife Serv.*, 616 F.3d 612 (6th Cir. 2010) .................... 4, 5

*Los Angeles Cnty., Cal. v. Humphries*, 562 U.S. 29, 39 (2010) .................................. 14

*Lucio v. Fern at Tenth LLC*, No. 7:19-CV-189,

   2019 U.S. Dist. LEXIS 174330 (S.D. Tex. 2019) ...................................................... 9

*Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368 (5th Cir. 2014) ............. 9

*Matamoros v. Cooper Clinic*, 2015 U.S. Dist. LEXIS 103651 (N.D. Tex. Aug. 7, 2015) ............. 9

*Mitsubishi Aircraft Int'l, Inc. v. Brady,* 780 F.2d 1199 (5th Cir. 1986) ........................................ 12

*Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978) ................................. 14

*Paterson v. Weinberger*, 644 F.2d 521 (5th Cir. 1981) ................................................................. 7

*Pioneer Natural Res. USA, Inc. v. Paper, Allied Indus., Chem. & Energy Workers Int'l
   Union Local 4-487*, 328 F.3d 818 (5th Cir. 2003) ........................................................ 5

*Rosenzweig v. Azurix Corp.*, 332 F.3d 854 (5th Cir. 2003) ...................................................... 9, 12

*Ross v. Marshall*, 426 F.3d 745 (5th Cir. 2005) ........................................................................ 5

*S & W Enters., L.L.C. v. S. Tr. Bank of Ala., N.A.*, 315 F.3d 533 (5th Cir. 2003) ................ *passim*

*Schiller v. Physicians Res. Grp. Inc.*, 342 F.3d 563 (5th Cir. 2003) ........................................... 7

*Smith v. EMC Corp.*, 393 F.3d 590 (5th Cir. 2004) ..................................................................... 9

*St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283 (1938) ..................................... 7, 8

*Stanley v. Central Intelligence Agency*, 639 F.2d 1146 (5th Cir.1981) .................................. 6

*Superior Crewboats, Inc. v. Primary P & I Underwriters*, 374 F.3d 330 (5th Cir. 2004) .......... 12

*Sure-Tan, Inc*. v. *NLRB*, 467 U.S. 883 (1984) ............................................................................. 16

iv

*Taita Chem. Co, Ltd. v. Westlake Styrene Corp.*, 246 F.3d 377 (5th Cir. 2001) ......................... 12

*Templet v. HydroChem Inc.*, 367 F.3d 473 (5th Cir. 2004) .......................................... 5

*T-M Vacuum Prods., Inc. v. TAISC, Inc.*, No. H-07-4108,
 2008 U.S. Dist. LEXIS 54248 (S.D. Tex. July 16, 2008),
 *aff'd sub nom. T-M Vacuum Prods. v. TAISC, Inc.*, 336 Fed. Appx. 441 (5th Cir. 2009) .......... 6

*U.S. v. Humana Health Plan of Tex., Inc.*, 336 F.3d 375 (5th Cir. 2003)...................................... 8

*Verret v. Elliot Equip. Corp.*, 734 F.2d 235 (5th Cir. 1984)...................................... 6, 8

*Wimm v. Jack Eckerd Corporation*, 3 F.3d 137 (5th Cir. 1993)..........................................*passim*

*Younger* v. *Harris*, 401 U.S. 37, 42 (1971)................................................................... 16

*Zimmerman v. City of Austin, Tex.*, 881 F.3d 378 (5th Cir. 2018)................................................ 17

**Statutes, Codes, and Constitution**

FED. R. CIV. P. 15 ........................................................................................................ 3, 4, 5, 9

FED. R. CIV. P. 16 ........................................................................................................ 9, 10

FED. R. CIV. P. 54(b)....................................................................................................... 6

FED. R. CIV. P. 59 ........................................................................................................ 4, 5, 6

FED R. CIV. P. 60 ........................................................................................................ 4, 5, 7

TEX. ALCO. CODE §11.61 ................................................................................................ 18

TEX. ALCO. CODE §61.71 ................................................................................................ 18

TEX. PEN. CODE §30.05 ........................................................................................ 4, 14, 15, 17

TEX. PEN. CODE §30.06 ................................................................................................ 14

TEX. PEN. CODE §30.07 ........................................................................................ 4, 14, 15

TEX. PEN. CODE §46.03 ................................................................................................ 17

TEX. PENAL CODE §46.035 ............................................................................................ 18

Texas Transportation Code §543.004, as amended by H.B. 62, 85th Legislature, Section 3,
 effective September 1, 2017 .......................................................................................... 15

## NATURE AND STAGE OF THE PROCEEDINGS

Plaintiffs brought this action on September 2, 2020, against multiple defendants in their official capacities, including State officials, County Officials, Houston Chief of Police Troy Finner, and Webster Chief of Police Pete Bacon (collectively "Municipal Defendants").  Doc. #1 at ¶¶7-13.

On August 27, 2021, the Court entered an Order denying in part the Defendants' various motions to dismiss.  Doc. #68 at 12.

After the State Officials filed notice of interlocutory appeal as of right to the Fifth Circuit, Plaintiffs promptly dismissed their claims against them with prejudice.  Doc. #78 (09/16/2021); Doc. #81 (9/24/2021).

Plaintiffs discussed filing an amended complaint as early as October 21, 2021.  *See* Exhibit 1 at 2.  After at least one Defendant expressed their intent to file a motion to dismiss any amended complaint, however, Plaintiffs indicated they may not amend after all.  *Id.*  Shortly thereafter, the Court denied the County and Municipal Defendants' motions to certify the August 27, 2021, Order for interlocutory appeal.  Doc. #99 (11/02/2021).  Plaintiffs did not seek leave to file an amended complaint.

