United States District Court
Southern District of Texas
**ENTERED**
March 16, 2023
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| BAY AREA UNITARIAN UNIVERSALIST CHURCH; DRINK HOUSTON BETTER, LLC d/b/a Antidote Coffee; and PERK YOU LATER, LLC, | § § § § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. H-20-3081 |
| KEN PAXTON, Attorney General for the State of Texas, in his official capacity; | § § § § | |
| KIM OGG, District Attorney for Harris County, in her official capacity; | § § § § | |
| CHRISTIAN MENEFEE, County Attorney for Harris County, in his official capacity; | § § § § | |
| ED GONZALEZ, County Sheriff for Harris County, in his official capacity; | § § § § | |
| PETE BACON, Chief of Police for the Webster Police Department, in his official capacity; | § § § § § | |
| TROY FINNER, Chief of the Houston Police Department, in his official capacity; | § § § § | |
| KIM LEMAUX, Presiding Officer for the Texas Commission on Law Enforcement, in her official capacity, | § § § § § § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

Plaintiffs Bay Area Unitarian Universalist Church, Drink Houston Better, LLC d/b/a Antidote Coffee, and Perk You Later, LLC sued an assortment of officials of which three Defendants remain: Harris County District Attorney Kim Ogg ("Harris County DA"), Harris County Sheriff Ed Gonzalez ("Harris County Sheriff"), and City of Webster Police Chief Pete Bacon ("Webster Police Chief"). Plaintiffs pray for a declaration that the definition of "written communication" in two Texas penal statutes is unconstitutional and request that the Court enjoin Defendants from enforcing the term "written communication" as defined by the penal statutes. Plaintiffs do not allege that any Defendant has ever enforced, attempted to enforce, or threatened to enforce against Plaintiffs either the definition of "written communication" or any other aspect of these two penal statutes. Moreover, Plaintiffs do not allege that they are either under investigation or threatened with an investigation by the Harris County Sheriff or the Webster Police Chief for any violation of these penal statutes, nor do they allege that the Harris County DA has pursued or has threatened to pursue any prosecution against Plaintiffs for violating either criminal statute. Thus, the question of Plaintiffs' standing to challenge the constitutionality of these two penal statutes looms large from the start.

Plaintiffs sue to challenge these penal statutes although they applaud their purpose. Plaintiffs do not want any patrons entering their respective church and coffee shop with handguns, including patrons who are licensed by the state to carry. Plaintiffs recognize that they must inform patrons that handguns are forbidden, but Plaintiffs want to do so with signage of their own choosing rather than the warning language chosen by the Texas Legislature when it enacted Texas Penal Code § 30.06 and § 30.07. These penal statutes criminalize as trespass the entry on another's property by persons carrying a handgun either concealed (§ 30.06) or securely holstered (§ 30.07), if (1) they are licensed by the state to carry, and (2) the property owner gives effective notice that entry with a handgun is forbidden.[1]

Effective notice may be given orally or by "written communication," which is specifically defined in § 30.06:

> (3) "Written communication" means:
>
> (A) a card or other document on which is written language identical to the following: **"Pursuant to Section 30.06, Penal Code (trespass by license holder with a concealed handgun), a person licensed under Subchapter H, Chapter 411, Government Code (handgun licensing law), may not enter this property with a concealed handgun"**; or
>
> (B) a <u>sign</u> posted on the property that:

---

[1] A separate penal statute applies to persons who are not carrying a license or persons carrying a license but who do not conceal or holster their handgun(s). *See* TEX. PENAL CODE ANN. § 30.05(a)(f).

> (i) includes the <u>language</u> described by Paragraph (A) in both English and Spanish;
>
> (ii) appears in contrasting colors with block letters at least one inch in height; and
>
> (iii) is displayed in a conspicuous manner clearly visible to the public.

TEX. PENAL CODE ANN. § 30.06(c)(3) (emphasis added).   Similarly, "written communication" is defined in § 30.07(c)(3):

> (3) "Written communication" means:
>
> > (A) a card or other document on which is written language identical to the following: **"Pursuant to Section 30.07, Penal Code (trespass by license holder with an openly carried handgun), a person licensed under Subchapter H, Chapter 411, Government Code (handgun licensing law), may not enter this property with a handgun that is carried openly"**; or
> >
> > (B) a <u>sign</u> posted on the property that:
> >
> > > (i) includes the <u>language</u> described by Paragraph (A) in both English and Spanish;
> > >
> > > (ii) appears in contrasting colors with block letters at least one inch in height; and
> > >
> > > (iii) is displayed in a conspicuous manner clearly visible to the public at each entrance to the property.