On December 7, 2021, the Court entered an agreed Amended Scheduling Order with the following deadlines:

| | |
|---|---|
| 12/15/2021 | Amendment of Pleadings and Addition of New Parties. |
| 06/01/2022 | Plaintiffs' Expert designations and reports. |
| 07/01/2022 | Defendants' Expert designations and reports. |
| 09/01/2022 | Discovery. |
| 10/01/2022 | Dispositive/Non-Dispositive Motions Deadline. |
| 01/23/2023 | Joint Pretrial Order. |
| 01/27/2023 | Docket Call. |
| Feb. 2023 | Trial. |

Doc. #108.

Plaintiffs subsequently filed an unopposed motion for extension of several deadlines, but not the pleadings deadline, which was granted as follows:

| | |
|---|---|
| 07/01/2022 | Plaintiffs' Expert designations and reports. |
| 08/01/2022 | Defendants' Expert designations and reports. |
| 09/01/2022 | Discovery. |
| 10/01/2022 | Dispositive/Non-Dispositive Motions Deadline. |
| 01/15/2023 | Joint Pretrial Order. |
| 02/03/2023 | Docket Call. |

Docs. #112, #126.

On September 19, 2021, Plaintiffs filed an unopposed motion to extend the Motions deadline by one month until November 1, 2022, which was granted. Doc. #145.

On September 29, 2022, the Court entered a Memorandum Opinion and Order granting Chief Finner's Motion for Judgment on the Pleadings and dismissing Plaintiffs' claims against Chief Finner for lack of subject matter jurisdiction. Doc. #147. Plaintiffs had not moved for leave to amend, even in the alternative, in response to Chief Finner's Motion. Doc. #120.

On October 19, 2022, less than two weeks before the new Motions deadline, Plaintiffs filed an opposed motion to "hold" the motions deadline because they intended to file an untimely motion for leave to file an amended complaint. Doc. #148.

On October 31, 2022, more than 30 days after the Court's Order dismissing their claims against Chief Finner, and almost eleven months after expiration of the amended pleadings deadline, Plaintiffs moved for modification of the scheduling order and leave to amend their complaint to include similar claims against Chief Finner that had been dismissed. Doc. #150.

On the November 1, 2022, motions deadline, the Plaintiffs and each of the remaining Defendants filed dispositive motions. Docs. #152, #155, #156.

### STATEMENT OF THE ISSUES TO BE RULED UPON

1. The Court should deny Plaintiffs' motion for leave as an untimely and insufficient motion for

reconsideration.

2. Plaintiffs neither establish grounds for modification of the scheduling order nor good cause to support their untimely request for leave to amend.

3. Plaintiffs' motion fails to overcome the presence of all the warning factors weighing against granting leave to amend and prejudice to Chief Finner, whose claims were dismissed.

4. Amendment would be futile because Antidote still fails to allege facts demonstrating an injury in fact traceable to Chief Finner or redressable grievance.

5. Plaintiffs cannot in good faith establish standing against Chief Finner.

## SUMMARY OF THE ARGUMENT

Interlocutory orders are no less binding than those accompanied by a final judgment. Plaintiffs' motion is subject to the heavier burdens of Rules 59 or 60, not Rule 15 amendment, because the Court dismissed claims against Chief Finner for lack of subject matter jurisdiction on September 29, 2022. Plaintiffs did not timely seek relief from or reconsideration of the Court's Order dismissing claims against Chief Finner within 28 days. Nor have they satisfied their onerous burden to do so.

Plaintiffs do not suggest that despite their diligence, they could not have met the scheduling order deadlines. They admit they only seek to amend now because the Court dismissed claims against Chief Finner. Plaintiffs considered amending their complaint as early as October 2021, but made a strategic choice not to, which the Fifth Circuit has described as circumstances suggesting bad faith or dilatory motive justifying denial of leave.

Plaintiffs failed to meet their initial burden to allege facts establishing jurisdiction. Amendment would be futile because Antidote still fails to allege facts demonstrating an injury in fact fairly traceable to Chief Finner or a redressable grievance. Conclusory allegations regarding general Fourth Amendment standards and the Houston Police Department's (HPD) thorough training of officers about changes in criminal laws neither allege an injury suffered by the Plaintiffs

nor one that is traceable to Chief Finner.  HPD lacks power or discretion to make arrests or file charges in Harris County for suspected violations of the challenged statutory provisions without the Harris County District Attorney *first* accepting charges.  Plaintiffs have no right to secure the arrest or prosecution of others but nevertheless are free to submit a criminal complaint to the District Attorney.

Antidote has posted signs conforming with the written notice provisions of both sections 30.06 and 30.07, Tex. Pen. Code, since shortly after the laws went into effect.  They have never been denied police protection by HPD.  They have never called law enforcement regarding suspected trespassers with firearms, but would not hesitate to do so, and do not doubt that HPD would respond and provide assistance or that the HCDA would prosecute.  Antidote receives about fifty percent of their income from alcoholic beverage sales.  Weapons are prohibited on premises of businesses that derive 51% or more of their revenue from alcohol sales as a matter of law, without posting any signs under sections 30.05, 30.06, 30.07, Tex. Pen. Code.