<u>Id.</u> § 30.07(c) (emphasis added).   In its Corrected Order entered September 29, 2022 the Court summarized more than 25 years of Texas firearm licensing legislation, which provides additional background for Plaintiffs' instant suit.[2]

---

[2] Document No. 147 at 2-5.

The church has posted signage with § 30.07(c)(3)(A)'s language, and the coffee shop has posted signage with § 30.06(c)(3)(A)'s and § 30.07(c)(3)(A)'s language (bolded above).[3]  Plaintiffs say they were forced to use the statutory language as the only effective way to exclude handguns from their establishments.  Plaintiffs do not object to the *message* conveyed to warn handgun licensees not to enter Plaintiffs' property with handguns, but rather to the *aesthetics* of the signs, their size, and their effect as being "ugly" and "intimidating."

More than a year after filing this case, Plaintiffs dismissed with prejudice their claims against Defendants Texas Attorney General Ken Paxton and Texas Commission on Law Enforcement Presiding Officer Kim Lemaux, and later dismissed with prejudice their claims against Harris County Attorney Christian Menefee.[4] By the above mentioned Corrected Order entered September 29, 2022, the Court dismissed without prejudice for lack of subject matter jurisdiction Plaintiffs' claims against Houston Police Chief Troy Finner.[5]

---

[3] *See* Document No. 1 at ¶¶ 59, 72; Document No. 151-1 at ¶¶ 89, 103.

[4] Document Nos. 77, 81, 82, 87, 116, 118.  The judge to whom the case was originally assigned had earlier dismissed Plaintiffs' First Amendment facial challenge to the statutes, Plaintiffs' Texas Constitutional claim, and Plaintiffs' Fifth and Fourteenth Amendment due process claims.  *See* Document No. 68.

[5] Document No. 147.

Pending among other motions is Plaintiffs' motion for leave to amend their Complaint, filed two months after discovery closed and on the literal eve of the deadline to file motions.[6] Defendants object to Plaintiffs' belated request, contending, as they have from the beginning, that Plaintiffs have sued the wrong entities and cannot obtain effective relief from Defendants.[7] Defendants move for dismissal without prejudice for lack of jurisdiction.[8] Before turning to the parties' several pending motions, consideration is first given to whether Plaintiffs have standing to sue. *See* DaimlerChrysler Corp. v. Cuno, 126 S. Ct. 1854, 1860 (2006).

## I.   Standing

To reiterate core principles set forth in the Court's September 29, 2022 Order (Document No. 147), "Article III of the Constitution limits federal courts to deciding 'Cases' and 'Controversies.'" Dep't of Commerce v. New York, 139 S. Ct. 2551, 2565 (2019). "No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or

---

[6] *See* Document Nos. 150, 151.

[7] Document Nos. 160, 161.

[8] Document Nos. 152, 156.

controversies." Raines v. Byrd, 117 S. Ct. 2312, 2317 (1997) (citation omitted). "One element of the case-or-controversy requirement" is that Plaintiffs "must establish that they have standing to sue." Id. (citing Lujan v. Defs. of Wildlife, 112 S. Ct. 2130, 2136-37 (1992)). This standing requirement "limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong" and "confines the federal courts" to their proper judicial role. Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547 (2016) (citing cases). In this way, the standing requirement "serves to prevent the judicial process from being used to usurp the powers of the political branches[.]" Id.

To invoke this Court's jurisdiction, Plaintiffs "must satisfy the familiar tripartite test for Article III standing: (A) an injury in fact; (B) that's fairly traceable to the defendant's conduct; and (C) that's likely redressable by a favorable decision." E.T. v. Paxton, 41 F.4th 709, 714 (5th Cir. 2022) (citing Lujan, 112 S. Ct. at 2136). These elements of standing "are not mere pleading requirements but rather an indispensable part of the [Plaintiffs'] case[.]" Lujan, 112 S. Ct. at 2136 (citing cases). Thus, "each element must be supported in the same way as any other matter on which the [P]laintiff[s] bear[] the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." Id.