## ARGUMENT AND AUTHORITIES

I. **The Court should deny Plaintiffs' motion for leave as an untimely and insufficient motion for reconsideration.**

This is not a traditional motion to amend the complaint with respect to claims against Chief Finner.  "When a Rule 15 motion comes after a judgment against the plaintiff, that is a different story.  When a party seeks to amend a complaint after an adverse judgment, it … must shoulder a heavier burden.  Instead of meeting only the modest requirements of Rule 15, the claimant must meet the requirements for reopening a case established by [FRCP] 59 or 60." *Leisure Caviar, LLC v. U.S. Fish & Wildlife Serv.*, 616 F.3d 612, 615-16 (6th Cir. 2010). A motion for reconsideration "is not the proper vehicle for rehashing evidence, legal theories, or arguments" that could have been offered or raised before[.]" *Templet v. HydroChem Inc.*, 367 F.3d 473, 478-

79 (5th Cir. 2004).  Instead, to succeed on a motion for reconsideration, a party must "'clearly establish either a manifest error of law or fact or must present newly discovered evidence.'"  *See Ross v. Marshall*, 426 F.3d 745, 763 (5th Cir. 2005) (quoting *Pioneer Natural Res. USA, Inc. v. Paper, Allied Indus., Chem. & Energy Workers Int'l Union Local 4-487*, 328 F.3d 818, 820 (5th Cir. 2003)).

The Court dismissed Plaintiffs' claims against Chief Finner for lack of subject matter jurisdiction on September 29, 2022.  Doc. #147.  Plaintiffs' motion is subject to the heavier burdens of Rules 59 or 60, not Rule 15 amendment.   Plaintiffs did not timely seek relief from or reconsideration of the Court's Order dismissing claims against Chief Finner for lack of subject matter jurisdiction within 28 days, as required under the Rules.  FED. R. CIV. P. 59, 60.  Nor have they satisfied their onerous burden to do so.  *Id., Ross*, 426 F.3d at 763.

 A court acts within its discretion in denying a Rule 15 and a Rule 59 motion on account of 'undue delay'—including delay resulting from a failure to incorporate 'previously [] available' evidence[—] and ought to pay particular attention to 'the movant's explanation for failing to seek leave to amend prior."  *Leisure Caviar, LLC*, 616 F.3d at 615-16.  *See, e.g.*, *Colvin v. Amegy Mortg. Co., LLC (In re Colvin)*, Nos. 11-51241, 12-05018, 2012 WL 2562490, 2012 Bankr. LEXIS 2948, at *7 (Bankr. W.D. Tex. 2012); (denying motion for reconsideration of dismissal for lack of standing, as a motion for reconsideration is not the place to submit evidence that easily could have been presented at the earlier stages of this case); *La. Envtl. Action Network v. McDaniel*, No. 06-4161, 2008 U.S. Dist. LEXIS 80655, at *1 (E.D. La. 2008) (denying motion for reconsideration of dismissal for lack of standing).  Plaintiffs' request for leave to file an untimely amended complaint that includes neither newly discovered evidence nor previously unavailable information should be denied.  Docs. #150, #151-1, #151-2.

## II.   The Court's Order terminated claims against Chief Finner

Plaintiffs contend the Court's September 29, 2022, Order did not intend to terminate the action because it did not dismiss their claims against Chief Finner with prejudice, terminate all claims against all parties, or expressly deny leave to file an amended complaint.  Doc. #150 at 6.

First, interlocutory orders are no less binding than those accompanied by a final judgment. A "district court's 'opinions are not intended as mere first drafts, subject to revision and reconsideration at a litigant's pleasure." *A&C Constr. & Installation, Co. WLL v. Zurich Am. Ins. Co.*, 963 F.3d 705, 709 (7th Cir. 2020) (cited by *In re Toyota Hybrid Brake Litig.*, No. 4:20-CV-127, 2020 U.S. Dist. LEXIS 194964, at *33-34 (E.D. Tex. 2020)).  Although Federal Rule of Civil Procedure 54(b) applies to motions for reconsideration of an interlocutory order, courts have utilized the standards of Rule 59 when analyzing such motions. *Dos Santos v. Bell Helicopter Textron, Inc. Dist.*, 651 F. Supp. 2d 550, 553 (N.D. Tex. 2009) ("considerations similar to those under Rules 59 and 60 inform the Court's analysis"); *T-M Vacuum Prods., Inc. v. TAISC, Inc.*, No. H-07-4108, 2008 U.S. Dist. LEXIS 54248, 2008 WL 2785636, at *2 (S.D. Tex. July 16, 2008), *aff'd sub nom. T-M Vacuum Prods. v. TAISC, Inc.*, 336 Fed. Appx. 441 (5th Cir. 2009) ("Rule 59(e)'s legal standards are applied to motions for reconsideration of interlocutory orders.").

Second, a dismissal for lack of subject matter jurisdiction must always be without prejudice.  *Verret v. Elliot Equip. Corp.*, 734 F.2d 235, 238 (5th Cir. 1984) (citing *Stanley v. Central Intelligence Agency*, 639 F.2d 1146, 1157 (5th Cir. 1981) ("As the district court apparently understood, it would be inappropriate to enter any judgment on the merits when the dismissal is based on lack of subject matter jurisdiction."))  That does not mean Plaintiffs who lack standing may ***continually*** seek leave to file an amended complaint.