To establish an injury in fact sufficient to satisfy Article III, Plaintiffs must show they "suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" Spokeo, 136 S. Ct. at 1548 (quoting Lujan, 112 S. Ct. at 2136). Even then, that injury must be fairly traceable to the defendant's unlawful conduct. "[F]or purposes of traceability, the relevant inquiry is whether the plaintiffs' injury can be traced to 'allegedly unlawful conduct' of the defendant, not to the provision of law that is challenged." Collins v. Yellen, 141 S. Ct. 1761, 1779 (2021) (citation omitted).

Plaintiffs' theories of injury will be considered, together with whether any putative injury is fairly traceable to Defendants' conduct, and is likely redressable by a favorable decision of this Court.

First, Plaintiffs argue that they are injured in fact by what they call "asymmetrical notice requirements" in three Texas criminal trespass statutes. Trespass under § 30.05, § 30.06, and § 30.07 all require notice, either notice that entry was forbidden or notice to depart. See TEX. PENAL CODE ANN. §§ 30.05(a), 30.06(a), (d), 30.07(a), (d). Under Texas's general criminal trespass statute, notice is broadly defined to include "a sign or signs posted on the property or at the entrance to the building, reasonably likely to come to the attention of intruders, indicating

8

that entry is forbidden." TEX. PENAL CODE ANN. § 30.05(b)(2)(C).[9]
Plaintiffs complain that notices under § 30.06 and § 30.07 which
are notices for state-licensed carriers of concealed and holstered
handguns, respectively, require more detail and are more
burdensome, and this "asymmetrical" language injures them.

The Supreme Court's standing cases "have consistently spoken
of the need to assert an injury that is the result of a statute's
actual or threatened *enforcement*, whether today or in the future."
California v. Texas, 141 S. Ct 2104, 2114 (2021) (emphasis in
original; citing cases).   Texas Penal Code § 30.06 and § 30.07
have not been enforced against Plaintiffs, nor is any enforcement
action threatened against Plaintiffs.

Plaintiffs cite Davis v. Federal Election Commission, 128 S.
Ct. 2759 (2008) for the proposition that "[p]ersons subjected to
a regime that burdens their speech in an 'asymmetrical' manner are
sufficiently injured for standing purposes."[10]   Plaintiffs'
reliance on Davis is entirely misplaced.   In fact, Davis is a
highly instructive example of what *is* required to possess standing.
Plaintiff Davis in 2006 announced himself as a self-funded

---

[9] There is a defense to prosecution under § 30.05(a) if entry
with a handgun was forbidden but the person entering carried a
state license to carry and did carry a concealed or holstered
handgun. TEX. PENAL CODE ANN. § 30.05(f).

[10] *See, e.g.*, Document No. 155 at 12.

candidate for U.S. Representative on his party's ticket. Under the Bipartisan Campaign Reform Act ("BCRA"), which is enforced by the Federal Election Commission ("FEC"), he thereupon became subject to more extensive requirements for disclosure of his contributions than his non-self-funded opponent on the opposing party ticket. Although the Court was divided on the unconstitutionality of the substantive statute, it was unanimous in finding that Davis had standing to challenge the statute. The trigger was when Davis announced his intent to spend more than $350,000 in personal funds, at which time he fell under "the imminent threat" of having to make disclosures not required of his opponent. Id. at 2768. Only by obtaining a declaration of the statute's unconstitutionality and the issuance of an injunction could Davis be "spared from making those disclosures." Id. In addition, the FEC had notified Davis that it believed he had violated the statute's asymmetrical disclosure requirements during his previous self-funded 2004 election contest between these same two candidates for the same federal office. Davis was therefore subject to "the real threat that the FEC would pursue an enforcement action" against him for alleged BCRA violations committed during the 2004 campaign. Id. at 2767-68. It is for these reasons the Court unanimously found Davis possessed standing to challenge the statute's "asymmetrical contribution scheme." Id. at 2769. "A party facing prospective injury has standing to

sue where the threatened injury is real, immediate, and direct." Id. (citations omitted).

Unlike Davis, § 30.06 and § 30.07 do not require Plaintiffs to do anything nor are Plaintiffs under any threat of any enforcement action or prosecution traceable to Defendants in this case regardless of whether Plaintiffs post the statutory signage or not.  Plaintiffs are like all other churches, coffee shops, businesses, and individual citizens in Texas who may have favorable or unfavorable opinions about the legislative language, but none of whom as property owners has suffered any injury in fact as a consequence of "actual or threatened enforcement [of the statutes against them], whether today or in the future," California, 141 S. Ct. 2104 at 2114.  Hence, they possess no standing.  As Davis emphasizes, the injury or threatened injury must be "real, immediate, and direct."  Davis, 128 S. Ct. at 2769.  Unlike candidate Davis who had come under asymmetrical disclosure requirements and was threatened with an enforcement action by the FEC, which he sued, none of Harris County's D.A., its Sheriff, or the Webster Police Chief has either threatened or directed any action against Plaintiffs based on § 30.06 or § 30.07.