Plaintiffs failed to meet their burden to initially allege facts to support jurisdiction against Chief Finner, even though they had a fair opportunity to do so. *St. Paul Mercury Indem. Co. v.*

*Red Cab Co.*, 303 U.S. 283, 292 (1938); *Jacquez v. Procunie*r, 801 F.2d 789, 792-93 (5th Cir. 1986); *see also Schiller v. Physicians Res. Grp. Inc*., 342 F.3d 563, 576 (5th Cir. 2003) (citation omitted). "Thus, in filing this original action, Plaintiffs represented to the court that the case belongs in federal court, and having made this representation, Plaintiffs are no less subject to Rule 11 sanctions than a defendant who removes an action." *Brashear v. Panini Am.*, Inc., Civil Action No. 3:19-CV-201-L, 2020 WL 13413474, 2020 U.S. Dist. LEXIS 264183, at *23 (N.D. Tex. 2020) (quoting *St. Paul Mercury Indem. Co.*, 303 U.S. at 292). Plaintiffs' original complaint was appropriately subject to challenge and dismissal by "resort to the face of [the] complaint," because it was apparent that the claims asserted could never support federal jurisdiction as to Chief Finner. *See Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981). *See* Doc. #147. Plaintiffs are not entitled to the benefits of jurisdictional discovery,[1] which is effectively what they received by way of fishing expedition against Chief Finner without having suffered any injury fairly traceable to him. *See Catalyst Medium Four, Inc. v. CardShark, LLC*, 2015 WL 1412591, at *8 (W.D. Tex. Mar. 26, 2015) (concluding that a party's "request for jurisdictional discovery in the hopes it might, with any luck, reveal jurisdiction is a textbook fishing expedition"); *Brashear*, LEXIS 264183 at *24 ("This indicates that the Plaintiffs are using this action to engage in an impermissible fishing expedition to look for information needed to support federal jurisdiction that they should have had before coming through the courthouse doors."). Accordingly, the Court need not and should not give them the opportunity to further amend their pleadings under the circumstances, even if they had timely requested to do so, because proceeding in this manner would unfairly and unnecessarily

---

[1] *Flores v. Pompeo*, 936 F.3d 273, 276 (5th Cir. 2019) (concluding that the district court did not abuse its discretion in ruling on a Rule 12(b)(1) motion without allowing the plaintiff who filed the action to conduct jurisdictional discovery) (quoting *In re MPF Holdings U.S. LLC*, 701 F.3d 449, 457 (5th Cir. 2012) (citation omitted)). *See also Davila v. United States*, 713 F.3d 248, 264 (5th Cir. 2013) ( "[T]he party opposing dismissal and requesting discovery . . . bear[s] the burden of demonstrating the necessity of discovery.")(citing *Freeman v. United States*, 556 F.3d 326, 341-42 (5th Cir. 2009). Mere speculation is not sufficient to support a request for jurisdictional discovery. *Brashear*, LEXIS 264183, at *21-22 (citations omitted).

delay the litigation. *See, e.g., Brashear,* LEXIS 264183, at *27-28 (rejecting similar tactics).

Third, the Court's Order granting Chief Finner's Motion did not need to expressly deny Plaintiffs the opportunity to amend to have the effect of finality because they never asked for it, and the Scheduling Order deadline to amend pleadings had long passed. *See Verret v. Elliot Equip. Corp.*, 734 F.2d 235, 238 (5th Cir. 1984). Docs. #108, #120. "A court need not grant leave to amend when a party fails to file a formal motion." *Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1283 (10th Cir. 2021); *U.S. v. Humana Health Plan of Tex., Inc.*, 336 F.3d 375, 387 (5th Cir. 2003). Had Plaintiffs filed a motion making the required showing of good cause and non-futility, the Court may have granted leave or expressly denied it.

Finally, Plaintiffs' failure to abide by the agreed Scheduling Order deadlines, lack of diligence, and strategic choice not to amend to avoid scrutiny of their standing, cannot serve to undermine the finality of the Court's Order dismissing Chief Finner.

## III. Plaintiffs neither establish grounds for modification of the scheduling order nor good cause to support their untimely request for leave to amend

When, as here, a motion for leave to amend the pleadings is filed after the deadline for seeking leave to amend has expired, the court must first determine whether to modify the scheduling order under the good cause standard of Fed. R. Civ. P. 16(b)(4), considering four factors: "(1) the explanation for the failure to timely [file the motion]; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice." *S & W Enters., L.L.C. v. S. Tr. Bank of Ala., N.A.*, 315 F.3d 533, 536 (5th Cir. 2003)(citation, internal quotation marks, and brackets omitted). The court considers the four factors holistically and "does not mechanically count the number of factors that favor each side." *EEOC v. Serv. Temps, Inc.*, 2009 U.S. Dist. LEXIS 95667, 2009 WL 3294863, at *3 (N.D. Tex. Oct. 13, 2009) (Fitzwater, C.J.), *aff'd*, 679 F.3d 323 (5th Cir. 2012).

"The 'good cause' standard focuses on the diligence of the party seeking to modify the scheduling order." *Cut-Heal Animal Care Prods., Inc. v. Agri-Sales Assocs., Inc.*, 2009 U.S. Dist. LEXIS 9064, 2009 WL 305994, at \*1 (N.D. Tex. Feb. 9, 2009) (Fitzwater, C.J.).  *See S & W Enters.*, 315 F.3d at 535.  Mere inadvertence on the part of the movant, and the absence of prejudice to the nonmovant, are insufficient to establish "good cause." *Id.   See also Geiserman v. MacDonald*, 893 F.2d 787, 791 (5th Cir. 1990).  "Instead, the movant must show that, despite her diligence, she could not reasonably have met the scheduling deadline." *Matamoros v. Cooper Clinic*, 2015 U.S. Dist. LEXIS 103651, 2015 WL 4713201, at \*2 (N.D. Tex. Aug. 7, 2015) (citing *S&W Enters., L.L.C.*, 315 F.3d at 535).   Only if the movant first satisfies the requirements of Rule 16(b)(4) must the court next determine whether to grant leave to amend under the more liberal standard of Rule 15(a)(2), which provides that "[t]he court should freely give leave when justice so requires." Rule 15(a)(2).  *See S & W Enters.*, 315 F.3d at 536; *Valcho*, 658 F.Supp.2d at 814.  Even then, the district court is entrusted with the discretion to grant or deny a motion to amend, considering a variety of **"warning factors"**[2] including undue delay, bad faith, or dilatory motive on the part of the movant, repeated failures to cure deficiencies by previous amendments allowed, undue prejudice to the opposing party, and futility of the amendment. *Anokwuru v. City of. Houston*, 990 F.3d 956, 960 (5th Cir. 2022) (citing *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014)).