Assuming they have sustained an injury in fact based on their asymmetrical notice requirements theory, Plaintiffs cite Air Evac EMS, Inc. v. State of Texas, Department of Insurance, 851 F.3d 507 (5th Cir. 2017) as precedent for their traceability argument.  In

11

Air Evac EMS, however, the state actors (1) set the rates affecting the plaintiff's reimbursement, (2) oversaw the administrative fee-dispute process, and (3) enforced a prohibition that prevented the plaintiff from seeking additional payments.  Here, the local actors have no control over the state statutory scheme, and any potential enforcement of the statutes would be against third parties, not either of Plaintiffs.  Air Evac EMS is inapposite.

Second, Plaintiffs argue that unless Plaintiffs provide the notice required under Texas Penal Code § 30.06 and § 30.07 the police cannot arrest, and the DA cannot prosecute, a handgun-license holder for the unauthorized *entry* onto their property with a concealed or holstered handgun.  In fact, however, the statutes provide that these entrants are subject to arrest and prosecution if the property owner asks them to leave, and they refuse.  *See, e.g.*, TEX. PENAL CODE ANN. §§ 30.05(a)(2), 30.06(d), 30.07(d). Regardless, Plaintiffs as private citizens lack a judicially cognizable interest in whether *another* person is arrested or prosecuted.  *See* Linda R.S. v. Richard D., 93 S. Ct. 1146, 1149 (1973) ("a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another").  The Fifth Circuit--with seemingly palpable anguish--recently applied this holding where the plaintiff's allegations "horrified" the court, to wit, "repeated acts of rape and sexual assault, followed by grotesque acts of prosecutional misconduct."  Lefebure v.

D'Aquilla, 15 F.4th 650, 663 (5th Cir. 2021). Nonetheless, pursuant to Supreme Court precedent the Court of Appeals was constrained to find plaintiff had no standing "to pursue a claim against the district attorney for failure to prosecute her assailant." Id. at 661. "[V]ictims do not have standing based on whether *other* people--including their perpetrators--are investigated or prosecuted." Id. at 652 (emphasis in original). Here, unlike the allegations in Lefebure brought by a victim of horrible crimes, Plaintiffs' allegations boil down to a hypothetical non-arrest and/or nonprosecution of a hypothetical trespasser. Assuming Plaintiffs are the "victims" under their hypothetical, they--just as the brutally victimized plaintiff in Lefebure--have no standing to sue for relief. Moreover, one element of the "irreducible constitutional minimum of standing is that the injury in fact not be 'conjectural' or 'hypothetical.'" Lujan, 112 S. Ct. at 2136 (citing Whitmore v. Arkansas, 110 S. Ct. 1717, 1723 (1990)).

Third, Plaintiffs argue that the statutes "mandate" a manner of speech that the church finds offensive and impairs the church's freedom to associate with only unarmed entrants. Plaintiffs contend that to mandate them to use the specific language of exclusion found in § 30.06(c)(3)(A) and § 30.07(c)(3)(A) violates their First Amendment rights. To begin with, nothing in the statutes mandates that any property owner post the statutory

language.  Likewise, the statutes do not proscribe Plaintiffs from posting language of their own choosing to exclude handguns or forbid Plaintiffs from asking anyone carrying a handgun to leave their premises.

Plaintiffs in their briefing recognize that "standing cannot be conferred by a self-inflicted injury[,]" Zimmerman v. City of Austin, Tex., 881 F.3d 378, 389 (5th Cir. 2018) (citation omitted), in this instance choosing to post the statutory language, which Plaintiffs' allege they have done, and then complaining about it. Thus, they argue that they are under compulsion to use the statutory language or forgo their right to exclude handguns from their establishments.  As observed, however, the statutes contemplate that property owners may exclude licensed persons bearing firearms by simply orally asking them to leave.  They may also engage the police to aid Plaintiffs in excluding trespassers.[11]  Plaintiffs do not allege otherwise.[12]

Plaintiffs add a twist to their "mandated speech" theory by claiming that such speech is required to obtain a governmental

_____

[11]  _See, e.g._, Document No. 1 at ¶¶ 11, 55, 68, 81; Document No. 151-1 at ¶¶ 8, 73, 99, 111, 112; Document No. 156, Exhibit 2 at ¶¶ 7-9.