### A.    What Plaintiffs characterize as "good cause" suggests lack of diligence, bad faith, and dilatory motive justifying denial of their motion.

Plaintiffs claim that good cause exists because "there was no need for Plaintiffs to amend their complaint prior to this Court's September 29th Order" granting Defendant Troy Finner's

---

[2] *Smith v. EMC Corp.*, 393 F.3d 590, 595 (5th Cir. 2004); *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 864 (5th Cir. 2003); *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Lucio v. Fern at Tenth LLC*, No. 7:19-CV-189, 2019 U.S. Dist. LEXIS 174330, at \*31 (S.D. Tex. 2019).

motion for judgment on the pleadings.  Doc. #150 at 6, 2.  That is not good cause, which focuses on the movant's diligence and inability to meet deadlines.  In fact, Plaintiffs' explanation raises an inference of bad faith justifying denial of their motion.  *See Dussouy v. Gulf Coast Inv. Corp.,* 660 F.2d 594 (5th Cir.1981) (commenting that these circumstances might give rise to an inference of bad faith, justifying denial of a briefly delayed but timely motion for leave to amend–before expiration of the scheduling order deadline).  As the Fifth Circuit explained in *Wimm v. Jack Eckerd Corporation*:

> [a party's] awareness of facts and failure to include them in the complaint might give rise to the inference that the [party] was engaging in tactical maneuvers to force the court to consider various theories seriatim.  In such a case, where the movant first presents a theory difficult to establish but favorable and, only after that fails, a less favorable theory, denial of leave to amend on the grounds of bad faith may be appropriate.

*Wimm v. Jack Eckerd Corporation*, 3 F.3d 137, 138 (5th Cir. 1993) (holding the trial court correctly found that the motion for leave to amend was filed in bad faith and with dilatory motive; plaintiffs knew of the additional facts but waited for nine months to attempt to add them and did not do so until summary judgment was imminent).

Moreover, the Church should never have pursued any claim against Chief Finner because it is not within the territorial jurisdiction of the Houston Police Department.[3]  A party's failure to promptly abandon claims upon discovering they are unfounded is evidence of bad faith and weighs against leave to amend, particularly after dismissal.  *Wimm*, 3 F.3d at 139-42 (discussing *Dussouy*, 660 F.2d 594).  Despite the overwhelming evidence that HPD does not respond and has never responded to calls for service at the Church, the Church receives no City services and is not within any Houston City Council or HPD patrol district, the Church failed to promptly dismiss their claim

---

[3] Exhibit 9 at pgs. 80-91 (testimony of Sharlene Rochen); *id.* at attachments 10-13 (Houston City Council and HPD district boundary maps).

against Chief Finner, subjecting him to unnecessary litigation burdens and expenses in defending a wholly frivolous claim.  *Id.*  The Church's proposed amended complaint does not assert a claim against Chief Finner.  Doc. #151-2.

### B.   Plaintiffs made a strategic choice not to amend their pleadings as early as October 2021

Plaintiffs had considered filing a second amended complaint as early as October 21, 2021, after the Court's August 27, 2021, Order denying in part the Defendants' motions to dismiss.  Doc. #68.  However, after at least one Defendant expressed their intent to move to dismiss any amended complaint, Plaintiffs indicated they may not amend after all.  Plaintiffs' counsel wrote on October 21, 2021:

> Although the parties had previously discussed streamlined proceedings for Plaintiffs' proposed amendment of their complaint in order to avoid duplicative motion to dismiss briefing, the Harris County Defendants have now informed us that if an amended complaint is filed, they will file a second motion to dismiss.
>
> We are consulting with our clients and have not made a final decision, but in light of this, and to avoid unnecessarily complicating and delaying this case, Plaintiffs may not seek leave to file an amended complaint.

Exhibit 1 at 2.

Shortly thereafter, the Court denied the City and County Officials' motions to certify the August 27, 2021, Order for interlocutory appeal.  Doc. #99 (11/02/2021).  Plaintiffs had already voluntarily dismissed their claims against the State Officials who had filed notice of appeal as of right.  Docs. #77, 78, 81, 82.  Thus, the Plaintiffs made a strategic choice not to amend their pleadings to cure defects known to them since this case's inception.  See, e.g., Doc. #147 at 11 n.3 (vacating the August 27, 2021, Order to the extent it relied on allegations absent from Plaintiffs' complaint).  They apparently did so to avoid further scrutiny of their pleadings.  Exhibit 1 at 2; Doc. #81.