[12]  _See_ Document No. 1 at ¶ 68 (alleging that greeters are trained to ask a person to leave the firearm outside; if uncomfortable with that approach, greeters are instructed immediately to call 911); Document No. 151-1 at ¶ 99 (same).

Plaintiffs state "Chief Bacon himself testified that, absent

benefit, namely, the benefit of the criminal law's deterrent effect.   This argument is premised on the unconstitutional conditions doctrine, which the Fifth Circuit observed has not been treated by the Supreme Court "as an absolute prohibition."   *See* Dep't of Tex., Veterans of Foreign Wars of U.S. v. Tex. Lottery Comm'n, 760 F.3d 427, 437 n.4 (5th Cir. 2014) (en banc).   In Tex. Lottery Comm'n the Fifth Circuit noted that the doctrine is "perhaps best summed up" in Dolan v. City of Tigard, 114 S. Ct. 2309, 2317 (1994): "Under the well-settled doctrine of 'unconstitutional conditions,' the government may not require a person to give up a constitutional right . . . in exchange for a discretionary benefit conferred by the government where the benefit sought has little or no relationship to [the right]."   Id. (alteration in orig.).

In City of Tigard, the plaintiff applied for a building permit consistent with the city's zoning scheme.   She was granted the permit subject to her giving up approximately ten percent of her

_____

compliant signage banning concealed carry--signage that conforms to such detailed specifications as, for example, using block lettering--an officer may not remove a concealed-gun carrier from the premises *for trespass*."   Document No. 165 at 15 (citing Ex. E, App. 138, 147; *id.* at 161-64) (emphasis added)).   However, Chief Bacon did not testify that an individual could not be removed but testified that an individual could not be *arrested*.   He testified that someone who had not violated the statutes could not be removed by officers "unless" the owner "insisted."   Document No. 155-2, Appendix at 162-63.   Plaintiffs cite no evidence suggesting that officers would refuse to remove a patron at Plaintiffs' request.

property for public improvements including a pedestrian/bicycle pathway--but without receiving just compensation to which she was entitled under the Constitution.  It was in this context that the Court summarized that the government cannot require a person to give up a constitutional right--in that instance "the right to receive just compensation when property is taken for a public use"--in exchange for a discretionary benefit.  Unlike the plaintiff in City of Tigard, who sought and qualified for a specific tangible benefit from the City that was being withheld pending her surrender of a constitutional right, Plaintiffs complain of the loss of "deterrent effect" on a handgun licensee that may emanate from the possibility of arrest and/or prosecution. The "benefit" of deterrence is entirely dependent on hypothetical and conjectural future actions of third parties and events that may or may not occur.  It is fundamental that an injury in fact must be "actual or imminent, not conjectural or hypothetical." Spokeo, 136 S. Ct. at 1548.

In Perry v. Sinderman, 92 S. Ct. 2694 (1972), the plaintiff alleged First and Fourteenth Amendments violations when, after years of his receiving one-year renewals of his teaching contract, the Regents, without according plaintiff a due process hearing, did not renew his contract following his public criticism of the college administration.  The Court held that while the plaintiff's "mere subjective 'expectancy'" was not protected by due process,

16

he must be given an opportunity "to prove the legitimacy of his claim of such entitlement in light of the 'policies and practices of the institution.'"  Id. at 2700.  Again, unlike Plaintiffs here, the plaintiff in Perry alleged a "concrete and particularized" injury in fact to himself by the defendants' denial of the customary renewal of a one-year teaching contract because he had exercised his constitutional free speech rights.  In contrast, if Plaintiffs here choose not to post the statutory warning language that they contend violates their free speech rights, their putative injuries are speculative, contingent, and conjectural at best. See, e.g., Clapper v. Amnesty Int'l USA, 133 S. Ct. 1138, 1148 (2013) (recognizing that a theory of standing that relies on a highly attenuated chain of possibilities "does not satisfy the requirement that threatened injury must be certainly impending"); see also Lujan, 112 S. Ct. at 2136 n.1 ("By particularized, we mean that the injury must affect the plaintiff in a personal and individual way."); Shrimpers & Fishermen of RGV v. Tex. Comm'n on Envtl. Quality, 968 F.3d 419, 424 (5th Cir. 2020) (recognizing that the "concept of 'probabilistic standing' based on a non-particularized 'increased risk'" is insufficient to establish standing and that even where increased-risk claims are particularized, they generally "cannot satisfy the 'actual or imminent' requirement,'" which necessitates "evidence of a

'certainly impending' harm or a 'substantial risk' of harm'"
(citing cases)).