Having obtained the benefit of their strategic choices, Plaintiffs are not entitled to amend now, after substantial delay, waste of judicial and party resources, and prejudice to Chief Finner. *Id.  See Taita Chem. Co, Ltd. v. Westlake Styrene Corp.*, 246 F.3d 377, 389 (5th Cir. 2001) (equitable estoppel precludes a party from taking a position contrary to its prior acts, admissions, representations, or silence); *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 864-65 (5th Cir. 2003) (the Fifth Circuit found no abuse of discretion with a district court's denial of the plaintiffs' motion for leave to amend where the plaintiffs admitted on appeal that they made "the 'strategic decision' to risk dismissal, with the expectation that they would be granted leave to amend the deficiencies of the complaint.").[4]

### C.   Plaintiffs cannot overcome the presence of all warning factors weighing against modification

Plaintiffs have not shown that despite their diligence, they could not have reasonably met the scheduling deadline. *S&W Enters., L.L.C*, 315 F.3d at 535.  They make no attempt to explain their failure to seek leave to amend until almost eleven months after the deadline expired, after discovery closed and motions for summary judgment had been filed.  They admit they are only seeking leave to amend because the Court dismissed claims against Chief Finner for lack of jurisdiction.  Doc. #150 at 6, 2.

The proposed amended complaint contains no allegations that were unavailable to the Plaintiffs prior to the expiration of the deadline to seek leave to amend.  Doc. #151-2.  *See Mitsubishi Aircraft Int'l, Inc. v. Brady,* 780 F.2d 1199, 1203 (5th Cir. 1986) (stating that failure to urge a claim which is "usually apparent at the outset of a case … strongly suggests either a lack of

---

[4] *See also Superior Crewboats, Inc. v. Primary P & I Underwriters*, 374 F.3d 330, 334 (5th Cir. 2004) (judicial estoppel "prevents a party from assuming inconsistent positions in litigation.  The purpose of the doctrine is to protect the integrity of the judicial process by preventing parties from playing fast and loose with the courts to suit the exigencies of self-interest.").

diligence … or a lack of sincerity"); *cf. Auster Oil & Gas, Inc. v. Stream,* 764 F.2d 381, 391 (5th Cir. 1985) (holding that district court abused its discretion by denying leave to amend where movant "asked for amendment promptly upon discovering the basis for new allegations"); *Barrett v. Indep. Order of Foresters,* 625 F.2d 73, 75 (5th Cir. 1980) (affirming denial of leave to amend, although bad faith and dilatory motive not found, where "amendment sought to add several new parties and additional counts," and "even though the motion was not filed until nearly ten months after the original complaint, there would appear to be no matters … which could not have been raised initially"); *Layfield v. Bill Heard Chevrolet Co.,* 607 F.2d 1097, 1099 (5th Cir. 1979) (upholding denial of leave to amend, although bad faith and dilatory motive not found, where "all of the facts relevant to the proposed amendment were known to the [movant] at the time she filed her original complaint"), *cert. denied,* 446 U.S. 939 (1980).

Plaintiffs' Motion offers no explanation to overcome the presence of ***all*** the warning factors weighing against leave to amend.  Plaintiffs knew of their pleading defects[5] but chose not to add them sooner as a matter of strategy until eleven months later, after all deadlines had expired, numerous dispositive motions have been filed, and granting leave to amend would certainly prejudice Chief Finner substantially, whose motion for judgment on the pleadings was granted by the Court.  *See Wimm*, 3 F.3d at 138.

> **D.    Amendment would be futile because Antidote still fails to allege facts demonstrating an injury in fact traceable to Chief Finner or redressable grievance.**

Antidote is not "required" to post signage to exclude guns from their property, but even if they were, they do not plausibly allege that Chief Finner required them do so.  Doc. #151-2 at

---

[5] See Exhibit 1 at 2; Doc. #147 at 11 n. 3 (vacating portions of August 2021 Order relying on allegations absent from Plaintiffs' original complaint).

¶133.  See TEX. PEN. CODE §§ 30.05., .06, .07.[6]  Their proposed amended complaint merely

adds conclusory allegations regarding the general duty of law enforcement to enforce laws and the

thorough training of Houston Police Officers regarding changes in Texas criminal laws including

Texas Penal Code sections 30.06 and 30.07, probable cause standards and the Fourth Amendment.

Doc. #151-2 at ¶¶33-39.  Training and knowledge of the law create neither an injury in fact fairly

traceable to Chief Finner nor a special enforcement duty with respect to the challenged statutory

provisions that could subject arms of the state—but not Chief Finner—to suit under *Ex parte*

*Young*.[7]  The proposed amendment to allege an imagined response to a hypothetical trespasser is

wholly refuted by the evidence in this case, and irrespectively, fails to allege an injury in fact

suffered by the Plaintiff, or one that is fairly traceable to Chief Finner.

Antidote claims Chief Finner is sued because he is responsible for making ***arrests*** for

violations of the challenged statutory provisions.  Doc. #151-2 at ¶¶33-39.  Chief Finner does not

enforce the challenged statutory provisions.  Exhibit 2 at 33, lines 6-22.  Houston Police

Department (HPD) officers have absolutely no authority or discretion to make arrests for violations

of sections 30.06 or 30.07 or file criminal charges in Harris County without the Harris County

District Attorney's authorization.[8]  Irrespective of any HPD officer's assessment of probable

---

[6] The proposed amended complaint does not assert claims against Chief Finner on behalf of Bay Area Unitarian Universalist Church.  Doc. #151-2.

[7] *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978) (discussing circumstances in which "municipalities and other local government units" can be liable under section 1983); *Los Angeles Cnty., Cal. v. Humphries*, 562 U.S. 29, 39 (2010) (clarifying that *Monell's* "policy or custom" requirement for imposing municipal liability applies not just to damages actions, but also to suits for prospective relief).  County officials, however, may sometimes be "joined  as a defendant to a suit to restrain the enforcement of an allegedly unconstitutional statute if that official 'by virtue of his office has some connection with the enforcement of the act," *Ex parte Young*, 209 U.S. 123, 157 (1908), "other than [their] general duty to ensure the laws are faithfully executed."  *Id.*

[8] Exhibit 2 at 112, line 3 to 115, line 21 ("without the authorization of the District Attorney's Office, we have no ability to move forward in the criminal justice process."); *id.* at 49, line 6 to 51, line 4.  *See also* Exhibits 3-7.  HPD officers can go no further than an investigatory detention without consultation and authority from the District Attorney's Office, who determines what charges, if any, may be filed.   Exhibit 2 at 51, line 24 to 52, line 4.