Even if one presumed an injury in fact based on having to
choose between their right to post their preferred signage and the
supposed deterrent effect of the penal scheme, Plaintiffs still
fail to show that their putative injury is fairly traceable to any
*conduct* of the Harris County D.A., or its Sheriff, or the Webster
Police Chief.  They are not the promulgators of § 30.06 and
§ 30.07, they have done nothing, and they are not accused of doing
anything to enforce or threaten enforcement of those legislative
enactments against Plaintiffs.  The case or controversy limitation
"requires that a federal court act only to redress injury that
fairly can be traced to the challenged action of the defendant,
and not injury that results from the independent action of some
third party not before the court."  Simon v. E. Kentucky Welfare
Rights Org., 96 S. Ct. 1917, 1926 (1976).  While the injury may be
indirect, the "plaintiff must show that he himself is injured by
the challenged action of the defendant."  Vill. of Arlington
Heights v. Metro. Hous. Dev. Corp., 97 S. Ct. 555, 561 (1977)
(citation omitted).  The indirectness of injury "may make it
substantially more difficult" to establish standing, as it does
here.  Simon, 96 S. Ct. at 1927.

Finally, Plaintiffs have not shown that Plaintiffs' alleged
injury--being forced either to speak or to forego the deterrent

effect of criminal sanction--is likely redressed by a favorable decision.  Plaintiffs state that "[i]f the Court enjoins the burdensome notice requirements, Plaintiffs will be free to communicate, in their own words, the message that firearms are unwelcome on their properties."[13]  As observed above, Plaintiffs presently are completely free to communicate that message in their own words.  Going further, Plaintiffs postulate that if the Court declared § 30.06(c)(3) and § 30.07(c)(3) unconstitutional, property owners could "post a sign conforming to their preferred 'no-guns' messaging, and they would have the benefit of Texas' criminal law to vindicate their property rights."[14]  Plaintiffs cite no authority for the notion that handgun licensees would be subject to criminal conviction on whatever sign Plaintiffs might post with whatever "their preferred 'no-guns' messaging" may be. *See, e.g.* Skilling v. United States, 130 S. Ct. 2896, 2927-28 (2010) ("To satisfy due process, a penal statute must define the criminal offense [1] with sufficient definiteness that ordinary people can understand what conduct is prohibited and [2] in a manner that does not encourage arbitrary and discriminatory enforcement."  (internal quotation marks and citation omitted)).  Moreover, this Court has no authority to strike parts of a criminal

---

[13] Document No. 155 at 11.

[14] Document No. 151-1 ¶¶ 84-85.

statute or to adopt its own definition of "written communication" for a penal statute as if the court itself were the legislature. *See, e.g.*, Schall v. Martin, 104 S. Ct. 2403, 2412 n.18 (1984) (providing that "the discretion to delimit the categories of crimes justifying detention, like the discretion to define criminal offenses and prescribe punishments, resides wholly with the state legislatures" (citation omitted)); Universal Amusement Co., Inc. v. Vance, 587 F.2d 159, 172 (5th Cir. 1978), *aff'd*, 100 S. Ct. 1156 (1980); Hill v. City of Houston, Tex., 789 F.2d 1103, 1112 (5th Cir. 1986), *aff'd*, 107 S. Ct. 2502 (1987); *see also* Freedman v. Maryland, 85 S. Ct. 734, 740 (1965). Nor can this Court order Defendants to revise § 30.06 and § 30.07 to make them like Plaintiffs would want them to be, and thereby proscribe conduct that the Texas legislature has not chosen to criminalize. Finally, how various license holders would conduct themselves at the entrance doors of the church or coffee shop if the Court held the challenged statutory language unconstitutional is wholly speculative. *See* E.T., 41 F.4th at 720-71 (holding that plaintiffs failed to establish the third element of standing where plaintiffs relied "wholly on speculation about the unfettered choices made by actors not before" the court).