14

cause, they are without power or discretion to bring charges or make an arrest in Harris County unless charges are first accepted by the District Attorney's Office, except for certain class C misdemeanors committed in the officer's presence.[9]  Exhibit 2 at pgs. 112-115; 33, lines 6-22; 49, line 6 to 51, line 4.  HPD officers are required to consult the District Attorney's Office for any possible offense, and when they are unsure if an offense may have been committed.[10]  Officers must relay all relevant information to the District Attorney's Office and may make an arrest ***only*** if the District Attorney accepts charges.  *Id.*, Exhibit 2 at 112, lines 3-25.  Officers are without discretion to decline to make an arrest after the District Attorney accepts charges, reduce or alter the charges accepted by the District Attorney.  *Id.*  The challenged statutory provisions do not prevent HPD officers from responding to hypothetical calls for service regarding hypothetical armed trespassers and providing police protection, irrespective of the signage posted at the business.  *See* TEX. PEN. CODE §§30.05, .06, .07; Exhibits 3-7.  The District Attorney's office would be contacted regarding numerous potential offenses that may or may not depend on written notice.  *Id.*, Exhibit 2 at 50, lines 10-25; Exhibits 3-7.

The Harris County District Attorney's Office alone determines what, if any, charges will be brought, considering probable cause, the elements of the offense, and exercising their prosecutorial discretion to decide if charges are warranted.  Exhibit 8 at 15, line 18 to 16, line 3; 17, lines 4-14; 27, lines 5-12; 31, lines 1 to 32, line 5; 32, lines 9-16; 33, lines 1-9.  Law

---

[9] Texas law allows police officers to arrest for class C traffic violations committed in their presence, except: (1) speeding, (2) violation of the open container law, and (3) as of 9/2017, the use of a wireless communication device.  *See* TEX. TRANSP. CODE §543.004(c), as amended by H.B. 62, 85th Legislature, Section 3, effective September 1, 2017.

[10] See Exhibit 3 at 1-2.  Officers are without discretion to either decline to contact the District Attorney's Office, make the arrest if the District Attorney's Office declines charges, decline to make the arrest if charges are accepted by the District Attorney's Office, or reduce the offense to a lesser charge than that accepted by the District Attorney.  Exhibit 3 at 1-2.  *See also* Exhibit 4 at 1 ("To determine the type and level of charges the arresting officer will contact the District Attorney Intake office"); Exhibit 5 at 2, item 3 ("The following situations always require the creation and submission of an incident report… (a) Felony or Class A or B misdemeanor.").  If officers are unsure about the elements of the offense, they are required to contact the District Attorney's Office.  Exhibit 3 at 1.

enforcement may investigate and provide the relevant information, but probable cause and charging determinations, if any, lie with the District Attorney alone. *Id.* at 33, line 10 to 37, line 2. The District Attorney has discretion to choose which charges to file, or not to file any charges despite probable cause. *Id.* at 16, line 4 to 17, line 11; 36, lines 8-15; 59, line 24 to 61, line 24; 29, lines 2-25; 30, lines 7-11.

The Plaintiffs have no right to secure the arrest or prosecution of others; however, they are free to submit a criminal complaint to the District Attorney's office with or without law enforcement assistance in person or by submitting a complaint form available on the District Attorney's website.[11] *See Diamond v. Charles*, 476 U.S. 54, 56 (1986)(quoting *Linda R. S.* v. *Richard D*., 410 U.S. 614, 619 (1973) ("A private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."). *See also Leeke* v. *Timmerman*, 454 U.S. 83 (1981); *Sure-Tan, Inc*. v. *NLRB*, 467 U.S. 883 (1984); *Younger* v. *Harris*, 401 U.S. 37, 42 (1971); *Bailey* v. *Patterson*, 369 U.S. 31, 33 (1962). Cf. *Allen* v. *Wright*, 468 U.S. 737, 754 (1984) ("[An] asserted right to have the Government act in accordance with law is not sufficient, standing alone, to confer jurisdiction on a federal court").

### E.  Plaintiff cannot establish standing against Chief Finner

Antidote has never been denied police protection by HPD, or in response to an armed trespasser. Antidote's owners testified they have never been denied police services by the Houston Police Department, or the Harris County Sheriff's Office, and have no reason to believe the Harris County District Attorney would not prosecute offenses under the challenged statutory provisions. Exhibit 10 at pgs. 90-93; Exhibit 11at 18, line 1 to 20, line 19; 30, line 12 to 31, line 20. HPD officers have responded promptly to calls for service at Antidote and assisted on every occasion

---

[11]  Office of the Harris County District Attorney, Kim Off, Complaint Form, available at: https://app.dao.hctx.net/complaint-form (last visited 11/14/2022).

they were called.  Exhibit 10 at pages 58-76; Exhibit 11 at 21, line 24 to 24, line 16.  Antidote's owners and representatives have never contacted law enforcement regarding persons with firearms on their property but do not doubt that HPD would respond and provide assistance if they did.  Exhibit 10 at 87, lines 1-15; Exhibit 11 at 25, lines 18-24; 27, lines 6-15.[12]  They would not hesitate to contact law enforcement if they needed to, for armed trespassers or otherwise.  Exhibit 10 at 86, lines 13 to 87, line 1; Exhibit 11 at 27, lines 10-15.

There is no actual or imminent threat of Plaintiff being denied police protection as a result of the challenged statutory provisions.  Antidote has displayed signs conforming with the written notice provisions of both 30.06 and 30.07 since 2016, shortly after the laws went into effect.  Exhibit 10 at 15, line 23 to 16, line 13; Doc. #151-2 at 32, ¶103.  This Court has already determined that Plaintiffs have not "pled facts to show that their decision to post the §§ 30.06 and 30.07 signs was in any way coerced or compelled, and 'standing cannot be conferred by a self-inflicted injury.'"  Doc. #147 at 11 (quoting *Zimmerman v. City of Austin, Tex.*, 881 F.3d 378, 389 (5th Cir. 2018) (citation omitted)).  Antidote's owner testified that neither Chief Finner, HPD, nor the City, required Antidote to post any signs.  Exhibit 10 at 85, line 13 to 86, line 12.

Finally, weapons are likely prohibited at Antidote without ***any*** written or oral notice under sections 30.05, 30.06, or 30.07.  Antidote's owner testified that Antidote receives about fifty percent of its revenue from alcoholic beverage sales.  Exhibit 10 at 16, lines 17-21.  Texas Penal Code § 46.03 prohibits weapons on the premises of businesses that derive 51 percent or more of their income from the sale or service of alcoholic beverages.  TEX. PEN. CODE §46.03(a)(7).  Therefore, Antidote Coffee need not post any signage under the challenged statutory provisions to provide written notice to armed trespassers.  The Texas Alcoholic Beverage Commission (TABC)

---

[12] Scott Repass recalled a person with a gun robbing them over ten years ago.  There was an officer across the street who responded.  Exhibit 11 at 19, line 1 to 20 line 19.

requires such establishments to post a single red 51% sign either inside or outside their business prohibiting all firearms, including by licensed carriers, instead of the blue sign otherwise required by TABC.[13]  Antidote has no complaint about posting the various signs required by the TABC as a condition of Antidote's licensure.

## CONCLUSION AND PRAYER

Defendant, Troy Finner, in his official capacity as Chief of Police for the City of Houston Police Department, respectfully prays that the Honorable Court deny Plaintiffs' Motion to Modify the Scheduling Order and for Leave to Amend Complaint, and grant all further relief to which he may be entitled, including but not limited to severance and entry of final judgment.

Respectfully submitted,

**ARTURO G. MICHEL**
**City Attorney**

KELLY DEMPSEY
Section Chief Torts/Civil Rights

By:       /s/ *Melissa Azadeh*
          MELISSA AZADEH
          Texas Bar No. 24064851
          Senior Assistant City Attorney
          City of Houston Legal Department
          900 Bagby Street, 4th Floor
          Houston, Texas 77002
          Tel. 832-393-6270
          Fax 832-393-6259
          melissa.azadeh@houstontx.gov
          **ATTORNEYS FOR DEFENDANT TROY FINNER,**
          **CHIEF OF POLICE, IN HIS OFFICIAL CAPACITY**

---

[13] CHL holders are also prohibited from carrying handguns into businesses that derive 51% or more of their income from alcohol (the location is required to post a red "51%" sign, discussed in detail below).  TEX. PENAL CODE § 46.035; TEX. GOV. CODE § 411.204.  Violation of the statute by bringing a handgun onto the premises of a location which serves alcoholic beverages and which has properly posted the signage is a felony of the third degree.  TEX. PENAL CODE § 46.035.  Pursuant to the Texas Alcoholic Beverage Code ("TABC"), the alcoholic beverage location itself is subject to having its license cancelled for knowingly allowing a person to possess a firearm in a building on the licensed premises described above (what we will call "red 51% sign" locations).  TEX. ALCO. CODE §§ 11.61; 61.71.  A business owner has no discretion to allow the carrying of guns into these red 51% sign locations, as the gun prohibitions and sign requirements are mandatory.

## CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of November 2022, a true and correct copy of the foregoing document was duly served upon each party to this cause by electronically filing same with the District CM/ECF system, and/or alternatively by e-mail or facsimile transmission, to the following:

William R. Taylor
JONES DAY
717 Texas, Suite 3300
Houston, TX 77002
wrtaylor@jonesday.com

Peter C. Canfield
JONES DAY
1420 Peachtree Street, N.E., Suite 800
Atlanta, GA 30309
pcanfield@jonesday.com

Charlotte H. Taylor
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001
ctaylor@jonesday.com

Alla Lefkowitz
Everytown Law
P.O. Box 1478
Washington, D.C. 20044
alefkowitz@everytown.org

Ryan Gerber
Everytown Law
450 Lexington Avenue
P.O. Box 4184
New York, NY 10017
rgerber@everytown.org

***Attorneys for Plaintiffs***

Moustapha Gassama
moustapha.gassama@cao.hctx.net
Christina Beeler
christina.beeler@cao.hctx.net
Harris County Attorney's Office
1019 Congress, 15th floor
Houston, TX 77002

***Attorneys for Defendants, Harris Co.
DA Kim Ogg, County Attorney Vince Ryan,
County Sheriff Ed Gonzalez***

William Helfand
Bill.Helfand@lewisbrisbois.com
Sean Braun
Sean.Braun@lewisbrisbois.com
Lewis Brisbois
24 Greenway Plaza, Suite 1400
Houston, TX 77046

***Attorneys for Defendants, City of
Webster through Acting Chief Peter
Bacon***

*/s/ Melissa Azadeh*
Melissa Azadeh