"The law of Article III standing, which is built on separation-of-powers principles, serves to prevent the judicial process from being used to usurp the powers of the political

branches." Clapper, 133 S. Ct. at 1146-47 (citing cases).   A relaxation of the requirements of standing "is directly related to the expansion of judicial power." Id. at 1147.   Here, whether reviewing the Complaint alone, the facts alleged in Plaintiffs' proposed First Amended Complaint, or the Complaint supplemented by the undisputed facts of record, the result is the same: Plaintiffs lack standing to proceed. See Ramming v. United States, 281 F.3d 158, 161 (5th Cir. 2001) (stating how lack of subject matter jurisdiction may be found) (citation omitted).[15]   Plaintiffs' claims must be dismissed for lack of subject matter jurisdiction.

## II.  **Pending Motions**

Plaintiffs' Motion to Amend Complaint (Document No. 150), if granted, would add nothing of material substance to alter the above

---

[15] The judge to whom the case was originally assigned issued an interlocutory order on August 27, 2021, finding that Plaintiffs had standing to proceed and denying all motions by all Defendants to dismiss for lack of standing.  Document No. 68 at 17.  The case was later randomly reassigned to the undersigned judge.  With all due respect, the Court in its September 29, 2022 Order vacated the previous judge's finding of standing.  (Document No. 147).  That holding is here reaffirmed.  "[W]hen a district judge has rendered a decision in a case, and the case is later transferred to another judge, the successor should not ordinarily overrule the earlier decision.  [citation omitted]  The law of the case doctrine is not, however, a barrier to correction of judicial error. . . .  If the facts presented to [the successor judge] truly showed a lack of jurisdiction, it would have been sheer waste for him to permit a trial in Texas and await reversal by this court for want of jurisdiction." Loumar, Inc. v. Smith, 698 F.2d 759, 762-63 (5th Cir. 1983).

analysis explaining why Plaintiffs lack standing.[16]   Plaintiffs'
"Memorandum of Law in Support of Plaintiffs' Motion for Summary
Judgment" points to no evidence of any injury in fact that
Plaintiffs have suffered fairly traceable to Defendants' conduct
that is likely redressable by a favorable decision of this district
court.[17]   It is therefore

　　　ORDERED that Plaintiffs' Motion to Amend Complaint is
DENIED.[18]   It is further

　　　ORDERED for the reasons set forth in the above Memorandum
that Harris County Officials' Rule 12(c) Motion for Judgment on
the Pleadings (Document No. 152) is GRANTED; and Defendant Webster
Chief of Police Pete Bacon's Motion to Dismiss for Lack of Subject

---

[16] The foregoing analysis applies as well to Plaintiffs'
claims against Houston Police Chief Troy Finner, which claims
previously were dismissed for lack of standing.  Plaintiffs' motion
to replead their claims against Houston Police Chief Finner is
DENIED.

[17] *See* Document No. 155 at 5-18 (Plaintiffs' briefing in
support of standing).

[18] Defendants also opposed amendment of the Complaint after
the close of discovery on September 1, 2022 for a number of
additional reasons largely based on Plaintiffs' lack of diligence.
*See, e.g.,* Smith v. EMC Corp., 393 F.3d 590, 595 (5th Cir. 2004)
(recognizing undue delay, bad faith, dilatory motive, undue
prejudice, and futility as grounds to deny leave).   It is
unnecessary to consider these additional reasons because
Plaintiffs lack standing whether or not the proposed amended
pleading is considered.

Matter Jurisdiction (Document No. 156) is GRANTED.  All other pending motions are DENIED as MOOT.

## ORDER

For the foregoing reasons explaining why Plaintiffs lack standing required to establish Article III jurisdiction, Plaintiffs Bay Area Unitarian Universalist Church, Drink Houston Better, LLC d/b/a Antidote Coffee, and Perk You Later, LLC's claims against Kim Ogg, in her official capacity as District Attorney for Harris County; Ed Gonzalez, in his official capacity as County Sheriff for Harris County; and Pete Bacon, in his official capacity as the Chief of Police for the Webster Police Department are DISMISSED WITHOUT PREJUDICE for lack of jurisdiction.

A final judgment will be entered separately.

The Clerk will enter this Order, providing a correct copy to all counsel of record.

SIGNED at Houston, Texas, on this 16 TH day of March, 2023.

_Ewing Werlein, Jr._

EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE